JAMES M. NELSON (WSBA No. 44652)
DOMINIC E. DRAYE (AZ Bar No. 033012)
*Admitted Pro Hac Vice*
**GREENBERG TRAURIG, LLP**
2375 East Camelback Road, Suite 700
Phoenix, Arizona  85016
Telephone:  (602) 445-8000
Facsimile:  (602) 445-8100
E-mail: nelsonj@gtlaw.com
E-mail: drayed@gtlaw.com

NAOMI G. BEER (CO Bar No. 29144)
*Admitted Pro Hac Vice*
**GREENBERG TRAURIG, LLP**
1144 15th Street, Suite 3300
Denver, Colorado  80202
Telephone:  (303) 572-6500
Facsimile:  (303) 572-6540
E-mail: beern@gtlaw.com

*Attorneys for Defendants*

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JUSTIN BAKER, on behalf of himself and all others similarly situated,<br><br>    Plaintiff,<br><br>v.<br><br>UNITED PARCEL SERVICE, INC., a Delaware corporation, and UNITED PARCEL SERVICE, INC., an Ohio corporation,<br><br>    Defendants. | NO. 2:21-cv-00114-SMJ<br><br>**DEFENDANTS' MOTION TO DISMISS**<br><br>**Date:    November 18, 2021**<br>**Time:    10:30 a.m.**<br>**            Richland Courthouse**<br>**With Oral Argument** |

MOTION TO DISMISS – No. 2:21-cv-00114-SMJ

# TABLE OF CONTENTS

I.    STATEMENT OF THE CASE .................................................................2

II.   LEGAL STANDARD ...........................................................................2

III.  USERRA ..............................................................................................3

IV.   LEGAL ANALYSIS .............................................................................4

    A.   USERRA Unambiguously Does Not Require Payment of Ordinary
        Wages for Work Not Performed. ...............................................4

        1.   Every Applicable Canon of Construction Militates in Favor
            of the Long-Established Interpretation of "Rights and
            Benefits."..............................................................................4

        2.   Statutory Purpose and Legislative History Confirm the Text's
            Plain Meaning. ....................................................................11

        3.   Courts And Agencies Have Consistently Understood "Rights
            and Benefits" as Distinct from Wages. ..............................13

    B.   Alternatively, Military Leave Is Not Comparable to Other Forms of
        Leave. ......................................................................................15

    C.   UPS of Delaware Does Not Employ Baker. ...........................19

V.    CONCLUSION...................................................................................20

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*A Cmty. Voice v. EPA*,
   997 F.3d 983 (9th Cir. 2021) ............................................................................. 7

*Adams v. Bowen*,
   872 F.2d 926 (9th Cir. 1989) ............................................................................. 4

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) .......................................................................................... 3

*Barnhart v. Peabody Coal Co.*,
   547 U.S. 149 (2003) .......................................................................................... 7

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) .................................................................................... 3, 18

*Brooks v. Fiore*,
   C.A.No. 00-803 GMS, 2001 U.S. Dist. LEXIS 16345 (D. Del. Oct.
   11, 2001) .......................................................................................................... 14

*Bruesewitz v. Wyeth LLC*,
   562 U.S. 223 (2011) .......................................................................................... 7

*Clarkson v. Alaska Airlines, Inc.*,
   Case No. 21-35473 (9th Cir.) .......................................................................... 15

*Clarkson v. Alaska Airlines, Inc.*,
   No. 2:19-CV-0005-TOR, 2021 U.S. Dist. LEXIS 98123 (E.D. Wash.
   May 24, 2021) ............................................................................................ 17, 18

*Conaissa Won v. Amazon.com Services, LLC et al.*,
   1:21-cv-02867-NGG-RER (E.D.N.Y.) ........................................................... 15

*Daniels-Hall v. Nat'l Educ. Ass'n*,
   629 F.3d 992 (9th Cir. 2010) ............................................................................. 8

*Dees v. Hyundai Motor Mfg. Ala., LLC*,
   605 F. Supp. 2d 1220 (M.D. Ala. 2009), ....................................................... 19

*Dewsnup v. Timm*,
   502 U.S. 410 (1992)....................................................................12

*FDA v. Brown & Williamson Tobacco Corp.*,
   529 U.S. 120 (2000)................................................................6, 9

*Funbus Sys., Inc. v. Cal. Pub. Util. Comm'n*,
   801 F.2d 1120 (9th Cir. 1986) ...................................................4

*Gagnon v. Sprint Corp.*,
   284 F.3d 839 (8th Cir. 2002) .............................................12, 13

*Gustafson v. Alloyd Co.*,
   513 U.S. 561 (1995)....................................................................9

*Kwan v. SanMedica Int'l*,
   854 F.3d 1088 (9th Cir. 2017) ...................................................2

*Long Island Care at Home v. Coke*,
   551 U.S. 158 (2007)....................................................................5

