Thomas G. Jarrard (WSBA #39774)
LAW OFFICE OF THOMAS G. JARRARD, PLLC
1020 N. Washington St.
Spokane, WA 99201
Telephone: (425) 239-7290
tjarrard@att.net

Michael J. Scimone*
OUTTEN & GOLDEN LLP
685 Third Avenue, 25th Floor
New York, NY 10017
Telephone: (212) 245-1000
Fax: (646) 509-2060
mscimone@outtengolden.com

[Additional attorneys listed on following page]
*Attorneys for Plaintiff and the Proposed Class*

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WASHINGTON**

| | |
|---|---|
| JUSTIN BAKER, on behalf of himself and all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> UNITED PARCEL SERVICE, INC., a Delaware corporation, and UNITED PARCEL SERVICE, INC., an Ohio corporation, <br><br> Defendants. | **Case No. 21-cv-00114-SMJ** <br><br> **PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS** |

Matthew Z. Crotty (WSBA #39284)
CROTTY & SON LAW FIRM, PLLC
905 W. Riverside Ave., Suite 404
Spokane, WA 99201
Telephone: (509) 850-7011
matt@crottyandson.com

R. Joseph Barton*
BLOCK & LEVITON LLP
1735 20th Street, NW
Washington D.C. 20009
Telephone: (202) 734-7046
Fax: (617) 507-6020
jbarton@blockesq.com

Peter Romer-Friedman**
GUPTA WESSLER PLLC
1900 L Street, NW, Suite 312
Washington, DC 20036
Telephone (202) 888-1741
peter@guptawessler.com

* admitted *pro hac vice*
** *pro hac vice* application forthcoming

*Attorneys for Plaintiff and the Proposed Class*

# <u>TABLE OF CONTENTS</u>

INTRODUCTION ......................................................................................................1

I.    Background..........................................................................................................2

II.   Argument .............................................................................................................2

    A.    Plaintiff Plausibly Alleges That UPS Violated § 4316(b)......................3

        1.    The Plain Text of USERRA Defines "Rights and Benefits" to Include Wages ...........................................................................5

        2.    UPS Tortures the Plain Statutory Text to No Avail .................6

            i.    The General/Specific Canon..............................................7

            ii.    *Expressio Unius Est Exclusio Alterius* (The Negative-Implication Canon)..........................................................8

            iii.    Major-Questions Doctrine (No Elephants in Mouseholes)..................................................................9

            iv.    *Noscitur a Sociis* (Words Bear on One Another's Meaning)....................................................10

            v.    Anti-Redundancy Canon .................................................11

        3    The History and Purpose of USERRA Support Plaintiff's Reading. ...................................................................12

        4.    Comparability Is a Fact-Based Determination Inappropriate for Consideration at the Dismissal Stage.......................................14

    B.    Plaintiff Plausibly Alleges That UPS-Delaware Is His Employer..........19

CONCLUSION ......................................................................................................20

1

# TABLE OF AUTHORITIES

2

CASES                                                                    PAGE(S)

3    *Ameritech Corp. v. McCann*,
        403 F.3d 908 (7th Cir. 2005) ...............................................................14

4    *Ashcroft v. Iqbal*,
        556 U.S. 662 (2009).............................................................................3

5    *Baker v. United Parcel Serv. Inc.*,

6        No. 21 Civ. 162 (E.D. Wash. 2021)...................................................18

7    *Bloate v. United States*,
        559 U.S. 196 (2010)..............................................................................6

8    *Bostock v. Clayton Cty.*,

9        140 S. Ct. 1731 (2020)......................................................................9, 10

10   *Brill v. AK Steel Corp.*,
        No. 09 Civ. 534, 2012 WL 893902 (S.D. Ohio Mar. 14, 2012)....................4, 16

11   *Burgess v. United States*,
        553 U.S. 124 (2008)..............................................................................5

12
     *Carder v. Cont'l Airlines, Inc.*,
13       636 F.3d 172 (5th Cir. 2011) ..................................................................6

14   *Clarkson v. Alaska Airlines, Inc.*,
        No. 19 Civ. 5, 2021 WL 2080199 (E.D. Wash. May 24, 2021)........................17

15   *Duffer v. United Cont'l Holdings, Inc.*,
        173 F. Supp. 3d 689 (N.D. Ill. 2016).................................................16

16
     *Gagnon v. Sprint Corp.*,
17       284 F.3d 839 (8th Cir. 2002) ...............................................................13

18   *In re Gilead Scis. Sec. Litig.*,
        536 F.3d 1049 (9th Cir. 2008) ................................................................2

19   *Huntsman v. Sw. Airlines*,

20       No. 19 Civ. 83 (N.D. Cal. 2019)...........................................................4

21   *Intel Corp. Inv. Policy Comm. v. Sulyma*,
        140 S. Ct. 768 (2020)............................................................................5

*Jewel v. Nat'l Sec. Agency*,
  673 F.3d 902 (9th Cir. 2011) ................................................................3

*Kingdomware Techs., Inc. v. United States*,
  136 S. Ct. 1969 (2016)........................................................................5

