JAMES M. NELSON (WSBA No. 44652)
DOMINIC E. DRAYE (AZ Bar No. 033012)
*Admitted Pro Hac Vice*
**GREENBERG TRAURIG, LLP**
2375 East Camelback Road, Suite 700
Phoenix, Arizona 85016
Telephone: (602) 445-8000
Facsimile: (602) 445-8100
E-mail: nelsonj@gtlaw.com
E-mail: drayed@gtlaw.com

NAOMI G. BEER (CO Bar No. 29144)
*Admitted Pro Hac Vice*
**GREENBERG TRAURIG, LLP**
1144 15th Street, Suite 3300
Denver, Colorado 80202
Telephone: (303) 572-6500
Facsimile: (303) 572-6540
E-mail: beern@gtlaw.com

*Attorneys for Defendants*

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JUSTIN BAKER, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>UNITED PARCEL SERVICE, INC., a Delaware corporation, and UNITED PARCEL SERVICE, INC., an Ohio corporation,<br><br>Defendants. | NO. 2:21-cv-00114-SMJ<br><br>**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS**<br><br>Date:   November 18, 2021<br>Time:   10:30 a.m.<br>           Richland Courthouse<br>**With Oral Argument** |

REPLY IN SUPPORT OF MOTION TO DISMISS – No. 2:21-cv-00114-SMJ

# TABLE OF CONTENTS

I.  USERRA Does Not Require Payment of Civilian Wages While Performing Paid Military Service. ...................................................................... 1

II.  Legislative History and Administrative Interpretation Dispel Any Doubt About Ordinary Wages. ............................................................................... 7

III.  UPS Does Not Pay Any Employees While Pursuing a Second Career. ............. 8

IV.  UPS-Delaware Is Not Baker's Employer. .......................................................... 10

V.  Conclusion. ........................................................................................................ 10

# TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*Accardi v. Penn. R. Co.*,
   383 U.S. 225 (1966) .................................................................................... 5

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ............................................................................ 4, 8, 9

*Carver v. Lehman*,
   550 F.3d 883 (9th Cir. 2008) ...................................................................... 3

*Chevron v. Nat. Resc. Def. Council*,
   467 U.S. 837 (1984) ................................................................................ 7, 8

*Clarkson v. Alaska Airlines, Inc.*,
   No. 2:19-CV-0005-TOR, 2021 U.S. Dist. LEXIS 98123 (E.D. Wash.
   May 24, 2021), *on appeal*, Case No. 21-35473 (9th Cir.) ..................... 1, 9

*Daniel v. Nat'l Park Serv.*,
   891 F.3d 762 (9th Cir. 2018) ...................................................................... 8

*Eleri v. Sessions*
   852 F.3d 879 (9th Cir. 2017) ...................................................................... 7

*Hoefert v. Am. Airlines, Inc.*,
   438 F. Supp. 3d 724 (N.D. Tex. 2020) ....................................................... 9

*Huhmann v. Fed. Express Corp.*,
   874 F.3d 1102 (9th Cir. 2017) .................................................................... 5

*Tennessee Valley Authority v. Hill*,
   437 U.S. 153 (1978) .................................................................................... 3

*United States v. Bestfoods*,
   524 U.S. 51 (1998) .................................................................................... 10

*Util. Air Reg. Grp. v. EPA*,
   573 U.S. 302 (2014) .................................................................................... 4

*Waltermyer v. Aluminum Co. of America*,
   804 F.2d 821 (3rd Cir. 1986). ECF No. 32 ................................................. 7

*White v. United Airlines, Inc.*,
   987 F.3d 616 (7th Cir. 2021) ......................................................... 3, 5, 6, 10

*Whitman v. Am. Trucking Ass'ns*,
    531 U.S. 457 (2001) ............................................................................................ 1
*Yates v. United States*,
    574 U.S. 528 (2015) ............................................................................................ 5

**Federal Statutes**

16 U.S.C. § 1539(b)(2) ............................................................................................. 3
38 U.S.C. § 4301(a) .................................................................................................. 8
38 U.S.C. § 4303(2) ..................................................................................... 1, 2, 4, 5, 6
38 U.S.C. § 4316(b) ............................................................................................... 5, 6
38 U.S.C. § 4316(b)(1)(B) ........................................................................................ 9
38 U.S.C. § 4323(d)(1)(B) ........................................................................................ 6

