FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Mar 31, 2022

SEAN F. MCAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JUSTIN BAKER, on behalf of himself and all others similarly situated,<br><br>      Plaintiff,<br><br>      v.<br><br>UNITED PARCEL SERVICE INC.,<br><br>      Defendant. | No. 2:21-cv-00114-SMJ<br><br>**ORDER DENYING MOTION TO DISMISS** |

Before the Court is Defendants' Motion to Dismiss, ECF No. 26. After review of the file and hearing oral argument from the parties, the Court is fully informed and denies the motion.

## BACKGROUND

Plaintiff is a full-time driver for UPS. ECF No. 16 at 5. He has worked for UPS since approximately June 18, 2007. *Id.* He has also served in the Army Reserve since 2014. *Id.* Since 2015, Plaintiff has taken annual short-term leave from UPS to engage in qualified military service with the Army Reserve. *Id.* UPS does not compensate Plaintiff for this leave. *Id.* at 3. However, UPS provides paid leave to its employees who take jury duty leave, bereavement leave, and sick leave. *Id.*

ORDER DENYING MOTION TO DISMISS – 1

Plaintiff alleges that failing to similarly compensate those who take military leave violates the protections set out in the Uniformed Services Employment and Reemployment Rights Act of 1994 ("USERRA"). *Id.* Plaintiff sues United Parcel Service, Inc., an Ohio Corporation ("UPS Ohio"), and United Parcel Service, Inc., a Delaware corporation ("UPS Delaware"). *Id.* at 1. UPS Ohio is a subsidiary of UPS Delaware, a holding company. *Id.* at 16. Plaintiff sues on behalf of himself and all other similarly situated servicemember employees who took military leave that lasted 14 days or less ("short-term military leave"), seeking (1) a declaration that UPS violated USERRA by failing to pay class members during short-term military leave, (2) an order for UPS to pay employees for such leave in the future, and (3) an order for back pay. *Id.* at 1.

Now, Defendants move to dismiss the claims, arguing (1) USERRA's text, statutory purpose, and legislative history do not support an argument for payment of ordinary wages where no work is performed, (2) military leave is not comparable to the other forms of leave provided by UPS, and (3) UPS Delaware does not employ Plaintiff. ECF No. 26.

* * *

Two of USERRA's provisions are at issue: Section 4316(b)(1), which entitles employees taking military leave to the "other rights and benefits" their

employers give to employees taking similar kinds of leave; and Section 4303(2), which defines those "other rights and benefits." Section 4316(b)(1) provides:

> [A] person who is absent from a position of employment by reason of service in the uniformed services shall be—
>
> (A) deemed to be on furlough or leave of absence while performing such service; and
>
> (B) entitled to such other rights and benefits not determined by seniority as are generally provided by the employer of the person to employees having similar seniority, status, and pay who are on furlough or leave of absence under a contract, agreement, policy, practice, or plan in effect at the commencement of such service or established while such person performs such service.

38 U.S.C. § 4316(b)(1). Section 4303(2) defines "rights and benefits":

> The term "benefit", "benefit of employment", or "rights and benefits" means the terms, conditions, or privileges of employment, including any advantage, profit, privilege, gain, status, account, or interest (including wages or salary for work performed) that accrues by reason of an employment contract or agreement or an employer policy, plan, or practice and includes rights and benefits under a pension plan, a health plan, an employee stock ownership plan, insurance coverage and awards, bonuses, severance pay, supplemental unemployment benefits, vacations, and the opportunity to select work hours or location of employment.

Finally, the Department of Labor has promulgated final regulations, after notice and comment, that implement USERRA. *See* 38 U.S.C. § 4331(a). The regulation most relevant here provides:

> If the non-seniority benefits to which employees on furlough or leave of absence are entitled vary according to the type of leave, the employee must be given the most favorable treatment accorded to any

ORDER DENYING MOTION TO DISMISS – 3

> comparable form of leave when he or she performs service in the uniformed services. In order to determine whether any two types of leave are comparable, the duration of the leave may be the most significant factor to compare. For instance, a two-day funeral leave will not be "comparable" to an extended leave for service in the uniformed service. In addition to comparing the duration of the absences, other factors such as the purpose of the leave and the ability of the employee to choose when to take the leave should also be considered.