*Miller v. City of Indianapolis*,
   281 F.3d 648 (7th Cir. 2002) ...................................................14

*Patrick Haley, et al. v. Delta Air Lines, Inc.*,
   1:21-CV-01076-TCB (N.D. Ga.)..............................................15

*Robinson v. Shell Oil Co.*,
   519 U.S. 337 (1997)....................................................................4

*Stevens v. CoreLogic, Inc.*,
   899 F.3d 666 (9th Cir. 2018) ...................................................10

*Tahara v. Matson Terminals, Inc.*,
   511 F.3d 950 (9th Cir. 2007) .....................................................4

*Travers v. Fed. Express Corp.*,
   ___ F.4th ___, No. 20-2703, 2021 U.S. App. LEXIS 23671 (3d Cir.
   Aug. 10, 2021) ....................................................................14, 15

*United Savings Ass'n of Tex. v. Timbers of Inwood Forest Assocs.*,
   484 U.S. 365 (1988)..................................................................12

*United States v. Bahe*,
   201 F.3d 1124 (9th Cir. 2000) .................................................12

iii

*United States v. Carpenter*,
    933 F.2d 748 (9th Cir. 1991) ......................................................... 9

*United States v. Fei Ye*,
    436 F.3d 1117 (9th Cir. 2006) ....................................................... 4

*United States v. Wells Fargo Bank*,
    485 U.S. 351 (1988) ....................................................................... 6

*Util. Air Reg. Grp. v. EPA*,
    573 U.S. 302 (2014) ....................................................................... 7

*White v. United Airlines, Inc.*,
    987 F.3d 616 (7th Cir. 2021) ................................................... 14, 15

*Wilderness Soc'y v. United States Fish & Wildlife Serv.*,
    353 F.3d 1051 (9th Cir. 2003) ....................................................... 9

*Yates v. United States*,
    574 U.S. 528 (2015) ....................................................................... 9

*Ziober v. BLB Res., Inc.*,
    839 F.3d 814 (9th Cir. 2016) ....................................................... 11

**State Cases**

*Lam v. City of Cleveland*,
    167 N.E.3d 124 (Ohio Ct. App. 2021) ...................................... 14, 17

**Federal Statutes**

5 U.S.C. § 6323(a)(1) ......................................................................... 6

38 U.S.C. § 4301(a) ...................................................................... 3, 11

38 U.S.C. § 4303 ..................................................................... *passim*

38 U.S.C. § 4303(2) ................................................................. *passim*

38 U.S.C. § 4303(4)(A) .................................................................. 19

38 U.S.C. § 4316(b)(1)(A) ................................................................ 3

38 U.S.C. § 4316(b)(1)(B) ................................................... 3, 5, 8, 16

38 U.S.C. § 4316(d) ....................................................................... 10

38 U.S.C. § 4323(d)(1)(B) .................................................................... 10

**Rules**

Federal Rule of Civil Procedure 12(b)(6) ............................................ 2

**Regulations**

20 C.F.R. § 1002.2 ............................................................................... 12

20 C.F.R. § 1002.7(c) .......................................................................... 14

20 C.F.R. § 1002.37 ............................................................................ 19

20 C.F.R. § 1002.150(b) ............................................................... 16, 18

70 Fed. Reg. 75246 (Dec. 19, 2005) ................................................... 14

**Other Authorities**

156 Cong. Rec. S7656-02 (daily ed. Sep. 28, 2010) ........................... 13

Economics Daily, U.S. BUREAU OF LABOR STATISTICS (Nov. 30, 2018),
   https://www.bls.gov/opub/ted/2018/access-to-paid-military-leave-in-
   2018.htm ............................................................................................ 8

Plaintiff Justin Baker asks this Court to discover a new right in a decades-old statute that would entitle him to be paid twice while working as a military reservist. His claim rests on a mistaken interpretation of the Uniformed Services Employment and Reemployment Rights Act, 38 U.S.C. § 4301 *et seq.* ("USERRA"). Baker maintains that USERRA requires employers to pay employees' salaries during certain military absences—during which servicemembers are paid by the federal government—if the employer pays employees who are absent for jury duty, illness, or bereavement. This contorted reading of USERRA disregards the statute's text, contradicts the major-questions doctrine, and opposes the long-held understanding of the United States Department of Labor and civilian employers alike.

Even if the statutory text encompassed paid leave, USERRA's mandate focuses on equality of treatment, and Baker's demand for paid leave while pursuing a second career is unlike anything afforded to non-military employees. To downplay the novelty of his demand, Baker makes a second amendment to USERRA and declares a category of military leave that he arbitrarily defines as fourteen days or shorter. Neither the military, nor the highly negotiated Collective Bargaining Agreement ("CBA") that governs Baker's employment with Defendant United Parcel Service, an Ohio Corporation ("UPS-Ohio"), recognizes subspecies of military leave based on length. To the contrary, USERRA requires employers to pay all of its employees in a non-discriminatory way, which UPS-Ohio does by paying employees (including military

personnel) for sick leave, bereavement, and jury duty.  Baker does not allege that UPS-Ohio currently double-pays anyone while pursuing a second job.