*Rogers v. City of San Antonio*,
  392 F.3d 758 (5th Cir. 2004) .............................................................16

*Scanlan v. Am. Airlines Grp., Inc.*,
  384 F. Supp. 3d 520 (E.D. Pa. 2019)............................................*passim*

*Sheppard v. David Evans & Assoc.*,
  694 F.3d 1045 (9th Cir. 2012) .............................................................3

*Travers v. Fed. Express Corp.*,
  8 F.4th 198 (3d Cir. 2021) ..............................................................*passim*

*Tully v. Dep't of Justice*,
  481 F.3d 1367 (Fed. Cir. 2007) ...........................................3, 11, 17

*Tyson Foods, Inc. v. Bouaphakeo*,
  577 U.S. 442 (2016)...........................................................................18

*Waltermyer v. Aluminum Co. of America*,
  804 F.2d 821 (3d Cir. 1986) ................................................12, 13, 17

*White v. United Airlines, Inc.*,
  987 F.3d 616 (7th Cir. 2021) ........................................................*passim*

*Wyler Summit P'ship v. Turner Broad. Sys., Inc.*,
  135 F.3d 658 (9th Cir. 1998) .............................................................15

**STATUTES**

5 U.S.C. § 6323 ......................................................................................8

38 U.S.C. § 4303 ...........................................................................*passim*

38 U.S.C. § 4316 ...........................................................................*passim*

38 U.S.C. § 4323 ..................................................................................12

1

**REGULATIONS**

2  20 C.F.R. § 1002.150 ........................................................................................15, 16

3  **OTHER AUTHORITIES**

Antonin Scalia & Bryan A. Garner, *Reading Law* (2012).........................................7

4

5  5B Charles Alan Wright & Arthur R. Miller, *Federal Practice &*
   *Procedure* § 1356 (3d ed.) ....................................................................................2

6  H.R. Rep. No. 103-65 (1993)....................................................................................12

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

1

# **INTRODUCTION**

2       This suit alleges a violation of the Uniformed Services Employment and

3    Reemployment Rights Act ("USERRA") against UPS for failing to pay workers

4    who take short-term military leave while paying workers who take comparable

5    forms of non-military leave.  Congress enacted USERRA, 38 U.S.C. §§ 4301-

6    4335, to encourage noncareer military service and ensure that reservists who miss

7    work to fulfill service obligations receive all "rights and benefits not determined by

8    seniority as are generally provided" to similarly situated employees who take a

9    leave of absence comparable to their military leave.  *Id.* § 4316(b).  USERRA's

10   definition of "rights and benefits" is expansive and contains no exceptions.  *Id.*

11   § 4303(2).  The law's text and legislative history reveal that pay for work not

12   performed (*i.e.*, paid leave) is among the "rights and benefits" that must be

13   provided on equal terms.  The Third and Seventh Circuits recently reached the

14   same conclusion.  *Travers v. Fed. Express Corp.*, 8 F.4th 198 (3d Cir. 2021) (3-0);

15   *White v. United Airlines, Inc.*, 987 F.3d 616 (7th Cir. 2021) (3-0).

16       Plaintiff's claim is, at its heart, one of disparate treatment; its goal is to

17   remove barriers to military service by avoiding loss of pay during short-term leave,

18   on the same terms that UPS pays employees who must miss work to attend to other

19   obligations of similar kind and duration.  UPS's attempt to frame Plaintiff's claim

20   otherwise is unhelpful to a motion to dismiss and should be rejected.

21

## I.    <u>Background</u>

Plaintiff Justin Baker is a Sergeant in the U.S. Army Reserve and has been a full-time package driver for UPS since June 2007.  ECF No. 16 (First Amended Complaint ("FAC")) ¶ 8.  Since at least 2015, he has routinely taken short-term military leave (of 14 consecutive days or fewer) from his employment at UPS to perform his reserve duties.  *Id.*  During those periods, UPS did not pay him his regular wages pursuant to company policy.  *Id.* ¶ 43; *see id.* ¶¶ 30, 34.  But UPS does pay employees on sick leave and bereavement leave, and provides differential pay to employees on leave for jury duty (*i.e.*, the difference between their UPS pay and any stipend received for jury service).  *Id.* ¶ 35.  Plaintiff alleges that short-term military leave is comparable to sick leave, bereavement leave, and jury leave in duration, purpose, and/or voluntariness.  *Id.* ¶¶ 36-39, 48.  The FAC alleges that United Parcel Service, Inc. ("UPS-Ohio") and United Parcel Service, Inc. ("UPS-Delaware") (collectively, "UPS") violated § 4316(b) by failing to pay workers who take short-term military leave, while providing pay to workers who take comparable forms of non-military leave.  *Id.* ¶¶ 1-4, 45-49.