**State Statutes**

RCW 49.46.210 ........................................................................................................ 4

**Regulations**

20 C.F.R. § 1002.7(c) ............................................................................................ 7, 8
20 C.F.R. § 1002.150(b) ........................................................................................... 8

**Other Authorities**

*Access to Paid Military Leave in 2018*, The Economics Daily, U.S.
    BUREAU OF LABOR STATISTICS (11/30/18),
    https://www.bls.gov/opub/ted/2018/access-to-paid-military-leave-in-
    2018.htm ............................................................................................................. 9

Economics Daily, U.S. Dept. of Labor Statistics (Mar. 5, 2020) available
    at https://tinyurl.com/6s643tn7 ........................................................................... 4

Plaintiff Justin Baker's opposition glides past arguments he dislikes in favor of quoting judicial opinions that did not address the arguments here. The problem for Baker's interpretation is simple: USERRA does not mention wages, except in conjunction with "for work performed." What follows in the statute only confirms this insight. USERRA provides a long list of ancillary benefits that employers commonly offer to employees on "furlough or leave of absence" and, if they do, must also provide to servicemembers on military leave. This simple rule does not require full pay while working for a different employer.

Statutory text and legislative history speak with one voice on this issue. Neither the Congress that adopted USERRA, nor the Department of Labor, nor the union that negotiated Plaintiff's CBA ever countenanced the theory now popping up in courts around the country. Two Circuit courts have taken the bait, albeit on weaker statutory arguments. Fortunately, this District has enforced USERRA as written. *Clarkson v. Alaska Airlines, Inc.*, No. 2:19-CV-0005-TOR, 2021 U.S. Dist. LEXIS 98123 (E.D. Wash. May 24, 2021), *on appeal*, Case No. 21-35473 (9th Cir.). This Court should again insist that if Congress intended to impose a costly obligation on virtually every employer—large and small—it would not have done so through "vague terms or ancillary provisions." *Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 468 (2001).

I. **USERRA Does Not Require Payment of Civilian Wages While Performing Paid Military Service.**

By its terms, USERRA does not extend to ordinary wages. In fact, its only reference to wages includes the qualification "for work performed." 38 U.S.C. §

1

REPLY IN SUPPORT OF MOTION TO DISMISS – No. 2:21-cv-00114-SMJ

4303(2). Baker contends that words like "including" and "any" are not exclusive. ECF No. 32 at 11–13. That is true, but UPS has never taken a contrary position. The question is not whether the lists in Section 4303(2) are exclusive but whether the category they illustrate includes civilian pay while working for a military employer. On that question, the canons of construction uniformly favor the long-standing view.

For ease of reference, here again is the statutory definition:

> The term "benefit", "benefit of employment", or "rights and benefits" means the terms, conditions, or privileges of employment, including any advantage, profit, privilege, gain, status, account, or interest (including wages or salary *for work performed*) that accrues by reason of an employment contract or agreement or an employer policy, plan, or practice and includes rights and benefits under a pension plan, a health plan, an employee stock ownership plan, insurance coverage and awards, bonuses, severance pay, supplemental unemployment benefits, vacations, and the opportunity to select work hours or location of employment.

38 U.S.C. § 4303(2) (emphasis added).

***First***, the specific reference to "wages or salary for work performed" controls over the general reference to "terms, conditions, or privileges of employment" applicable to employees on furlough or leave of absence. *Id.* §§ 4303(2), 4316(b)(1)(B). Baker maintains this rule does not apply because the specific and the general are "not in conflict." ECF No. 32 at 13. That argument assumes its conclusion—*i.e.*, that "terms, conditions, or privileges of employment" unambiguously includes wages for work both performed *and not* performed. But Baker never explains why the statute lists "wages or salary for work performed" if he is correct that the generic terms unambiguously encompass wages for work not performed for the civilian employer.