20 C.F.R. § 1002.150(b).

**LEGAL STANDARD**

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Under Federal Rule of Civil Procedure 12(b)(6), the Court must dismiss the complaint if it "fail[s] to state a claim upon which relief can be granted."

In deciding a Rule 12(b)(6) motion, the Court construes the complaint in the light most favorable to the plaintiff and draws all reasonable inferences in the plaintiff's favor. *Ass'n for L.A. Deputy Sheriffs v. County of Los Angeles*, 648 F.3d 986, 991 (9th Cir. 2011). Thus, the Court must accept as true all factual allegations contained in the complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). But the Court may disregard legal conclusions couched as factual allegations. *See id.*

To survive a Rule 12(b)(6) motion, the complaint must contain "*some* viable legal theory" and provide "fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 562 (2007) (internal

ORDER DENYING MOTION TO DISMISS – 4

quotation marks and ellipsis omitted). Thus, the complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). Facial plausibility exists where the complaint pleads facts permitting a reasonable inference that the defendant is liable to the plaintiff for the misconduct alleged. *Id.* Plausibility does not require probability but demands more than a mere possibility of liability. *Id.* While the complaint need not contain detailed factual allegations, threadbare recitals of a cause of action's elements, supported only by conclusory statements, do not suffice. *Id.* Whether the complaint states a facially plausible claim for relief is a context-specific inquiry requiring the Court to draw from its judicial experience and common sense. *Id.* at 679.

## DISCUSSION

**A.    Plaintiff Plausibly Alleges that UPS Violated USERRA § 4316(b).**

USERRA is one of several statutes benefitting veterans. The Court's task is to "interpret the words consistent with their 'ordinary meaning . . . at the time Congress enacted the statute[,]'" as that is the "fundamental canon of statutory construction." *Wis. Cent. Ltd. v. United States*, 138 S. Ct. 2067, 2070, 2074, (2018) (first alteration in original) (quoting *Perrin v. United States*, 444 U.S. 37, 42 (1979)). The Court must "begin and end [its] inquiry with the text." *Star Athletica, L.L.C. v. Varsity Brands, Inc.*, 137 S. Ct. 1002, 1010 (2017). Still, "the words of a

statute must be read in their context and with a view to their place in the overall statutory scheme." *Parker Drilling Mgmt. Servs. v. Newton*, 139 S. Ct. 1881, 1888 (2019) (quoting *Roberts v. Sea-Land Servs., Inc.*, 566 U.S. 93, 101 (2012)). The Court must also keep in mind that "[b]ecause USERRA was enacted to protect the rights of veterans and members of the uniformed services, it must be broadly construed in favor of its military beneficiaries." *Montoya v. Orang Cnty. Sheriff's Dept.*, 987 F. Supp. 2d 981, 1009 (C.D. Cal. 2013) (quoting *Francis v. Booz, Allen & Hamilton, Inc.*, 452 F.3d 299, 303 (4th Cir. 2006).

### 1.   Statutory History

USERRA, as detailed more extensively by other courts, was passed in a long tradition of congressional acts attempting to protect American military personnel who performed military service and then returned to their civilian jobs. *Travers v. Federal Express Corp.*, 8 F.4th 198, 200–01 (3rd Cir. 2021) (recounting the USERRA's statutory predecessors). Briefly, prior to World War II, Congress enacted the Selective Training and Service Act of 1940 ("STSA"), requiring all men between the ages of twenty-one and thirty-six to register for military duty. Pub. L. No. 783, 54 Stat. 885. Along with this registration requirement, the STSA also protected the jobs of those who would soon join the service by requiring employers to restore veterans "to a position of like seniority, status, and pay." *Id.* § 8(b), (c), 54 Stat. at 890. The STSA also allowed veterans to take military leave and entitled

ORDER DENYING MOTION TO DISMISS – 6

them to "insurance or other benefits offered by the employer . . . at the time such person was inducted into such forces[.]" *Id.* § 8(c), 54 Stat. at 890. In these ways, the STSA advanced the principle that one "who was called to the colors was not to be penalized on his return by reason of his absence from his civilian job." *Fishgold v. Sullivan Drydock & Repair Corp.*, 328 U.S. 275, 284 (1946).