Finally, Baker incorrectly names both his employer and its holding company (United Parcel Service, Inc., a Delaware corporation ("UPS-Delaware" or collectively with UPS-Ohio, "UPS")) when USERRA permits claims only against an employer.

## I.    STATEMENT OF THE CASE

Baker has worked as a full-time package car driver in Spokane, Washington, since 2007.  ECF No. 16 at ¶ 8.  He has served simultaneously in the Army Reserve since 2014.  *Id.* at ¶ 8.  And since 2015, he has routinely taken annual leave to perform his military obligations.  *Id.* at ¶ 8.  During the periods that he was away from his UPS job on military leave, UPS did not continue to pay Baker hourly wages.  *Id.* at ¶ 34.

Baker alleges that since at least 2004, UPS has not paid employees' wages while they are absent from employment due to military service.  *Id.* at ¶ 30.  UPS offers some paid leave to employees who are absent due to a family member's death or because the employee is ill.  *Id.*  And employees absent from work because of jury service receive the difference between their normal compensation and their jury stipend.  *Id.*

## II.    LEGAL STANDARD

Dismissal under Rule 12(b)(6) is appropriate where a complaint "fail[s] to state a claim upon which relief can be granted," and "may be based on either a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Kwan v. SanMedica Int'l*, 854 F.3d 1088, 1093 (9th Cir. 2017) (quotation

omitted).   On the latter point, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"   *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

## III.   USERRA

Enacted in 1994, USERRA governs the reemployment rights of servicemembers and prohibits employment discrimination against them.   *See* 38 U.S.C. § 4301(a). USERRA includes provisions regarding non-discrimination (Section 4311), reemployment (Sections 4312 and 4313), and entitlement to specific benefits, such as health insurance (Section 4317) and pension (Section 4318).

Relevant here, USERRA provides that employees absent from work for military service are "deemed to be on furlough or leave of absence."  38 U.S.C. § 4316(b)(1)(A). As such, they are "entitled to such other rights and benefits" as provided "to employees having similar seniority, status, and pay who are on furlough or leave of absence under a contract, agreement, policy, practice, or plan" that also applies to the servicemember. 38 U.S.C. § 4316(b)(1)(B).  The statute then defines "rights and benefits" as follows:

> The term "benefit", "benefit of employment", or "rights and benefits" means the terms, conditions, or privileges of employment, including any advantage, profit, privilege, gain, status, account, or interest (including wages or salary for work performed) that accrues by reason of an employment contract or agreement or an employer policy, plan, or practice and includes rights and benefits under a pension plan, a health plan, an employee stock ownership plan, insurance coverage and awards, bonuses, severance pay, supplemental unemployment benefits, vacations, and the opportunity to select work hours or location of employment.

38 U.S.C. § 4303(2).

## IV.    LEGAL ANALYSIS

USERRA does not support Baker's novel theory of liability.  Providing paid leave for illness, bereavement, and jury duty does not oblige an employer to pay regular wages to servicemembers who are absent.  Not one canon of statutory construction supports the theory of liability in this case, and several of them reject it.  This Court should not stretch USERRA to impose a massive obligation that Congress did not adopt.

When interpreting a statute's text "[t]he starting point . . . is always its language." *Tahara v. Matson Terminals, Inc.*, 511 F.3d 950, 953 (9th Cir. 2007) (quoting *United States v. Fei Ye*, 436 F.3d 1117, 1120 (9th Cir. 2006)).  Courts consider "the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997).  If the text is ambiguous, courts may review a statute's "legislative history, and as an aid in interpreting Congress' intent, the interpretation given to it by its administering agency." *Adams v. Bowen*, 872 F.2d 926, 928 (9th Cir. 1989) (quoting *Funbus Sys., Inc. v. Cal. Pub. Util. Comm'n*, 801 F.2d 1120, 1125–26 (9th Cir. 1986)).

### A. USERRA Unambiguously Does Not Require Payment of Ordinary Wages for Work Not Performed.

#### 1.  Every Applicable Canon of Construction Militates in Favor of the Long-Established Interpretation of "Rights and Benefits."

Baker demands UPS pay him his full wages during absences when he is working for the Army.  ECF No. 16 at ¶ 5.  He contends that "paid [military] leave" is a "right

and benefit" under Section 4316(b). *See id.* at ¶ 40. To the contrary, USERRA contains no such provision. While it provides for accrual of various other benefits, its language excludes wages.