## II.    <u>Argument</u>

A motion to dismiss "is not a procedure for resolving a contest between the parties about the facts or the substantive merits of the plaintiff's case."  5B Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1356 (3d ed.); *see In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1057 (9th Cir. 2008) ("[A] district

1    court ruling on a motion to dismiss is not sitting as a trier of fact.").  Instead, the

2    only question is whether the complaint sets forth a "short and plain statement of

3    the claim showing that the pleader is entitled to relief." *Sheppard v. David Evans*

4    *& Assoc.*, 694 F.3d 1045, 1048 (9th Cir. 2012) (quoting Fed. R. Civ. P. 8(a)(2)).  In

5    evaluating this question, "a court must accept as true all of the allegations" and the

6    "complaint must contain sufficient factual matter, accepted as true, to 'state a claim

7    to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

8    (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The Court must

9    "draw all reasonable inferences in favor of the nonmoving party." *Jewel v. Nat'l*

10    *Sec. Agency*, 673 F.3d 902, 907 (9th Cir. 2011) (quoting *Bernhardt v. Cty. of Los*

11    *Angeles*, 279 F.3d 862, 867 (9th Cir. 2002)).

12         The FAC plausibly pleads a violation of USERRA based on UPS's policies,

13    and that both UPS-Ohio and UPS-Delaware acted as Plaintiff's employer within

14    the meaning of § 4303(4)(A).  At this stage, nothing more is needed.

15         **A.    Plaintiff Plausibly Alleges That UPS Violated § 4316(b)**

16         The core issue in this Motion is whether continuation of pay during leave is

17    a "right[]" or "benefit[]" as defined by USERRA § 4303(2).  It clearly is.  Every

18    court to decide this question (except two district courts that were reversed) has

19    agreed. *See Travers v. Fed. Express Corp.*, 8 F.4th 198, 209 (3d Cir. 2021); *White*,

20    987 F.3d at 619; *Tully v. Dep't of Justice*, 481 F.3d 1367, 1370 (Fed. Cir. 2007)

21    ("Payment of an employee's salary while the employee is absent from work is a

1  benefit provided during the absence . . . .”); *Scanlan v. Am. Airlines Grp., Inc*., 384

2  F. Supp. 3d 520, 524-28 (E.D. Pa. 2019); *Huntsman v. Sw. Airlines*, No. 19 Civ. 83

3  (N.D. Cal. Nov. 27, 2019), ECF No. 59 (denying motion for judgment on the

4  pleadings), ECF No. 62 (Hr'g Tr.) at 24-25 (stating that “it's actually fairly

5  simple” why paid leave “is a benefit”); *Brill v. AK Steel Corp*., No. 09 Civ. 534,

6  2012 WL 893902, at *6 (S.D. Ohio Mar. 14, 2012) (concluding that “paying [a

7  reservist] his full salary for time spent on military leave,” as the employer did for

8  “employees on jury duty/witness leave,” “would be complying with the statutory

9  mandate to give the employee the most favorable treatment accorded any

10  comparable form of leave”).

11      Plaintiff's claim rests on USERRA § 4316(b)(1), which says:

12  a person who is absent from a position of employment by reason of
    service in the uniformed services shall be . . . entitled to such other *rights*
13  *and benefits* not determined by seniority as are generally provided by the
    employer of the person to employees having similar seniority, status, and
14  pay who are on furlough or leave of absence under a contract, agreement,
    policy, practice, or plan in effect at the commencement of such service.

15  38 U.S.C. § 4316(b)(1) (emphasis added).  The term “rights and benefits” is

16  defined by § 4303(2), which states:

17  The term “benefit”, “benefit of employment”, or “rights and benefits” means
    the terms, conditions, or privileges of employment, *including any advantage,*
18  *profit, privilege, gain,* status, account, or interest (*including* wages or salary for
    work performed) that accrues by reason of an employment contract or
19  agreement or an employer policy, plan, or practice and *includes* rights and
    benefits under a pension plan, a health plan, an employee stock ownership plan,
20  insurance coverage and awards, *bonuses, severance pay, supplemental*

21

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS - 4

*unemployment benefits, vacations*, and the opportunity to select work hours or location of employment.

38 U.S.C. § 4303(2) (emphases added). The right to receive one's wages while on leave easily falls within this definition.

### 1. The Plain Text of USERRA Defines "Rights and Benefits" to Include Wages.

Where a statute's text "is unambiguous and 'the statutory scheme is coherent and consistent'—as is the case here—'[t]he inquiry ceases.'" *Kingdomware Techs., Inc. v. United States*, 136 S. Ct. 1969, 1976 (2016) (quoting *Barnhart v. Sigmon Coal Co.*, 534 U.S. 438, 450 (2002)). A court "must enforce plain and unambiguous statutory language" in USERRA, "as in any statute, 'according to its terms.'" *Intel Corp. Inv. Policy Comm. v. Sulyma*, 140 S. Ct. 768, 776 (2020) (quoting *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 251 (2010)); *see also Travers*, 8 F.4th at 200. And "[s]tatutory definitions control the meaning of statutory words." *Burgess v. United States*, 553 U.S. 124, 129-30 (2008). Thus, "[w]hen Congress furnishes a statutory definition for a term, the specialized meaning it selects takes priority over the everyday meaning of words." *White*, 987 F.3d at 621.