***Second***, Baker rejects the *expressio unius* canon outright, repeating his refrain

that the list "begins with 'including.'" ECF No. 32 at 13. This argument carried the day in the Seventh Circuit and largely explains how that court erred. *White v. United Airlines, Inc.*, 987 F.3d 616, 622 (7th Cir. 2021). The problem with treating "including" as a bar to the canon is that the Ninth Circuit and Supreme Court have routinely applied it in just that context. *See, e.g.*, *Tennessee Valley Authority v. Hill*, 437 U.S. 153, 188 (1978) (applying *expressio unius* to 16 U.S.C. § 1539(b)(2): "shall include, but not be limited to . . . ."). Of course, courts have also noted that *expressio unius* is "an aid to construction" that does not overpower "evidence to the contrary." *Carver v. Lehman*, 550 F.3d 883, 890 n.13 (9th Cir. 2008). That is not the circumstance here, but it does distinguish Baker's handgun example. ECF No. 32 at 15 ("'[A]ny firearm, including handguns' would not impliedly exempt assault rifles."). The problem with that example is that the general category (firearms) unambiguously encompasses the item in question (assault rifles). Thus, there is no reason to turn to the tools of construction. But here, the general category ("advantage, profit, privilege, gain, status, account, or interest (including wages or salary for work performed)") does *not* unequivocally encompass the item in question (wages for work not performed). To tweak Baker's example to fit the current case, a statute referring to "large firearms (including handguns with caliber greater than 9mm)" excludes handguns with caliber 9mm and smaller. That is especially true when every other canon of construction points the same direction.

  **Third**, and most decisive, the major questions doctrine leaves no doubt that Congress would not have hidden a requirement for virtually every employer in America

to pay wages during military leave simply because they offer paid sick leave.[1] For the major questions doctrine to attach, a novel interpretation of a "long-extant statute" must impact "a significant portion of the American economy." *Util. Air Reg. Grp. v. EPA*, 573 U.S. 302, 324 (2014).

Baker does not dispute that his position requires a new construction of a decades-old law. He does, however, pretend that adding wages for work not performed is insignificant. ECF No. 32 at 15. That argument defies reality. "[D]etermining whether a complaint states a plausible claim is context-specific, requiring the reviewing court to draw on its experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 663–64 (2009). Common sense and the Bureau of Labor Statistics confirm that wages are at least as significant as insurance benefits, accrual of vacation, and the ability to choose hours and location of employment—all of which Congress saw fit to enumerate. 38 U.S.C. § 4303(2). Baker also suggests that not many employers would be impacted. ECF No. 32 at 15. The Bureau of Labor Statistics disagrees. ECF No. 26 at 14; *supra* n.1. And given the "equivalent leave" that Baker proposes, virtually every private employer would now need to pay servicemember-employees while they are working for their military employer. *See, e.g.*, RCW 49.46.210 (mandating sick leave). Baker strains credulity to suggest that his proposal is not significant.

Importantly, the Third Circuit never addressed the major questions doctrine,

---

[1] The vast majority of workers at private companies are eligible for paid sick leave. *See* The Economics Daily, U.S. Dept. of Labor Statistics (Mar. 5, 2020) available at https://tinyurl.com/6s643tn7.

4

REPLY IN SUPPORT OF MOTION TO DISMISS – No. 2:21-cv-00114-SMJ

presumably because it was not raised. The Seventh Circuit brushed it aside on doubts about whether the impact is significant. *White*, 987 F.3d at 624. But the defendant in *White* failed to point out the extent to which the private workforce has paid sick leave and that many States *require* paid jury leave, paid sick leave, or both. Here, the argument is front and center. Regular wages are of such significance that Congress would have identified them long before listing the other benefits in Section 4303(2).

*Fourth*, Baker does not respond to the fact that every example in Section 4303(2) is a non-wage perquisite. ECF No. 26 at 14–15. Instead, he debates whether severance pay and bonuses are payments for work not performed. ECF No. 32 at 16–17. That argument assumes that any cash payments are wages. But severance benefits are prospective compensation for the loss of "rights and benefits [an employee] forfeits by giving up his job." *See, e.g.*, *Accardi v. Penn. R. Co.*, 383 U.S. 225, 230 (1966) (applying predecessor statute). And bonuses, unlike wages, are not a direct function of the number of hours worked. *See, e.g.*, *Huhmann v. Fed. Express Corp.*, 874 F.3d 1102 (9th Cir. 2017) (applying USERRA to bonus based solely on the type of aircraft a pilot flew). The concrete examples in Section 4303(2) all refer to non-wage benefits. Expanding the preceding terms to encompass wages would "giv[e] unintended breadth to the Acts of Congress." *Yates v. United States*, 574 U.S. 528, 543 (2015).

*Finally*, Baker attempts to explain away other provisions in USERRA. ECF No. 32 at 17–18. Regarding 38 U.S.C. § 4316(b), which permits servicemembers to use accrued "leave with pay" while on military leave, Baker imagines Congress adopted

5

REPLY IN SUPPORT OF MOTION TO DISMISS – No. 2:21-cv-00114-SMJ

this general provision for a subset of workers whose employer does not offer paid leave for jury duty, sickness, *or* bereavement. *Id.* Both the broader context of mandatory paid leave in many States and legislative history (*see* Part II *infra*) belie this attenuated rationale. In reality, Congress adopted Section 4316(b) because "vacation, annual, or similar leave with pay" fill a gap in what USERRA requires.