Then, the Selective Service Act of 1948 bolstered employment rights for veterans by guaranteeing a servicemember any position "he would have enjoyed if he had continued in such employment continuously from the time of his entering the armed forces until the time of his restoration to such employment." Pub. L. No. 759, § 9(c)(2), 62 Stat. 604, 616. "In 1951, in order to strengthen the Nation's Reserve Forces, Congress extended reinstatement rights to employees returning from training duty" in the Universal Military Training and Service Act. *Monroe v. Standard Oil Co.*, 452 U.S. 549, 555, (1981); Pub. L. No. 51, § 1(s), 65 Stat. 75, 86–86 (1951). "Additional protections followed over the next decade as Congress included short-term leave for military obligations of less than three years." *Travers*, 8 F.4th at 201 (citing Pub. L. No. 86-632, § 1 para. 3, 74 Stat. 467, 467 (1960) (protecting an employee's "return to his position with such seniority, status, pay, and vacation as he would have had if he had not been absent for such purposes"); *see also Monroe*, 452 U.S. at 555.

//

ORDER DENYING MOTION TO DISMISS – 7

After the Vietnam War, Congress enacted USERRA's immediate predecessor, the Veterans' Reemployment Rights Act ("VRRA"). Pub. L. No. 93-508, 88 Stat. 1578. The VRRA entitled veterans, including reservists, to "like seniority, status, and pay" when returning to civilian work, as well as the ability to "participate in insurance or other benefits offered by the employer[.]" *Id.* § 404(a), 88 Stat. at 1595.

Finally, in 1994, Congress enacted USERRA to replace the VRRA. Pub. L. No. 103-353, 108 Stat. 3149 (1994). Containing "the most expansive protection [to servicemembers] yet enacted," USERRA crystalized the language Baker and UPS dispute, entitling reservists and other military personnel to certain employment benefits while on leave.

**2.    USERRA's Text**

Section 4316(b)(1) "adopts a simple formula: employees who take military leave from their jobs must receive the same 'rights and benefits' provided to employees absent for other reasons." *Travers*, 8 F.4th at 202. The parties disagree on how to describe the leave Baker seeks. Baker argues he is seeking "paid leave"; UPS characterizes it as "paid military leave." *See* ECF No. 26.

But the Court need not choose amongst the parties' catchall labels that Congress did not write. Subsections (A) and (B) of § 4316(b)(1) create a comparison of the "rights and benefits" given to two groups of employees. The first

ORDER DENYING MOTION TO DISMISS – 8

group consists of employees "absent from a position of employment by reason of service in the uniformed services." 38 U.S.C. § 4316(b)(1)(A). The second is "employees having similar seniority, status, and pay who are on . . . leave of absence[.]" *Id.* § 4316(b)(1)(B). Both groups contain employees who are not at work, Group 1, for military service, Group 2, for anything else. Attempting to shoehorn "military" into "paid leave" is merely an attempt to circumvent the comparison analysis:

> USERRA describes a process for evaluating alleged disparate treatment of servicemembers on military leave by an employer. It does not create a class of rights and benefits. In other words, this is not a dispute about whether USERRA guarantees "paid leave" or "paid military leave." Instead, it is a quarrel over whether § 4316(b)(1) allows Travers to allege that FedEx extends a right and benefit in the form of pay to the group of employees who miss work for non-military reasons, but then denies pay to the group absent for military service. Framing the issue using the text of USERRA, without resorting to extratextual labels, avoids introducing ambiguities or, worse, creating a new set of rights and benefits outside of "the prescription for legislative action" in the Constitution and "the Framers' decision that the legislative power of the Federal government be exercised in accord with a single, finely wrought and exhaustively considered, procedure." *INS v. Chadha*, 462 U.S. 919, 951 (1983)

*Travers*, 8 F.4th at 203.

As noted, Section 4303(2) defines "rights and benefits" under USERRA:

> The term "benefit", "benefit of employment", or "rights and benefits" means the terms, conditions, or privileges of employment, including any advantage, profit, privilege, gain, status, account, or interest (including wages or salary for work performed) that accrues by reason of an employment contract or agreement or an employer policy, plan, or practice and includes rights and benefits under a pension plan, a

ORDER DENYING MOTION TO DISMISS – 9

> health plan, an employee stock ownership plan, insurance coverage and awards, bonuses, severance pay, supplemental unemployment benefits, vacations, and the opportunity to select work hours or location of employment.