The operative provision states that reservists like Baker are deemed to be on furlough or leave (rather than quitting their civilian jobs) and are "entitled to such other rights and benefits" as other employees obtain under the controlling employment agreement (here, the CBA). 38 U.S.C. § 4316(b)(1)(B). The statute then defines "rights and benefits" as "the terms, conditions, or privileges of employment, including any advantage, profit, privilege, gain, status, account, or interest (including wages or salary *for work performed*) that accrues by reason of an employment contract . . . ." 38 U.S.C. § 4303(2) (emphasis added). The definition continues, providing an extensive list of examples: "rights and benefits under a pension plan, a health plan, an employee stock ownership plan, insurance coverage and awards, bonuses, severance pay, supplemental unemployment benefits, vacations, and the opportunity to select work hours or location of employment." *Id.* Notably, wages appear just once, and they are qualified with "for work performed."

Several canons of construction confirm that Section 4316 does not require employers to pay servicemembers while they are working for the military rather than their civilian employer.

***First***, "normally the specific governs the general." *Long Island Care at Home v. Coke*, 551 U.S. 158, 170 (2007). The specific provision for "wages or salary" in Section

5

4303 controls over other, general terms that Baker might otherwise stretch to encompass wages or salary. And that specific provision includes an important qualification: "for work performed." 38 U.S.C. § 4303. This textual limitation is an insurmountable hurdle for Baker's preferred reading. The inclusion of a specific provision addressing wages and salary implies that Congress knew how to address that topic and did so only in the specific context of compensation for work performed. This reading is all the more compelling because Congress amended the specific language involving wages relatively recently. *See FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 143 (2000) (stretching a statute's existing, general provisions "would contradict Congress' clear intent as expressed in its more recent, [wage]-specific legislation.").

Other specific provisions addressing paid military leave confirm that Congress knew how to require payment when it wanted to. Most importantly, Congress requires federal *government* employers to provide "leave without loss in pay" for up to "15 days per fiscal year" for military leave. *See* 5 U.S.C. § 6323(a)(1). This provision addressing wages payable by the government illustrates that Congress intended no such obligation for non-government employers in USERRA's general reference to "rights and benefits."

**Second**, USERRA's long list of examples implicates the *expressio unius* canon: "the expression of one is the exclusion of others." *United States v. Wells Fargo Bank*, 485 U.S. 351, 357 (1988). When a statute provides a list from which a familiar element is missing, courts presume the omission reflects "'deliberate choice, not inadvertence.'"

6

MOTION TO DISMISS – No. 2:21-cv-00114-SMJ

*Bruesewitz v. Wyeth LLC*, 562 U.S. 223, 232–33 (2011) (quoting *Barnhart v. Peabody Coal Co.*, 547 U.S. 149, 168 (2003)).  Here, the litany of examples in Section 4303 includes "benefits under a pension plan, a health plan, an employee stock ownership plan, insurance coverage and awards, bonuses, severance pay, supplemental unemployment benefits, vacations, and the opportunity to select work hours or location of employment."  38 U.S.C. § 4303(2).  It strains credulity that Congress saw fit to enumerate various ancillary benefits without mentioning the single greatest form of compensation that most workers receive: wages.  Ordinary statutory construction holds that the omission was intentional.

*Third*, and relatedly, the major-questions doctrine presumes that "Congress does not hide elephants in mouseholes."  *A Cmty. Voice v. EPA*, 997 F.3d 983, 992 (9th Cir. 2021) (quotation omitted).  More specifically, courts expect Congress to speak clearly rather than through "ambiguous statutory text" when adopting laws that will impact "a significant portion of the American economy."  *Util. Air Reg. Grp. v. EPA*, 573 U.S. 302, 324 (2014) (quotation omitted).  Thus, the Supreme Court rejected a statutory interpretation that would "discover in a long-extant statute an unheralded power to regulate."  *Id.*  So, too, in the present case.  USERRA existed for decades without anyone arguing that its general provisions could be stretched to create a benefit larger than any other contained in the statute, namely a requirement that employers pay servicemembers their full wages while on leave.  If Congress intended to include something so significant, it would have spoken clearly.  It also would have included at

7

least some guidance for how employers should calculate wages for work *not* performed—*e.g.*, should employers continue paying wages based on 40 hours per week, or must they pay overtime when a servicemember-employee works through the weekend for the military?  The policy Baker demands is sufficiently significant that Congress would not have hidden it in vague statutory terms.

And an obligation to pay reservists while they work for the military is a very significant "elephant," indeed.  Only 28% of civilian employers covered by USERRA offer *any* form of paid military leave, including "differential pay" that makes up the difference between military pay and the servicemember's civilian wage.  *See Access to Paid Military Leave in 2018*, The Economics Daily, U.S. BUREAU OF LABOR STATISTICS (Nov. 30, 2018), https://www.bls.gov/opub/ted/2018/access-to-paid-military-leave-in-2018.htm.  The Court may take judicial notice of this publicly available government data.  *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998–99 (9th Cir. 2010).  If Baker's understanding of USERRA were correct, the overwhelming majority of employers—including both large and small businesses—have been violating Section 4316(b)(1)(B) for decades.  And differential pay would not satisfy Baker's version of the statutory requirement.  Given the immense cost of Baker's preferred policy, the major-questions doctrine counsels that if Congress had intended to impose that obligation, it would have done so in express terms on the face of the statute.