The definition here – "rights and benefits," 38 U.S.C. § 4303(2) – is "extremely broad." *Scanlan*, 384 F. Supp. 3d at 526; *accord White*, 987 F.3d at 621; *Travers*, 8 F.4th at 205-08. It includes "*any* advantage, profit, privilege, gain" of employment. 38 U.S.C. § 4303(2) (emphasis added). It "is intentionally framed

1  in general terms to encompass the potentially limitless variations in benefits."

2  *Carder v. Cont'l Airlines, Inc.*, 636 F.3d 172, 182 (5th Cir. 2011).

3  And rather than include any language limiting the phrase "rights and

4  benefits," Congress did the opposite: it "filled the rest of the definition with

5  expansive and illustrative words such as 'including' and 'any.'" *White*, 987 F.3d at

6  621 (citing *Smith v. Berryhill*, 139 S. Ct. 1765, 1774 (2019) ("Congress' use of the

7  word 'any' suggests an intent to use [the accompanying] term expansive[ly]."

8  (citation omitted))); *see also Bloate v. United States*, 559 U.S. 196, 207 (2010)

9  ("including" is "an expansive or illustrative term"); *Travers*, 8 F.4th at 205 & n.16

10  ("'[A]ny' and 'including' mean the list explains, without exhausting."); *Scanlan*,

11  384 F. 3d at 526 (same).

12  Wages fit easily within this expansive definition because they are the main

13  "advantage" of a job and are how employees "profit" and "gain" from a job.  These

14  terms "easily reach[] . . . payment during leave." *Travers*, 8 F.4th at 205 (citing

15  Merriam-Webster's Collegiate Dictionary (10th ed. 1993), "Advantage: superiority

16  of position or condition . . . [b]enefit, gain; esp: benefit resulting from some course

17  of action"; "Profit: a valuable return . . . [n]et income usu. for a given period of

18  time"; "Gain: resources or advantage acquired . . . ."); *accord White*, 987 F.3d at

19  621.  This "essentially ends our inquiry." *White*, 987 F.3d at 621.

20  **2.    UPS Tortures the Plain Statutory Text to No Avail.**

21  UPS reaches for canons of interpretation to alter USERRA's plain definition

1   of "rights and benefits," but its arguments do not work.  They either misuse the

2   canons in question or ignore other canons that supply a better and less inferential

3   reading.  UPS overlooks the fact that canons do not render "verdicts," ECF No. 26

4   ("Defs.' Br."), at 15, courts do.  And contrary to UPS's suggestion, federal courts,

5   including those in *White* and *Travers*, have fully considered the same arguments

6   UPS makes here and unanimously rejected them.

### i.    The General/Specific Canon

8           UPS argues that the phrase "including wages or salary for work performed"

9   trumps the preceding words, "any advantage, profit, privilege, gain."  This is

10  wrong.  The "general/specific canon" applies only when two terms irreconcilably

11  conflict with one another.  *See* Antonin Scalia & Bryan A. Garner, *Reading Law*

12  183 (2012).  And here, "any advantage, profit," etc. is in harmony with "including

13  wages and salary for work performed," not in conflict.  UPS overlooks the canon

14  that a parenthetical that begins with "including" is "illustrative, not exclusionary."

15  *White*, 987 F.3d at 621 (citing *Chickasaw Nation v. United States*, 534 U.S. 84, 89

16  (2001)); *see also* Scalia & Garner, *supra*, at 132 (describing canon stating the

17  "Presumption of Nonexclusive 'Include'").  Thus a phrase that describes "any

18  advantage . . . including wages" includes wages, even if the *kind* of wages at issue

19  ("for work performed") is specific.  After all, other terms in the text[1] refer to wages

---

[1]     See the *Noscitur a Sociis* canon, Part II.A.2.iv, below.

that are paid when work is *not* performed, such as "severance pay, supplemental unemployment benefits, [and] vacations."  38 U.S.C. § 4303(2); *see also Scanlan*, 384 F. Supp. 3d at 526 ("[I]f severance pay and vacations . . . are merely illustrations of the definition of rights and benefits and involve pay for work not performed, we are hard pressed to understand why compensation for time on military leave for work not performed would not also fit within the definition.").

Nor is it meaningful that a different statute – 5 U.S.C. § 6323(a)(1) – provides paid leave for a different class of federal employees.  *See White*, 987 F.3d at 624 ("There is nothing incompatible between section 6323 and USERRA.").  Congress can pass an expansive statutory provision without being burdened to list every example that it has addressed in some other part of the Federal Code.