The effort is even more strained for Section 4323. That provision allows compensation for loss of "wages *or* benefits." 38 U.S.C. § 4323(d)(1)(B) (emphasis added). This language implies that wages are not "benefits." That is a death knell for Baker's interpretation because the operative definition applies to three terms, one of which is "benefits:" "'benefits,' 'benefits of employment,' *and* 'rights and benefits' means . . . ." *Id.* § 4303(2) (emphasis added). These terms are defined by USERRA to have the same meaning. Baker is therefore mistaken when he concedes that consistent usage requires wages to be different from benefits, but attempts to escape the consequences by asserting that they qualify as a "right." ECF No. 32 at 18. The problem is that USERRA gives a common definition for "benefits" and "rights and benefits." If "wages" are not "benefits," then neither are they "rights."

Baker relies on *White*, which again did not address the argument here. *White*'s point about the 2010 amendments to USERRA also misses the mark. 987 F.3d at 623. Those amendments did not affect the defined terms at issue and did not touch Section 4323. Reading the same language in USERRA consistently confirms the conclusion of every other tool of statutory construction: Congress did not quietly smuggle an

6

REPLY IN SUPPORT OF MOTION TO DISMISS – No. 2:21-cv-00114-SMJ

obligation to double-pay employees into the definition of "rights and benefits."

## II. Legislative History and Administrative Interpretation Dispel Any Doubt About Ordinary Wages.

USERRA is unambiguous in not requiring employers to pay ordinary wages for work performed for the military. But if any ambiguity remained, the Court can look to "extrinsic indicators, such as legislative history" and, where it has "the benefit of an administrative agency's interpretation, [the Court] may defer to it if it is 'based on a permissible construction of the statute.'" *Eleri v. Sessions* 852 F.3d 879, 882 (9th Cir. 2017) (quoting *Chevron v. Nat. Resc. Def. Council*, 467 U.S. 837, 843 (1984)).

Baker has no response to the DOL's regulation that "USERRA does not require an employer to pay an employee for time away from work performing service." 20 C.F.R. § 1002.7(c). Regarding legislative history, Baker appeals to *Waltermyer v. Aluminum Co. of America*, 804 F.2d 821 (3rd Cir. 1986). ECF No. 32 at 18–20. *Waltermyer* held that employers must provide a particular non-seniority benefit (there, holiday pay) to all employees, whether on military leave or not. But, while Baker cites the dissent, the majority made clear that its decision should "be seen only as establishing eligibility for holiday pay, *not* compensation for the other days not worked." *Waltermyer*, 804 F.2d at 825 (emphasis added). Thus, when the House Report references the *Waltermyer* decision—*i.e.,* the majority—it shows Congress was aware of this limitation and chose not to erase it. If anything, the *Waltermyer* reference supports the established view of USERRA.

Finally, Baker takes aim at the Congressional Budget Office in what amounts to

a concession that his interpretation is irreconcilable with the legislative history. This tactic ignores the Ninth Circuit's repeated reliance on the CBO's cost analysis to inform its interpretation of a statute. *See, e.g.*, *Daniel v. Nat'l Park Serv.*, 891 F.3d 762, 776 (9th Cir. 2018). The CBO's report is but one indication among many pointing towards an inescapable conclusion: had Congress passed a transformative piece of legislation requiring employers pay wages to reservists while on military leave, somebody would have noticed. Baker cites neither a House, Senate, nor committee report, nor a single member of Congress's statement suggesting that anyone in Congress supported the policy that Baker asks this Court to adopt.

### III.  UPS Does Not Pay Any Employees While Pursuing a Second Career.

Even if USERRA could be expanded to encompass payment of ordinary wages, the trigger is whether an employer offers comparable leave to non-military employees. 38 U.S.C. § 4301(a). And comparability is a function of a leave's duration, purpose, and timing. 20 C.F.R. § 1002.150(b). Importantly, that standard comes from the same DOL that stated that "USERRA does not require an employer to pay an employee for time away from work performing service"—a regulation Baker does not even acknowledge. *Id.* § 1002.7(c). Put simply, military service is not like jury duty, illness, or bereavement. While Baker asks the Court to pretend it cannot draw any distinctions in purpose without a trial, that is counter to both agency deference under *Chevron* and to the dismissal standard in *Iqbal*, which "require[es] the reviewing court to draw on its experience and common sense." 556 U.S. at 664.