38 U.S.C. § 4303(2).

### 3. Pay During Leave is a "Right and Benefit" under USERRA § 4303(2)

This Court agrees with the two Circuit Courts that have addressed the issue and finds that pay during leave is a "right and benefit" under Section 4303(2). *See Travers*, 8 F.4th 198 (3d Cir. 2021); *White v. United Airlines, Inc.*, 987 F.3d 616 (7th Cir. 2021). First, the statutory language is broad. Beginning, as the *Travers* court did, with the words "terms," "conditions," and "privileges," all of which modify "employment," section 4303(2) defines these terms as "including any advantage, profit, privilege, gain, status, account, or interest (including wages or salary for work performed)." Of course, the words "including any" mean this already expansive list is not exhaustive. But even if the list were exhaustive, pay during leave would be encompassed by the broad terms, such as "privilege," "profit," or "gain."

Despite Defendants' best arguments to the contrary, the parenthetical language at the end of Section 4303's list—"(including wages or salary for work performed)" does not, by negative implication, *exclude* wages or salary for work *not* performed, such as paid leave. *See* ECF No. 26 at 11. Giving the parenthetical

ORDER DENYING MOTION TO DISMISS – 10

this strained reading would require the court to disregard the law's history and broad language, as well as Congress' intent in passing these protections. As originally written, the parenthetical read "(*other than* wages for work performed)." Pub. L. No. 103-353 § 2(a), 108 Stat. at 3150 (emphasis added). Congress later replaced "other than" with the word "including." Veterans' Benefits Act of 2010, Pub. L. No. 111-275, § 701(a), 124 Stat. 2864, 2887. Rather than constricting the types of benefits, the new language *expanded* the rights and benefits to which servicemembers are entitled and used "including," a nonlimiting term. The fact that Congress perhaps did not use the best construction in amending the provision is no reason to read in exceptions that simply are not there.

Finally, the Court rejects UPS's arguments that other provisions, such as 5 U.S.C. § 6323(a), conflict with Plaintiff's reading of the statute. Under Section 6323(a), first enacted in 1917, federal government employees are entitled to fifteen days of paid military leave. But nothing about the two statutes is in conflict. One provides service members in the federal government with a particular benefit— more generous even than the benefits their colleagues received for sick leave—and places no restriction on private employers. The USERRA provision, whose earliest predecessors were still passed decades after Section 5323(a), places restrictions on employers who provide employees who do not serve in the armed forces with benefits that they do not provide their employees who are in the armed services.

ORDER DENYING MOTION TO DISMISS – 11

Moreover, even if this provision were in some tension with Plaintiff's understanding, the lack of any clear congressional intent militates against a finding that one statute serves to undermine or nullify an enacted statute meant to confer additional benefits and protections to the nations' servicemembers. *See Radzanower v. Touche Ross & Co.*, 426 U.S. 148, 153 (1976).

**B.  Whether Short-Term Military Leave is Comparable to Forms of Leave Provided by UPS is a Fact-Based Determination Inappropriate for Consideration at the Motion to Dismiss Stage.**

Defendants argue that "[e]ven if 4316 could possibly be read to require civilian employers to pay employees while they work for the government" they are entitled to dismissal, reasoning that (1) military members are entitled to the same jury duty, bereavement, and sick leave and (2) in any event, the forms of leave offered by UPS are dissimilar to military leave. Plaintiff correctly argues that this argument is properly left for later-stage proceedings. ECF No. 32 at 21.

First, the Defendants again incorrectly rely on framing the benefit Plaintiff seeks as "paid military leave." But "employers cannot 'provide' military leave, aid or otherwise, to nonmilitary employees." *Travers*, 8 F.4th at 204. Instead, UPS "*generally* provide[s]" protection against loss of pay for leave taken for bereavement, jury duty, or sick leave, but not military leave. ECF No. 16 at 13. Whether the leaves are comparable is the question that must ultimately be addressed, but the Court declines to do so at this juncture.