***Fourth***, the *noscitur a sociis* canon recognizes "that words are to be judged by their context and that words in a series are to be understood by neighboring words in

the series." *United States v. Carpenter*, 933 F.2d 748, 750–51 (9th Cir. 1991). The point of this contextual canon is to "'avoid ascribing to one word a meaning so broad that it is inconsistent with its accompanying words, thus giving unintended breadth to the Acts of Congress.'" *Yates v. United States*, 574 U.S. 528, 543 (2015) (quoting *Gustafson v. Alloyd Co.*, 513 U.S. 561, 575 (1995)). Whether to expand the provision that Congress adopted is precisely the issue here. In USERRA, the examples of "rights and benefits" clarify that wages are something entirely separate. Examples include "rights and benefits under a pension plan, a health plan, an employee stock ownership plan, insurance coverage and awards, bonuses, severance pay, supplemental unemployment benefits, vacations, and the opportunity to select work hours or location of employment." 38 U.S.C. § 4303(2). These examples represent perquisites apart from and in addition to an employee's wages. Traditional wages are unlike the listed "rights and benefits" and would effect the kind of "unintended" expansion that the Supreme Court rejected in *Yates*.

    ***Finally***, broader statutory context confirms that USERRA's "rights and benefits" do not include wages. "It is . . . 'a fundamental canon that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme.'" *Wilderness Soc'y v. United States Fish & Wildlife Serv.*, 353 F.3d 1051, 1060 (9th Cir. 2003) (quoting *Brown & Williamson*, 529 U.S. at 133). Reading USERRA to erase the limiting phrase "for work performed" is inconsistent with other provisions in the statute. For example, in Section 4316, Congress provided that

9

reservists may elect to use already-accrued "vacation, annual, or similar leave with pay" while they are away on military leave. 38 U.S.C. § 4316(d). This allowance for using accrued vacation time or annual leave "with pay" is unnecessary if USERRA already requires employers to pay for military leave. Similarly, USERRA's remedy provision allows compensation "for any loss of wages *or* benefits." 38 U.S.C. § 4323(d)(1)(B) (emphasis added). If wages were included within the meaning of benefits, there would have been no reason for Congress to provide separately for recovery of wages. Baker's reading of the term "benefits" therefore renders the term "wages" in Section 4323(d)(1)(B) redundant. That reading cannot be correct. *Stevens v. CoreLogic, Inc.*, 899 F.3d 666, 673–74 (9th Cir. 2018) ("It is a fundamental principle of statutory interpretation that we must give effect, if possible, to every clause and word of a statute, so that no part will be inoperative or superfluous, void or insignificant" (quotations omitted)).

\*    \*    \*

Each of the foregoing tools of statutory construction confirms what the text of Sections 4316 and 4303 makes clear: USERRA protects "rights and benefits" like choosing shifts (a right) and health insurance (a benefit). Wages are entirely different. Had Congress intended to require employers to pay employees while working for the military, it would have said so expressly. Because it did not, Baker cannot state a claim, and this Court should dismiss the case.

### 2. Statutory Purpose and Legislative History Confirm the Text's Plain Meaning.

USERRA's stated purpose is to "encourage noncareer service in the uniformed services by eliminating or minimizing the disadvantages to civilian careers and employment which can result from such service;" and "to prohibit discrimination against persons because of their service in the uniformed services." 38 U.S.C. § 4301(a); *Ziober v. BLB Res., Inc.*, 839 F.3d 814, 817 (9th Cir. 2016) ("Congress passed USERRA to broadly prohibit employment discrimination against . . . those who serve in the military"). The goal of "minimizing the disadvantages to civilian careers" does not require that civilian employers continue paying wages to workers who are absent. That result would depart from USERRA's equality goal and veer into the realm of special benefits for military members. No other UPS employee is paid while pursuing a second career.

As a matter of legislative history, the Congressional Budget Office ("CBO") estimated that USERRA's "enactment . . . would not entail any significant new regulation of individuals or business." S. Rep. No. 103-158, at 84. The Senate also found that USERRA "would not affect the budgets of State and local governments" at all. *Id*. This conclusion is impossible if USERRA obligated employers—public and private alike—to pay the full wages of employees while on leave for military service.