### ii.    *Expressio Unius Est Exclusio Alterius* (The Negative-Implication Canon)

UPS's invocation of the *expressio unius* canon is ill-considered.  It forgets that "[v]irtually all the authorities who discuss the negative-implication canon emphasize that it must be applied with great caution, since its application depends so much on context."  Scalia & Garner, *supra*, at 107; *see also White*, 987 F.3d at 622 ("[W]e are loath to place as much weight as United does on the *expressio unius* canon, which we have characterized as 'much-derided' and 'disfavored.'").  And the statutory context here points in another direction, because the "litany of examples" of rights and benefits in § 4303(2), Defs.' Br. 7, begins with

"including."  The *expressio unius* canon is therefore "especially inapt" because

"applying the canon would contradict the surrounding text."  *White*, 987 F.3d at

622.  By analogy, a hypothetical law that applied to "any firearm, including

handguns" would not impliedly *exempt* assault rifles.  That would make no sense,

because "[i]t would be peculiar to read inclusive language embedded within a

broadly worded definition as performing an exclusionary function."  *Id.* at 621.

### iii.    Major-Questions Doctrine (No Elephants in Mouseholes)

UPS argues that Congress would have used clearer text if it had intended to

require "something so significant" as paid leave.  Defs.' Br. 7.  But UPS fails to

identify either an elephant or a mousehole.  There is no evidence that continuing

wages during military leave imposes a requirement "larger than any other

contained in the statute."  *Id*.  If anything, the fact that "[o]nly" 28% of employers

offer paid military leave, *id.* at 8, suggests it is not such a crushing burden after all.

Nor does Plaintiff's interpretation mean the "overwhelming majority" of

employers are violating USERRA or that "differential pay would not satisfy" the

statute.  *Id*.  USERRA only requires paid leave if the employer pays for a

comparable leave.  That is a fact-specific determination.  *See* Part II.A.3 below.

The extent of the benefit (*i.e.*, differential pay vs. full pay) is equally specific to the

facts of each case and the nature of the benefit the employer provides.

Moreover, "where's the mousehole?"  *Bostock v. Clayton Cty.*, 140 S. Ct.

1731, 1753 (2020). Even before Congress drafted § 4316(b), courts recognized

that the rule it codified would require paid leave in some cases. *See* Part II.A.2

below. And as the Seventh Circuit explained (citing *Bostock*), "when the meaning

of the text can be ascertained, it does not matter whether Congress considered or

anticipated the specific application at issue." *White*, 987 F.3d at 624.

### iv.    *Noscitur a Sociis* (Words Bear on One Another's Meaning)

UPS suggests that "wages" are unlike other examples in § 4303(2), but it

fails to grapple with all of the examples in the text. UPS cannot simply ignore the

examples of rights and benefits that are consistent with a paid-leave benefit. For

example, "vacations" are a form of paid leave, and § 4303(2) lists "vacations" as a

benefit. 38 U.S.C. § 4303(2). And other parts of the definition refer to pay

received when one is not working, such as severance pay and supplemental

unemployment benefits. *Id*. If § 4303(2) includes these benefits, it includes pay

during leave. *See Scanlan*, 384 F. Supp. 3d at 526. Congress also included

"bonuses" in 38 U.S.C. § 4303(2). Bonuses are generally compensation for work

performed, but may be paid on an annual or other long-term basis. So if the

employer pays a full bonus for a period when an employee is on a leave

comparable to military leave, a servicemember would be entitled to the same bonus

1    during military leave, when work is not performed.[2]  To ignore these terms in the

2    definition would violate the canon that all words in a statute must be given effect.

3    Scalia & Garner, *supra*, at 174 (discussing canon that "every word and every

4    provision is to be given effect.  None should be ignored.").

5              **v.    Anti-Redundancy Canon**

6              Requiring paid leave under § 4316(b) would not be redundant with

7    § 4316(d)'s provision allowing reservists to use vacation time for military leave.

8    In arguing otherwise UPS wrongly assumes that § 4316(b) requires that all

9    reservists be paid for military leave.  Defs.' Br. 9-10.  But many reservists will

10   never be entitled to paid military leave because their employers do not pay for

11   comparable leaves.  And even if some reservists are entitled to paid short-term

12   military leave under § 4316(b), it is unlikely that longer military leaves are

13   comparable to shorter forms of paid leave.  *See Tully*, 481 F.3d at 1370-71 (two-

14   and-a-half-year deployment was not comparable to jury duty).  Thus, all reservists

15   can benefit from § 4316(d) by using vacation time to get paid during any military

16   leave, but only some reservists will be entitled to paid short-term leave by virtue of

17   their employer's treatment of comparable leaves.  There is no inconsistency

18   between § 4316(b) and § 4316(d).

19   _____

20   [2]    The presence of "bonuses" also rebuts UPS's claim that the only reference to

21   compensation in § 4303(2) is "wages for work performed."  Defs.' Br. 6.

Nor is § 4316(b) inconsistent with § 4323's reference to "wages or benefits," for the reasons discussed in *White*: § 4323 predates the 2010 amendment to USERRA, which breaks the "presumption of consistent usage," and does not "establish a baseline crisply distinguishing between wages and benefits." *White*, 987 F.3d at 623. And § 4303(2) refers not just to "benefits," but to "*rights and benefits.*" Even if wages were not a benefit, they are readily construed as a right.