As a preliminary matter, it bears repeating that Baker's self-created category of "short-term military leave" is a litigation tactic. Neither the applicable CBA nor the federal government recognizes any such thing.[2] It is simply a made-for-litigation category to create the appearance of comparability to other forms of leave. But USERRA contains no such distinction. Paid military leave is either among the "rights and benefits" of an employee on furlough, or it is not. 38 U.S.C. § 4316(b)(1)(B).

In terms of comparability, this District has already addressed the purposes various forms of leave serve. Although *Clarkson* was decided on summary judgment, its purpose analysis did not require discovery. Rather, it was a classic (and convincing) example of "experience and common sense." *Iqbal*, 556 U.S. at 663–64. The Court explained "[t]he purpose of jury duty is to fulfill a compulsory duty to the courts; it is not a parallel career." *Clarkson*, 2021 U.S. Dist. LEXIS 98123 at *21. "Bereavement leave is not comparable to military leave either in terms of purpose. The purpose of bereavement leave is to allow an employee time to grieve following the death of a loved one." *Id.* at *22. And "employees take vacation leave do so for rest and recuperation to avoid burnout. The same is certainly not true of military leave, which is physically and mentally demanding." *Id.* Other courts have concluded—without citation to record evidence—that "sick and military absences are not comparable." *Hoefert v. Am. Airlines, Inc.*, 438 F. Supp. 3d 724, 739 (N.D. Tex. 2020).

---

[2] *See Access to Paid Military Leave in 2018*, The Economics Daily, U.S. BUREAU OF LABOR STATISTICS (Nov. 30, 2018), https://www.bls.gov/opub/ted/2018/access-to-paid-military-leave-in-2018.htm (not identifying short-term military leave).

9

REPLY IN SUPPORT OF MOTION TO DISMISS – No. 2:21-cv-00114-SMJ

Whether a common-sense analysis of the different purposes that leave serves or deference to the DOL's application of its own standard, military leave is not similar to jury duty, illness, or bereavement. Because UPS does not pay anyone while pursuing a second career, USERRA's equal-treatment rule is not triggered, even if that statute could be read to encompass ordinary wages.

IV.   **UPS-Delaware Is Not Baker's Employer.**

Baker named UPS-Delaware in this action but amended his other complaint to sue only his actual employer, UPS-Ohio. He cites *White*, ECF No. 32 at 22, but he allegations there, which the Seventh Circuit labeled a "close call," 987 F.3d at 627, were much more robust than those here. Unlike in *White*, Baker does not allege that UPS-Delaware is a party to or bound by the terms of the CBA. USERRA's definition of "employer" pays homage to the principle "ingrained in our economic and legal systems that a parent corporation . . . is not liable for the acts of its subsidiaries." *United States v. Bestfoods*, 524 U.S. 51, 61 (1998) (internal quotation marks omitted). And it does so by concerning itself only with the institutions that carry out employment-related responsibilities—not reaching parent or affiliated entities with no connection to the employment decisions at issue.

V.   **Conclusion.**

This Court should grant the Motion to Dismiss.

| | |
|---|---|
| Dated: October 6, 2021 | **GREENBERG TRAURIG, LLP** |
| | */s/ James M. Nelson*<br>James M. Nelson |
| | Attorney for Defendants<br>UNITED PARCEL SERVICE, INC., a Delaware corporation, and UNITED PARCEL SERVICE, INC., an Ohio corporation |
| | JAMES M. NELSON (WSBA No. 44652)<br>**GREENBERG TRAURIG, LLP**<br>2375 East Camelback Road, Suite 700<br>Phoenix, Arizona  85016<br>Telephone:  (602) 445-8000<br>Facsimile:  (602) 445-8100<br>E-mail: nelsonj@gtlaw.com |

11

REPLY IN SUPPORT OF MOTION TO DISMISS – No. 2:21-cv-00114-SMJ

## CERTIFICATE OF SERVICE

The undersigned certifies that, on October 6, 2021, a true and correct copy of Defendants' Reply in Support of Motion to Dismiss was served on all counsel of record by the Court's electronic filing system (CM/ECF).

By: */s/ James M. Nelson*
James M. Nelson

ACTIVE 60349926v11