ORDER DENYING MOTION TO DISMISS – 12

Comparability under Section 4316(b) and 20 C.F.R. § 1002.150 is a mixed question of law and fact. Courts regularly decline to make comparability rulings on a motion to dismiss. *See Clarkson v. Alaska Airlines, Inc.*, 2:19-cv-00005-TOR (E.D. Wash. June 17, 2019), ECF No. 30 at 20 ("Plaintiff's Complaint does not provide sufficient evidence for the Court to make a comparability determination on the wage issue at this time. Rather, these arguments would be more appropriately considered on a motion for summary judgment so the Court can consider relevant evidence outside the pleadings."); *Rogers v. City of San Antonio*, 392 F.3d 758, 771–72 (5th Cir. 2004) (finding "disputable issues as to the material facts of whether involuntary non-military leaves" for jury duty, illness, or bereavement "are comparable to each plaintiff's military leaves"); *see also White*, 987 F.3d at 625 ("Discovery may reveal that all, none, or only part of those obligations are comparable to jury duty or sick leave (or other short-term obligations)").

"In order to determine whether any two types of leave are comparable, the duration of the leave may be the most significant factor," but "other factors such as the purpose of the leave and the ability of the employee to choose when to take the leave should also be considered." 20 C.F.R. § 1002.150(b). Here, the Court has insufficient information to evaluate these factors and determine, based on the pleadings, whether the leaves afforded UPS employees are comparable to the short-term military leave sought here.

ORDER DENYING MOTION TO DISMISS – 13

### C. Plaintiff Plausibly Alleges that UPS Delaware is His Employer

Finally, Defendant UPS Delaware argues that the claims against it should be dismissed because UPS Delaware did not employ Baker and is therefore not a proper defendant under USERRA. ECF No. 26 at 19–20. As they acknowledge, USERRA defines "employer" as an "entity that pays salary or wages for work performed or that has control over employment opportunities," including an "entity to whom the employer has delegated the performance of employment-related responsibilities." *Id.* at 19 (quoting 38 U.S.C. § 4303(4)(A)).

At this stage, accepting all of Plaintiff's plausible allegations as true, dismissal of UPS Delaware is not warranted. Plaintiff alleges that UPS Delaware has control over Plaintiff's employment opportunities because (1) "its Board of Directors and Board committees oversee labor relations, contract negotiations, compensation and benefits, and other employment matters for employees of its subsidiaries including UPS Ohio"; and (2) it participates in collective bargaining with representatives of UPS employees, including Plaintiff. ECF No. 16 at 6.

The text of USERRA's "employer" definition supports a finding for Plaintiff at this stage. First, the definition states that an "employer" is any "entity to whom the employer has delegated the performance of employment-related activities." 38 U.S.C. § 4303(4)(A)(i). "This implies that more than one entity may qualify as an 'employer' of the same employee. The use of the word 'delegate[ ]' suggests an

ORDER DENYING MOTION TO DISMISS – 14

intent to reach both direct and indirect employers, including parent corporations if they pay 'salary or wages for work performed or [have] control over employment opportunities.'" *White*, 987 F.3d at 627 (quoting 38 U.S.C. § 4303). Nor does Section 4303(4)(A)(i)'s text "require that an 'employer' have direct control over the matters that constitute a USERRA violation; it says only that the employer must have control over the plaintiff's employment opportunities writ large." *Id.* UPS Delaware's alleged oversight and participation in labor relations, contract negotiations, and collective bargaining is sufficient to keep UPS Delaware as a party at this time.

To be sure, Plaintiff's burden will be higher at later stages in the litigation. Discovery may reveal facts that demonstrate UPS Delaware exercises control over Plaintiff's employment opportunities, or it may show that UPS Delaware's role was purely formal and unrelated to any critical issues. At this juncture, however, the Court will not speculate about facts not part of the record that might illuminate this issue.

## CONCLUSION

For the foregoing reasons, the Court denies Defendant's motion to dismiss, finding USERRA plausibly covers the allegations asserted. The Court further finds that the comparability analysis is a mixed question of fact and law best left for the summary judgment stage, or else trial. Finally, the Court finds that Plaintiff has

sufficiently alleged that UPS Delaware has control over Plaintiff's employment opportunities.

Accordingly, **IT IS HEREBY ORDERED**:

1. Defendants' Motion to Dismiss, **ECF No. 26**, is **DENIED**.

**IT IS SO ORDERED.** The Clerk's Office is directed to enter this Order and provide copies to all counsel.

**DATED** this 31st day of March 2022.

_____
SALVADOR MENDOZA, JR.
United States District Judge