The legislative history is otherwise devoid of anything to indicate that Baker's sweeping view of USERRA is correct. That silence speaks volumes. If Congress had intended to require every employer in the country to pay servicemember employees

11

MOTION TO DISMISS – No. 2:21-cv-00114-SMJ

while away from work, one would expect "at least some discussion" of that remarkable consequence. *Dewsnup v. Timm*, 502 U.S. 410, 419 (1992); *see also United Savings Ass'n of Tex. v. Timbers of Inwood Forest Assocs.*, 484 U.S. 365, 380 (1988) (describing as "most improbable" the adoption of a major policy "without even any mention in the legislative history"). This expectation is especially reasonable when Congress has decades of experience with numerous statutes protecting veterans in the workforce. *See* 20 C.F.R. § 1002.2 (noting the "large body of case law" developed under fifty years of "laws protecting veterans' employment and reemployment rights"). "Absent any mention in a statute's legislative history that Congress intended a change, courts ordinarily will refuse to find that ambiguous statutory language significantly alters an existing statutory scheme." *United States v. Bahe*, 201 F.3d 1124, 1132 (9th Cir. 2000). USERRA is part of a long line of statutes intended to protect the rights of servicemembers in the workforce. If it was designed to do more than that, both text and history would contain at least *some* indication that Congress was imposing a significant new obligation on employers.

Indeed, the only reference to wages in Section 4303(2) is the phrase "including wages or salary for work performed," which Congress added in 2010 with the specific purpose of overruling an Eighth Circuit decision, *Gagnon v. Sprint Corp.*, 284 F.3d 839 (8th Cir. 2002). In *Gagnon*, an employee brought suit pursuant to Section 4311, which proscribes the denial of any "benefit" of employment by an employer on the basis of military status. *Id.* at 852. The plaintiff asserted "that because of his military

12

MOTION TO DISMISS – No. 2:21-cv-00114-SMJ

background, he received a lower starting salary." *Id.* The court held that an employee's wage *rate* was not a benefit within the meaning of the statute. *Id.* at 853. At that time, the parenthetical in Section 4303 read "*other than* wages or salary for work performed." 38 U.S.C. § 4303 (2006) (emphasis added). Congress amended the parenthetical in 2010 "to make it clear that wage discrimination is not permitted under USERRA." 156 Cong. Rec. S7656-02, S7662 (daily ed. Sep. 28, 2010).

This straightforward rationale for the single reference to "wages or salary" confirms the meaning of the text. Congress sought to protect servicemembers like the plaintiff in *Gagnon*—*i.e.*, individuals who worked for their civilian employer and were therefore due compensation undiminished by the fact that they were reservists. If Congress had meant to create a new claim for compensation for time not spent working for a civilian employer, it would at least have omitted the reference to "work performed." In any event, the history of Congress's decision to switch from "other than" to "including" work performed reveals no attempt to transform USERRA to require overlapping payments by a reservist's military and civilian employers.

From the CBO's expectation that USERRA would not impose any additional costs on employers to the deafening silence surrounding payment of wages while reservists are away on military leave, legislative history confirms the plain meaning of the text. USERRA simply does not require what Baker demands.

### 3. Courts And Agencies Have Consistently Understood "Rights and Benefits" as Distinct from Wages.

Courts across the country have for decades recognized that USERRA does not

13

require employers to offer paid military leave.  *See, e.g., Miller v. City of Indianapolis*, 281 F.3d 648, 650 (7th Cir. 2002) ("[USERRA] does not expressly require paid military leave."); *Lam v. City of Cleveland*, 167 N.E.3d 124, 131 (Ohio Ct. App. 2021) ("The Act does not require employers to pay employees' wages while they are on military leave.").  Nor have they required the smaller effort of making up the difference between a servicemember's government salary and the wages earned with his civilian employer. *Brooks v. Fiore*, C.A.No. 00-803 GMS, 2001 U.S. Dist. LEXIS 16345, at *26 (D. Del. Oct. 11, 2001) ("[T]here is no requirement under USERRA that [the employer] provide such differential pay to its employees.").

The United States Department of Labor ("DOL") agrees: "USERRA does not require an employer to pay an employee for time away from work performing service . . . ."  20 C.F.R. § 1002.7(c); 70 Fed. Reg. 75246, 75292 (Dec. 19, 2005) ("employees absent from employment for military service are not required to be compensated by their civilian employer during that service . . . .").  Indeed, the DOL noted that "in some cases" employers choose to provide either full pay or differential pay while on military leave.  *Id.* at 75249.  DOL referred to this practice as "a generous show of support."  *Id.* It has never required such generosity, however.

In recent months, two circuit courts have broken with this tradition, but their reasoning is unpersuasive and not responsive to the arguments in this case.  *See Travers v. Fed. Express Corp.*, ___ F.4th ___, No. 20-2703, 2021 U.S. App. LEXIS 23671 (3d Cir. Aug. 10, 2021); *White v. United Airlines, Inc.*, 987 F.3d 616 (7th Cir. 2021).