### 3. The History and Purpose of USERRA Support Plaintiff's Reading.

The Court need not look beyond USERRA's text. But if it does, the law's legislative history supports the view that Congress intended to include paid leave in § 4303(2) and protect that right under § 4316(b). In describing § 4303(2), Congress said that it "broadly defined 'rights and benefits' to include all attributes of the employment relationship," H.R. Rep. No. 103-65, pt. 1, at 21 (1993), and that the list of "rights and benefits" in § 4303(2) is "illustrative and not intended to be all inclusive." *Id.* And when describing § 4316(b), Congress said it "intend[ed] to affirm the decision in *Waltermyer v. Aluminum Co. of America*, 804 F.2d 821 (3d Cir. 1986) that, to the extent the employer policy or practice varies among various types of non-military leaves of absence, the most favorable treatment accorded any particular leave would also be accorded the military leave, regardless of whether the non-military leave is paid or unpaid." *Id.* at 33-34.

1    Congress's reference to *Waltermyer* is fundamental to the interpretive

2   question here.  The benefit at issue in *Waltermyer* was holiday pay, which "is

3   wages for work not performed."  *Scanlan*, 384 F. Supp. 3d at 526.  Moreover, in

4   holding that the plaintiff was entitled to holiday pay during his military leave as he

5   would be on jury leave, 804 F.2d at 825, the *Waltermyer* majority did not dispute

6   the dissent's observation that "[i]f a reservist and [a] juror are equal, then the

7   reservist is not entitled to just holiday pay but to full pay for all days not worked,

8   since employees absent for jury duty receive full pay," *id.* at 827 (Hunter, J.,

9   dissenting).  Just as the majority did not contradict the dissent's observation,

10   neither did Congress.  If Congress was concerned about the outcome the dissent

11   warned of, it would presumably have said so in § 4303(2).  But it did not.

12    What Congress did do is specify that "rights and benefits" *included* wages

13   "for work performed."  38 U.S.C. § 4316.  UPS makes much of this phrase, but

14   ignores the implication of its origin.  "As originally written, the parenthetical read

15   '(other than wages for work performed).'"  *Travers*, 8 F.4th at 206 (citing § 2(a),

16   108 Stat. at 3150).  After the Eighth Circuit held in *Gagnon v. Sprint Corp.*, 284

17   F.3d 839 (8th Cir. 2002), that this allowed wage discrimination against

18   servicemembers, "Congress later replaced 'other than' with the word 'including.'"

19   *Travers*, 8 F.4th at 206 (citing Veterans' Benefits Act of 2010, Pub. L. No. 111-

20   275, § 701(a), 124 Stat. 2864, 2887).  "That makes all the difference.  Rather than

21   constricting the types of benefits, the new language expanded the definition." *Id.*

1  Congress could have "delet[ed] the entire parenthetical" entirely instead of

2  expressly *including* "wages or salary for work performed," but its choice to instead

3  use additional expansive language "rules out any argument that . . . a measure

4  intended to *expand* the definition of benefits by closing a gap . . . had in fact

5  *shrunk* the scope of the definition *sub silentio*." *White*, 987 F.3d at 622.

6      The fact that the Congressional Budget Office's cost estimate expressed a

7  view that USERRA would not impose "significant new regulation" on employers,

8  *see* Defs.' Br. 11, does not suggest a different conclusion. "[T]his view—on which

9  Congress did not vote, and the President did not sign—cannot alter the meaning of

10  enacted statutes." *Ameritech Corp. v. McCann*, 403 F.3d 908, 913 (7th Cir. 2005)

11  (Posner, J.) (rejecting reliance on CBO report in interpreting the reach of the

12  Electronic Communications Privacy Act). In any event, Plaintiff's reading of

13  § 4303(2) would not impose "significant new regulation" because the applicable

14  regulations are relatively minimal and only affect those employers who provide

15  pay during comparable leaves. Nor are these burdens "new," as they simply

16  codified what *Waltermyer* held in 1986.

17      **4.    Comparability Is a Fact-Based Determination Inappropriate**
        **for Consideration at the Dismissal Stage.**

18      As discussed above, Plaintiff has pled a cognizable claim under § 4316(b).

19  But UPS tries to reach beyond the pleadings to argue the merits, in a transparent

20

21

1  effort to inject its preferred themes and framing into the case.[3]  These arguments

2  are for a jury.  They improperly ask the Court to resolve the substance of Plaintiff's

3  claim on a motion to dismiss.  They also fundamentally misunderstand the law.

4      At the outset, UPS tries to muddy the waters by arguing that servicemembers

5  cannot be entitled to "paid military leave" because nonmilitary employees do not

6  get paid military leave. Defs.' Br. 16.  This makes no sense.  "[E]mployers cannot

7  'provide' military leave, paid or otherwise, to non-military employees." *Travers*, 8

8  F.4th at 204.  Rather, the right UPS "*generally* provide[s]" is protection against

9  loss of pay (for bereavement, jury duty, or sick leave). 38 U.S.C. § 4316

10  (emphasis added).  Servicemembers do not enjoy the same benefit when they take

11  military leave.  The factual issue is whether the leaves are comparable.