Neither case addressed the textual analysis militating against the plaintiffs' theory. For example, *White* dismissed the *expressio unius* canon as "much[] derided" and overlooked flaws in the plaintiff's interpretation because "some redundance is rarely fatal on its own." 987 F.3d at 621–22. In fact, the Seventh Circuit brushed aside no fewer than *four* canons of construction that pointed uniformly to the conclusion that the United States District Court for the Northern District of Illinois had reached in granting dismissal. *Travers* engaged the issue even less seriously, assuming that all leave must include pay if any form of leave does, overlooking all but one point of legislative history, and disregarding two canons of construction in a footnote. *Travers*, 2021 U.S. App. LEXIS 23671, at *8–12, 14 & n.19. Whatever limitations statutory construction might have, courts should not overlook the unanimous verdict of every applicable canon (as well as history and purpose). The DOL and the courts following the long-standing rule have the better view.[1]

### B. Alternatively, Military Leave Is Not Comparable to Other Forms of Leave.

Even if Section 4316 could possibly be read to require civilian employers to pay employees while they work for the government, the test is whether the employer provides a *comparable* benefit to non-reservists. Baker identifies sick leave,

---

[1] Additional cases are pending at the District Court level in this and the Third Circuits as well as an appeal in this Circuit, *Clarkson v. Alaska Airlines, Inc.*, Case No. 21-35473 (9th Cir.). And plaintiffs have filed similar lawsuits in at least two other circuits, *Patrick Haley, et al. v. Delta Air Lines, Inc.*, 1:21-CV-01076-TCB (N.D. Ga.); *Conaissa Won v. Amazon.com Services, LLC, et al.*, 1:21-cv-02867-NGG-RER (E.D.N.Y.).

15

MOTION TO DISMISS – No. 2:21-cv-00114-SMJ

bereavement leave, and leave for jury service as candidates for comparable leave. Not only does UPS provide each of these benefits to servicemembers on identical terms, but precedent and regulations confirm their dissimilarity to military leave.

If paid military leave were a benefit under Section 4316(b), then employers would need to provide it on equal terms to military and non-military employees. The question is whether the right or benefit that the reservist seeks to obtain "accrues by reason of an employment contract or agreement or an employer policy, plan, or practice," 38 U.S.C. § 4303(2), and is "generally provided by the employer" to similar non-reservist employees on leave of absence, *id.* § 4316(b)(1)(B). USERRA itself does not require any benefits at all (*e.g.*, employers need not pay bonuses, which are listed as an example in Section 4303). Its only requirement is equal treatment.

Because no one at UPS-Ohio receives paid military leave, Baker casts a wider net, reaching for other, non-military leave as a comparison. ECF No. 16 at ¶ 3 (identifying "jury duty leave, sick leave, [and] bereavement leave"). But those forms of leave are nothing like absences necessary to pursue a parallel career in the military. The DOL has promulgated regulations to address precisely this issue. 20 C.F.R. § 1002.150(b). "In order to determine whether any two types of leave are comparable, the duration of the leave may be the most significant factor," but "other factors such as the purpose of the leave and the ability of the employee to choose when to take the leave should also be considered." *Id.* The three forms of leave that Baker alleges are comparable fail under the regulatory definition.

16

MOTION TO DISMISS – No. 2:21-cv-00114-SMJ

**Jury duty.**  Courts have routinely rejected a comparison to jury service because the two forms of leave serve different purposes.  *See, e.g.*, *Lam*, 167 N.E.3d at 132 ("Jury duty leave is not comparable to military leave—the two leaves are for entirely different purposes.").  This Court addressed this issue just two months ago in granting a motion for summary judgment.  *Clarkson v. Alaska Airlines, Inc.*, No. 2:19-CV-0005-TOR, 2021 U.S. Dist. LEXIS 98123 (E.D. Wash. May 24, 2021), *on appeal*, Case No. 21-35473 (9th Cir.).  As *Clarkson* explained, "[t]he purpose of jury duty is to fulfill a compulsory duty to the courts; it is not a parallel career."  *Id.* at *21.  The Court also observed that "the compensation and frequency" of jury service is unlike serving in the military reserves.  *Id.*  Although *Clarkson* disposed of the case on summary judgment, factual development is unnecessary to identify the different purposes of jury service and military careers.  Here, the complaint does not even bother to assert that the two forms of leave serve the same purpose, nor could it.

In terms of duration, which the Court need not reach in light of the divergent purposes that make military leave incomparable to jury service, Baker functionally admits that even short-term military leave lasts much longer than any other leave of absence by inventing a classification of "short-term military leave."  *E.g.*, ECF No. 16 at ¶¶ 1, 2.  He defines this species of leave as capped at fourteen days.  *Id.* at ¶ 1.  The problem is that no one else recognizes different types of military leave based on length.  Neither USERRA nor the relevant CBA recognizes sub-species of military leave.  Instead, this maneuver is the invention of plaintiffs' lawyers looking to plead around

17

MOTION TO DISMISS – No. 2:21-cv-00114-SMJ

the flaws in their latest theory, but even they cannot agree on where to draw the arbitrary line. *See Clarkson*, 2021 U.S. Dist. LEXIS 98123, at *11 (defining "short-term military leave" as 30 days or less). More troubling is the prospect that plaintiffs could avoid dismissal by simply declaring that their claims satisfy one of the regulatory criteria (namely, duration) for comparability. That is not the law. *See Twombly*, 550 U.S. at 555 "([A] formulaic recitation of the elements of a cause of action will not do."). The only important thing about Baker's "short-term" ploy is what it tacitly admits: military leave under USERRA lasts much longer than leave taken for jury duty or the flu.