12      Comparability under § 4316(b) and 20 C.F.R. § 1002.150 is a mixed

13  question of law and fact.  On a motion to dismiss, the court is not authorized "to

14  look beyond the complaint and make a factual determination based on incomplete

15  evidence." *Wyler Summit P'ship v. Turner Broad. Sys., Inc.*, 135 F.3d 658, 664

16  (9th Cir. 1998).  UPS may revisit these arguments when there is a factual record,

17  but here, Plaintiff's allegations must be accepted as true and all factual inferences

18  drawn in his favor. *See id.*

19  _____

20  [3]      For example, UPS makes at least nine references to the concept of being "paid

21  twice" or military service as a "second career." *See, e.g.*, Defs.' Br. 1.

1    Courts regularly decline to make comparability rulings on a motion to

2    dismiss – or even on a motion for summary judgment.  *See Rogers v. City of San*

3    *Antonio*, 392 F.3d 758, 771-72 (5th Cir. 2004) (finding "disputable issues as to the

4    material facts of whether involuntary non-military leaves" for jury duty, illness, or

5    bereavement "are comparable to each plaintiff's military leaves"); *Brill*, 2012 WL

6    893902, at *4-9 (denying summary judgment on whether weekend training for

7    reserve duty was comparable to jury leave); *Duffer v. United Cont'l Holdings, Inc.*,

8    173 F. Supp. 3d 689, 705 (N.D. Ill. 2016) (finding disputed issues of fact as to

9    whether military leave is comparable to jury or sick leave); *see also White*, 987

10   F.3d at 625 ("Discovery may reveal that all, none, or only part of those obligations

11   are comparable to jury duty or sick leave (or other short-term obligations) . . . .").

12    Despite this standard, UPS urges the Court to infer (without evidence) that

13   military leave is unlike other comparators in terms of duration because Plaintiff has

14   limited his claims to leaves of 14 days or less.  Defs.' Br. 17.  This argument

15   misunderstands the claim-specific evaluation USERRA requires.  USERRA

16   § 4316(b) asks whether a form of nonmilitary absence "is comparable to *any given*

17   *stretch* of military leave."  *White*, 987 F.3d at 625 (emphasis added); *see also*

18   *Rogers*, 392 F.3d at 771-72 (finding disputes of fact as to whether non-military

19   leaves "are comparable to *each plaintiff's military leaves*" (emphasis added)).  This

20   is reflected in the implementing regulation, 20 C.F.R. § 1002.150.  Contrary to

21   UPS's claim, Defs.' Br. 18, the regulation does not say all bereavement leave is

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS - 16

1  "incomparable" to military leave; rather, it states that a "two-day funeral leave" is

2  not comparable to "*an* extended leave for . . . uniformed service," which points to

3  the fact-based nature of the inquiry.  This explains the difference in outcome

4  between *Waltermyer*, 804 F.2d at 825 (National Guard trainings up to two weeks

5  were comparable to, *e.g.*, jury duty), and *Tully v. Department of Justice*, 481 F.3d

6  1367, 1370-71 (Fed. Cir. 2007), where the plaintiff sought holiday pay during a

7  two-and-a-half-year deployment.  The Federal Circuit affirmed a finding that

8  Tully's extended leave was unlike jury leave based on duration – it cited

9  *Waltermyer* for the rule of decision, but distinguished it on the facts.  *Id.*

10         Because each period of military service presents a distinct claim, subject to a

11  fact-based analysis, limiting the class definition to a subset of those claims is a

12  pleading choice.  And there is nothing remarkable about a plaintiff limiting a class

13  definition to a subset of the class's claims.

14         The court in *Clarkson v. Alaska Airlines, Inc*., No. 19 Civ. 5 (TOR), 2021

15  WL 2080199, at *5 (E.D. Wash. May 24, 2021), took a different, "more

16  generalized" approach (on summary judgment) that evaluated the duration of all

17  military leaves, including those not at issue in that case.  It did not cite authority

18  for this approach, but found it was "more appropriate . . . particularly when the

19  issue is presented as a class claim."  *Id.*  With respect, this holding is among the

20  errors in the *Clarkson* decision, which is now on appeal.  The legal analysis of a

21  class claim should be no different, substantively, from the legal analysis of an

1  individual claim – this is black letter law in class action jurisprudence. *See, e.g.*,

2  *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 455 (2016) (to require different

3  methods of proof in class actions would "ignore the Rules Enabling Act's pellucid

4  instruction that use of the class device cannot 'abridge . . . any substantive right'"

5  (quoting 28 U.S.C. § 2072(b))).

6      Moreover, it is common practice for employers to categorically differentiate

7  leaves of similar character based on expected length.  This is most apparent in the

8  case of medical absences.  Employers often have one policy for short-term sick

9  leave for afflictions that "pass in a few days," Defs.' Br. at 18, and another set of

10  policies for extended absences caused by chronic or long-term medical conditions.

11  *See, e.g.*, *Baker v. United Parcel Serv. Inc.*, No. 21 Civ. 162, ECF No. 7, ¶ 19.