**Sick leave.** Baker is mistaken to compare military leave to sick leave. Once again, the two species of leave serve radically different purposes: one allows for rest and recuperation, while the other is an occasion for arduous work that, if anything, puts the servicemember in *danger* of physical harm rather than serving the sole purpose of allowing recovery. Additionally, and like jury service, illnesses typically pass in a few days. Military leave, on the other hand, will consume at least two consecutive weeks each year—even accepting Baker's attempt to exclude longer deployments.

**Bereavement.** Finally, bereavement leave is so glaringly dissimilar to military service that the DOL uses it as an example of *in*comparable leave: "For instance, a two-day funeral leave will not be 'comparable' to an extended leave for service in the uniformed service." 20 C.F.R. § 1002.150(b). And even if USERRA recognized a "short-term" leave of 14 days, it too would not be comparable to bereavement leave. In terms of purpose, duration, and the ability to schedule it, bereavement leave is nothing

like military leave.

Military leave is a distinct and important form of leave. Its importance explains why the nation pays its reserve servicemembers; its distinctness from other types of leave explains why employers do not break the law by providing paid leave for jury duty, illness, and bereavement without also paying reservists while they carry out their parallel career in the military. Even if USERRA could be read to encompass wages, these other forms of leave do not satisfy the requirement of a comparator for military leave. Baker has therefore failed to state a claim under USERRA.

### C. UPS of Delaware Does Not Employ Baker.

USERRA defines "employer" as an "entity that pays salary or wages for work performed or that has control over employment opportunities," including an "entity to whom the employer has delegated the performance of employment-related responsibilities." 38 U.S.C. § 4303(4)(A); *see also* 20 C.F.R. § 1002.37. The statutory definition "is concerned only with the 'person, institution, organization, or other entity' that carries out 'employment-related responsibilities,' and not with who controls the overall enterprise." *Dees v. Hyundai Motor Mfg. Ala., LLC*, 605 F. Supp. 2d 1220, 1224 (M.D. Ala. 2009), *aff'd,* 368 F. App'x 49 (11th Cir. 2010).

Baker cannot decide who employs him. He alleges a different employer in this case than in his single-plaintiff retaliation case. *Baker v. United Parcel Serv.*, 2:21-cv-00162-SMJ ("*Baker II*"). Here, he names his actual employer, UPS-Ohio, as well as the holding company that owns that entity, UPS-Delaware. ECF No. 16 at ¶¶ 10, 12.

Only UPS-Ohio employs Baker.  As alleged in *Baker II*: only UPS-Ohio is party to the CBA; only UPS-Ohio issues Baker a W-2; and only UPS-Ohio controls Baker's work. *See Baker II*, ECF No. 7 at ¶¶ 5–6, 10.  The current complaint is devoid of any factual detail to support a contrary conclusion.

## V.    CONCLUSION

UPS proudly employs thousands of servicemembers.  When those individuals perform work on behalf of a different employer, namely the federal government, Congress rightly bears the expense.

Baker's ambitious theory for collecting double pay finds no support in the text of USERRA.  That law defines "rights and benefits" in a way that unambiguously excludes regular wages.  Every canon of construction points to that conclusion, as does legislative purpose and history.  Because the compensation requirement Baker advocates is beyond the statutory text, he cannot state a claim for relief.  Even if he could stretch the statute, he cannot satisfy the second requirement of discrimination, namely comparable leave paid to non-military employees.  This Court should dismiss the case.

Dated:  August 25, 2021

**GREENBERG TRAURIG, LLP**


*/s/ James M. Nelson*
James M. Nelson

Attorney for Defendants
UNITED PARCEL SERVICE, INC., a
Delaware corporation, and UNITED
PARCEL SERVICE, INC., an Ohio
corporation

JAMES M. NELSON (WSBA No.
44652)
**GREENBERG TRAURIG, LLP**
2375 East Camelback Road, Suite 700
Phoenix, Arizona  85016
Telephone:  (602) 445-8000
Facsimile:  (602) 445-8100
E-mail: nelsonj@gtlaw.com

21

# CERTIFICATE OF SERVICE

The undersigned certifies that, on August 25, 2021, a true and correct copy of Defendants' Motion to Dismiss was served on all counsel of record by the Court's electronic filing system (CM/ECF).

By:    */s/ James M. Nelson*
James M. Nelson

ACTIVE 58496233v14