12      And to the extent that employers view medical absences as capable of being

13  subdivided into such categories, it is consistent with USERRA § 4316(b) to

14  evaluate military leaves in a similar manner.  Like medical absences, military leave

15  can vary between short absences (*e.g.*, for Guard or Reserve training, as in

16  *Waltermyer*) and long-term deployments (as in *Tully*).  To the extent that an

17  employer is capable of differentiating medical absences based on length, and

18  providing benefits for the shorter-term absences, an employee on military leave

19  should be able to claim the same "rights and benefits," assuming military leave can

20  be similarly differentiated (which it can).  *See* 38 U.S.C. § 4316(b).

21      Plaintiff also expects the record to show that employers design certain paid-

1   leave policies to meet the purpose of allowing employees to handle obligations

2   outside work without loss of pay.  *Cf. Travers*, 8 F.4th at 205 n.17 (collecting

3   Human Resources and collective bargaining guides describing paid leave as

4   allowing "time to handle family emergencies, doctors' appointments and other

5   matters that might interfere with work performance" and allowing time "needed for

6   various purposes").  Military service is another obligation arising outside of work,

7   and providing paid leave would similarly remove obstacles (such as loss of pay)

8   that discourage UPS employees from performing military service.  These are jury

9   arguments, but Plaintiff's framing stands in contrast to UPS's attempts to

10  characterize the purpose of its leave policies in self-serving ways.  Defs.' Br. 17.

11  At bottom, those characterizations are an improper consideration for dismissal.

12        **B.    Plaintiff Plausibly Alleges That UPS-Delaware Is His Employer.**

13        Plaintiff's allegations, accepted as true (as they must be on a motion to

14  dismiss), support the conclusion that UPS-Delaware is his employer.  As defined

15  by § 4303(4)(A), an "employer" is an "entity that pays salary or wages for work

16  performed or that has control over employment opportunities," including an "entity

17  to whom the employer has delegated the performance of employment-related

18  responsibilities."  38 U.S.C. § 4303(4)(A).

19        UPS omits any mention of Plaintiff's allegations that UPS-Delaware has

20  control over Plaintiff's employment opportunities because (1) "its Board of

21  Directors and Board committees oversee labor relations, contract negotiations,

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS - 19

compensation and benefits, and other employment matters for employees of its subsidiaries including UPS-Ohio"; and (2) it participates in collective bargaining with representatives of UPS employees, including Plaintiff.  FAC ¶ 11.  The Seventh Circuit has held that this level of involvement meets the definition of in § 4303(4)(A), at least at the pleading stage.  *White*, 987 F.3d at 627 (allegations of entity's "active participation in the CBA negotiations, and its approval of the CBA section [that] are relevant to that issue . . . may suggest some measure of control"). The UPS entity Plaintiff chooses to name in related litigation raising a separate claim has no bearing on this analysis.

## **CONCLUSION**

For the reasons discussed above, the Court should deny Defendants' Motion to Dismiss in its entirety.

Dated: September 22, 2021                    Respectfully submitted,

/s/ *Michael J. Scimone*
Michael J. Scimone*
OUTTEN & GOLDEN LLP
685 Third Avenue, 25th Floor
New York, NY 10017
Telephone: (212) 245-1000
Fax: (646) 509-2060
mscimone@outtengolden.com

Thomas G. Jarrard (WSBA #39774)
LAW OFFICE OF THOMAS G.
JARRARD, PLLC
1020 N. Washington St.
Spokane, WA  99201
Telephone: (425) 239-7290
tjarrard@att.net

Matthew Z. Crotty (WSBA #39284)
CROTTY & SON LAW FIRM, PLLC
905 W. Riverside Ave., Suite 404
Spokane, WA 99201
Telephone: (509) 850-7011
matt@crottyandson.com

R. Joseph Barton*
BLOCK & LEVITON LLP
1735 20th Street, NW
Washington D.C. 20009
Telephone: (202) 734-7046
Fax: (617) 507-6020
jbarton@blockesq.com

Peter Romer-Friedman**
GUPTA WESSLER PLLC
1900 L Street, NW, Suite 312
Washington, DC 20036
Telephone (202) 888-1741
peter@guptawessler.com

* admitted *pro hac vice*
** *pro hac vice* application
forthcoming

*Attorneys for Plaintiff and the Proposed*
*Class*

1

## **CERTIFICATE OF SERVICE**

2           I certify that on September 22, 2021, I caused the foregoing Plaintiff's

3    Opposition to Defendants' Motion to Dismiss to be electronically filed with the

4    Clerk of the Court using the CM/ECF system, which in turn automatically

5    generated a Notice of Electronic Filing (NEF) to all parties in the case who are

6    registered users of the CM/ECF system.

7

8                                   /s/ *Michael J. Scimone*_____
                                    Michael J. Scimone

9

10                                  *Attorney for Plaintiff and the*
                                    *Proposed Class*

11

12

13

14

15

16

17

18

19

20

21

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS - 1