Michael J. Scimone*
OUTTEN & GOLDEN LLP
685 Third Avenue, 25th Floor
New York, NY 10017
Telephone: (212) 245-1000
Fax: (646) 509-2060
mscimone@outtengolden.com

Ryan Cowdin*
1225 New York Ave NW, Suite 1200B
Washington, DC 20005
Telephone: (202) 847-4400
Fax: (202) 847-4410
rcowdin@outtengolden.com

[Additional attorneys listed on following page]
*Attorneys for Plaintiff and the Putative Class*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JUSTIN BAKER, on behalf of himself and all others similarly situated,<br><br>            Plaintiff,<br><br>v.<br><br>UNITED PARCEL SERVICE, INC., a Delaware Corporation, and UNITED PARCEL SERVICE, INC., an Ohio corporation,<br><br>            Defendants. | **Case No. 21-cv-00114-TOR**<br><br>**PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**<br><br><br>**Without Oral Argument Return Date: July 3, 2023** |

Thomas G. Jarrard (WSBA #39774)
LAW OFFICE OF THOMAS G. JARRARD, PLLC
1020 N. Washington St.
Spokane, WA  99201
Telephone: (425) 239-7290
tjarrard@att.net

Matthew Z. Crotty (WSBA #39284)
RIVERSIDE LAW GROUP PLLC
905 W. Riverside Ave., Suite 404
Spokane, WA 99201
Telephone: (509) 850-7011
mzc@riverside-law.com

R. Joseph Barton*
BARTON & DOWNES LLP
1633 Connecticut Ave. NW, Suite 200
Washington D.C. 20009
Telephone: (202) 734-7046
jbarton@bartondownes.com

Peter Romer-Friedman*
PETER ROMER-FRIEDMAN LAW PLLC
1629 K Street, NW, Suite 300
Washington, DC 20006
Telephone: (718) 938-6132
peter@prf-law.com

Robert D Friedman*
GUPTA WESSLER PLLC
2001 K Street NW, Suite 850
Washington, DC 20006
Telephone: (914) 588-4713
robert@guptawessler.com

* admitted *pro hac vice*

*Attorneys for Plaintiff and the Putative Class*

# **TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................ 1

I.    Factual Background ........................................................................................ 2

    A.    Plaintiff's Work History and Defendants' Leave Policies ................... 2

    B.    UPS's Leave Benefits Do Not Include Short-Term Paid Military Leave ........ 4

    C.    UPS Pays for Comparable Leave Types. ............................................ 6

        1.    Jury Duty ................................................................................... 6

        2.    Bereavement Leave .................................................................. 7

        3.    Sick Leave ................................................................................ 8

II.    Procedural History ........................................................................................ 9

III.    Proposed Class ............................................................................................ 10

IV.    Legal Standard ............................................................................................ 10

V.    The Class Meets the Requirements of Rule 23(a) ..................................... 11

    A.    The Class Is Sufficiently Numerous and Ascertainable .................... 11

    B.    There Are Common Questions of Law and Fact ............................... 12

    C.    The Typicality Requirement of Rule 23(a) Is Met ............................ 15

    D.    Plaintiff and his Counsel Will Adequately Represent the Class ....... 16

VI.    The Claims Meet the Requirements of Rule 23(b)(3) ................................ 19

    A.    The Predominance Requirement is Met ............................................ 19

    B.    The Superiority Requirement is Met .................................................. 21

CONCLUSION ......................................................................................................... 23

# TABLE OF AUTHORITIES

**CASES**                                                                     **PAGE(S)**

*Allen v. Hyland's Inc.*,
   300 F.R.D. 643 (C.D. Cal. 2014)................................................................17

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds*,
   568 U.S. 455 (2013)........................................................................................11

*Briseno v. ConAgra Foods, Inc.*,
   844 F.3d 1121 (9th Cir. 2017) ......................................................................12

*Clarkson v. Alaska Airlines, Inc.*,
   59 F.4th 424 (9th Cir. 2023) .........................................................................14

*Clarkson v. Alaska Airlines Inc.*,
   No. 19 Civ. 5, 2020 U.S. Dist. LEXIS 138838 (E.D. Wash. Aug. 4, 2020) .........*passim*

*Daniel F. v. Blue Shield of Cal.*,
   305 F.R.D. 115 (N.D. Cal. 2014)..................................................................12

*Huntsman v. Sw. Airlines Co.*,
   No. 19 Civ. 83, 2021 U.S. Dist. LEXIS 20856 (N.D. Cal. Feb. 3, 2021) .............*passim*

*Jabbari v. Farmer*,
   965 F.3d 1001 (9th Cir. 2020) ......................................................................12

*Leyva v. Medline Indus. Inc.*,
   716 F.3d 510 (9th Cir. 2013) ..................................................................20, 21

*McGuire v. Dendreon Corp.*,
   267 F.R.D. 690 (W.D. Wash. 2010) .............................................................17

*Parsons v. Ryan*,
   754 F.3d 657 (9th Cir. 2014) ........................................................................16

*Resnick v. Frank (In re Online DVD-Rental Antitrust Litig.)*,
   779 F.3d 934 (9th Cir. 2015) ........................................................................17

*Ruiz Torres v. Mercer Canyons Inc.*,
   835 F.3d 1125 (9th Cir. 2016) ......................................................................12

*Ruiz Torres v. Mercer Canyons, Inc.*,
   No. 14 Civ. 3032, 305 F.R.D. 646 (E.D. Wash. 2015)...............................15

*Scanlan v. Am. Airlines Grp., Inc.*,
   567 F. Supp. 3d 521 (E.D. Pa. 2021)................................................14

*Scanlan v. Am. Airlines Grp. Inc.*,
   No. 18 Civ. 4040, 2022 U.S. Dist. LEXIS 63755 (E.D. Pa. Apr. 6, 2022)..............2, 23

*Scholl v. Mnuchin*,
   489 F. Supp. 3d 1008 (N.D. Cal. 2020)................................................18

*Senne v. Kansas City Royals Baseball Corp.*,
   934 F.3d 918 (9th Cir. 2019)................................................20

*Staton v. Boeing Co.*,
   327 F.3d 938 (9th Cir. 2003)................................................16

*Travers v. Fed. Express Corp.*,
   8 F.4th 198 (3rd Cir. 2021)................................................13

*Tyson Foods, Inc. v. Bouaphakeo*,
   577 U.S. 442 (2016)................................................19, 20

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011)................................................10, 11, 12, 13, 14

*White v. United Airlines, Inc.*,
   987 F.3d 616 (7th Cir. 2021)................................................13

### STATUTES

38 U.S.C. § 4303(2)................................................13

38 U.S.C. § 4316(b)................................................1, 13, 16

### OTHER AUTHORITIES

20 C.F.R. § 1002.150................................................14, 21

Fed. R. Civ. P. 23(a)................................................11, 12, 15

Fed. R. Civ. P. 23(b)(3)................................................19, 21, 22

**INTRODUCTION**

Plaintiff Justin Baker is a package car driver for United Parcel Service, Inc., a Delaware corporation, and United Parcel Service, Inc., an Ohio corporation (collectively, "UPS" or "Defendants").  He is also a Sergeant in the U.S. Army Reserves.  Plaintiff seeks to certify a class of UPS workers subject to the same employment policies he challenges here, and who, like him, worked in the State of Washington and took unpaid short-term leave from UPS to fulfill military service obligations.

Based on policies common to the class, UPS pays either full or differential pay to employees who take leave from work to meet obligations arising outside of work – serving on a jury, attending to family affairs after the death of a family member, or taking care of their medical needs when they fall sick.  UPS even provides differential pay to servicemembers who are absent from work on active-duty military orders for more than 30 days.  But UPS provides no pay to servicemembers who must take short-term absences from work to fulfill obligations for the U.S. military, Reserves, or National Guard (*i.e.*, absences lasting 14 days or less), such as the occasional long weekend drill or annual 2-week training requirements.

Plaintiff alleges that this gap in Defendants' military leave policies violates the Uniformed Services Employment and Reemployment Rights Act ("USERRA"), 38 U.S.C. § 4316(b), which mandates that employers provide the same benefits to employees who take military leave as they provide to employees who take comparable leaves.  Plaintiff's claim challenges a leave policy of general applicability and raises

common questions of law and fact, the answers to which will drive the resolution of this litigation. And Plaintiff and the members of the class have been injured in an identical way: They have lost pay from their civilian jobs when they served in the military, while employees who took comparable short-term leaves did not.

These claims are ideally suited for class certification. To date, every court to consider class certification in cases raising similar USERRA claims has certified a class. *See Scanlan v. Am. Airlines Grp. Inc.*, No. 18 Civ. 4040, 2022 U.S. Dist. LEXIS 63755, at *18-21 (E.D. Pa. Apr. 6, 2022) (class of pilots asserting paid-leave claims); *Huntsman v. Sw. Airlines Co.*, No. 19 Civ. 83, 2021 U.S. Dist. LEXIS 20856, *40-41 (N.D. Cal. Feb. 3, 2021) (class of multiple work groups asserting paid-leave claim); *Clarkson v. Alaska Airlines Inc.*, No. 19 Civ. 5, 2020 U.S. Dist. LEXIS 138838, at *19-21 (E.D. Wash. Aug. 4, 2020) (Rice, J.) (class of pilots asserting paid-leave claim).

Plaintiff thus seeks certification of the class under Rule 23(b)(3); that he be appointed Class Representative; and that his counsel be appointed Class Counsel.

## I.    Factual Background

### A.    Plaintiff's Work History and Defendants' Leave Policies

Plaintiff Justin Baker has worked for UPS as a full-time package driver since approximately June 18, 2007. He has also served in the Army Reserve since 2014, having attained the rank of Sergeant. Periodically, Mr. Baker has had to take leave from work for short-term military leaves of absence, such as for weekend drills and annual training. He has never received any payment from UPS for these leaves of absence.

Like much of UPS's workforce – and all of its small package drivers – Plaintiff is a member of the International Brotherhood of Teamsters ("Teamsters").[1]  The Teamsters represent a substantial part of UPS's workforce engaged in loading, sorting, and delivering packages.[2]  Since before 2002, UPS and the Teamsters have entered into various collective bargaining agreements ("CBAs") that apply to all covered employees, which reflect compromises that have been reached in collective bargaining between the Teamsters and UPS.[3]  As pertinent here, two such agreements cover Plaintiff: the National Master United Parcel Service Agreement ("National Master"), which applies nationwide and includes policies for jury duty leave and funeral leave;[4] and the Joint Council No. 28 Rider, which applies to a subset of Teamsters locals concentrated in the State of Washington.[5]  The policies contained in the latter CBA supplement the National

---

[1]     *See* Declaration of Michael J. Scimone ("Scimone Decl."), Ex. 1 (Ostendorp Tr.) 24:5-13.  Unless otherwise noted, all exhibits are attached to the Scimone Declaration.

[2]     Ex. 1 (Ostendorp Tr.) 24:17-22.

[3]     *See, e.g.*, Ex. 1 (Ostendorp Tr.) 25:7-20; 26:22-23; 100:19-25; 127:17-24; 142:16-22.

[4]     Ex. 3 (National Master), at UPS_00000594 (Art. 29, Sec. 1, p. 86) (jury duty), UPS_00000595-96 (Art. 29, Sec. 2, pp. 87-88) (funeral leave).

[5]     *See* Ex. 4 (Joint Council No. 28 Rider), at UPS_00000747.

Master to the extent they do not conflict with it.[6]  For example, the Joint Council No. 28 Rider contains sick leave policies, which are not covered by the National Master.[7]

### B.    UPS's Leave Benefits Do Not Include Short-Term Paid Military Leave.

UPS does not provide paid leave to employees who take short-term leave to perform military service.  Neither the National Master nor the Joint Council No. 28 Rider provide for paid leave for military service obligations.[8]  In addition, UPS does not have a generally applicable non-union policy that provides paid, short-term military leave to members of Plaintiff's proposed class.[9]  This has been true for all employees dating back

---

[6]    Ex. 1 (Ostendorp Tr.) 48:8-19.

[7]    *See* Ex. 1 (Ostendorp Tr.) 90:3-9; *see also* Ex. 4 (Joint Council No. 28 Rider) at UPS_00000770-71 (Art. VIII, Sec. 1, pp. 264-65).   An addendum to the Joint Council No. 28 Rider contains details on how the sick leave policy applies to part-time employees.  *See* Ex. 5 (Sort Addendum) at UPS_00000794 (Art. 1, p. 291) (coverage), UPS_00000802-04 (Art. 5, Sec. 1, pp. 299-301) (sick leave).

[8]    Article 15 of the National Master contains a "Military Clause," which states broadly that employees are entitled to the rights and privileges provided by USERRA. None of the subsections within this Article provide for paid leave.  *See* Ex. 3 (National Master), at UPS_00000547-50 (Art. 15, Sec. 1, pp. 39-42).

[9]    Although UPS does not pay for short-term military leaves of absence, it also does not withhold any pay from managers and full-time supervisors who receive a salary and

through October 2004.[10]

This is a surprising gap in an otherwise comprehensive benefits package. UPS does provide some paid military leave for certain *long-term* absences related to military service, but it does not cover the short-term leaves at issue in this case. UPS provides up to one year of differential pay[11] to individuals (1) employed by UPS for at least six

take military leave lasting less than one week. *See* Ex. 2 (Nelson Tr.) 77-79. Plaintiff's proposed class does not include these managers and full-time supervisors.

[10] None of the historical versions of the National Master and Joint Council No. 28 Rider dating back to 2002 have included any paid military leave provisions. *See* Ex. 6 (Historical National Master Excerpts), at UPS_Defs_00002367-69 (Art. 15, pp. 38-40) (2013-2018), UPS_Defs_00002531 (Art. 15, p. 25) (2007-2013), UPS_Defs_00002655 (Art. 15, p. 33) (2002-2008); Ex. 7 (Historical Joint Council No. 28 Rider Excerpts), at UPS_Defs_00003118 (Index, p. 229) (2013-2018), UPS_Defs_00004975 (Index, p. 2) (2007-2013), UPS_Defs_00006318 (2002-2008) (no index). *See also* Ex. 1 (Ostendorp Tr.) 157:15-158:10 (agreeing that since 2002 there have been "no proposals to actually provide paid military leave" other than permitting employees to use paid vacation days when they are required to perform military service obligations).

[11] Differential pay is the difference between "the employee's income at UPS" and the employee's total military pay. Ex. 9 (UPS Guide to Military Leaves of Absence), at UPS_Defs_00002299.

months; (2) who joined the uniformed services prior to joining UPS; and (3) who are called for active duty for a period of service exceeding 30 days "because of war or national emergency."[12]  UPS does not provide paid-leave benefits for employees who perform military service obligations that are 30 days or less or for any type of military service that is not "active duty,"[13] such as mandatory Guard training and Reserve duties. These military leave policies are common to all members of the proposed class.

### C.     UPS Pays for Comparable Leave Types.

In contrast, UPS does provide several forms of paid leave for employees who take other types of short-term absences from work, including for jury service, bereavement, or sickness.[14]

#### 1.     Jury Duty

UPS provides its employees unlimited paid leave when they are called to jury service.[15]  For any regularly scheduled workday, full-time employees are entitled to be paid their "guarantee" – the number of hours they are regularly scheduled to work[16] –

---

[12]    *Id*. at 1.

[13]    Ex. 2 (Nelson Tr.) 51:5-52:14.

[14]    ECF No. 41 (Answer to FAC), ¶ 30 (admitting that UPS pays "certain wages or salaries to certain employees during certain types of leaves of absence").

[15]    Ex. 3 (National Master), at UPS_00000594-95 (Art. 29, Sec. 1, pp. 86-87).

[16]    Ex. 1 (Ostendorp Tr.) 145:13-20.

"less any amount received as a jury duty fee."[17]  Part-time employees similarly receive payment for up to four hours at their straight-time hourly rates, "less any amount received as a jury duty fee."[18]  UPS has consistently provided this benefit since October 2004.[19]

### 2.    Bereavement Leave

UPS also provides employees with up to four paid days off to spend time grieving after the loss of a family member.[20]  The benefit is provided for each familial death; there is no annual cap.[21]  Employees entitled to this benefit are reimbursed at their straight-time hourly rate for the hours they were regularly scheduled to work.[22]  UPS has consistently

---

[17]    Ex. 3 (National Master), at UPS_00000594 (Art. 29, Sec. 1, p. 86).

[18]    *Id.*

[19]    *See* Ex. 6 (Historical National Master Excerpts), at UPS_Defs_00002405-06 (Art. 29, Sec. 1, pp. 76-77) (2013-2018), UPS_Defs_00002554-55 (Art. 29, Sec. 1, pp. 48-49) (2007-2013), UPS_Defs_00002681-82 (Art. 29, Sec. 1, p. 59-60) (2002-2008); Ex 1 (Ostendorp Tr.) 147:23-148:2.

[20]    Ex. 3 (National Master), at UPS_00000595-96 (Art. 29, Sec. 2, pp. 87-88) (setting four-day cap for paid bereavement leave).

[21]    Ex. 1 (Ostendorp Tr.) 129:3-7.

[22]    Ex 3 (National Master), at UPS_00000596 (Art. 29, Sec. 2, p. 88).

provided paid bereavement leave back through October 2004.[23]

### 3. Sick Leave

UPS also provides paid leave for employees who are absent from work because of an illness.[24] Sick leave is governed by the Joint Council No. 28 Rider. This CBA provides full time employees with 40 hours of sick leave a year and part-time employees with 20 hours of sick leave per year.[25] Employees who use sick leave are entitled to be paid at the rate they would have received had they been working their normal assignment.[26] Employees are also allowed to use sick leave to make up the difference in disability payments related to workers' compensation.[27] UPS has consistently provided

---

[23]    Ex. 1 (Ostendorp Tr.) 134:11-14; *see* Ex. 6 (Historical National Master Excerpts), at UPS_Defs_00002407 (Art. 29, Sec. 2, p. 78) (2013-2018), UPS_Defs_00002555 (Art. 29, Sec. 2, p. 49) (2007-2013), UPS_Defs_00002682 (Art. 29, Sec. 2, p. 60) (2002-2008).

[24]    Ex. 1 (Ostendorp Tr.) 100:3-8.

[25]    Ex. 4 (Joint Council No. 28 Rider), at UPS_00000770 (Art. VII, Sec. 1, p. 264); Ex. 5 (Sort Addendum), at UPS_00000802 (Art. 5, Sec. 1, pp. 299).

[26]    Ex. 1 (Ostendorp Tr.) 112:11-17.

[27]    Ex. 4 (Joint Council No. 28 Rider), at UPS_00000771 (Art. VII, Sec. 2, p. 265); Ex. 5 (Sort Addendum), at UPS_00000804 (Art. V, Sec. 2, p. 301); Ex. 1 (Ostendorp Tr.) 117:14-22.

paid sick time back through October 2004.[28]

In addition to the Joint Council No. 28 Rider, some generally applicable state-specific sick leave policies apply.  For example, for employees in the State of Washington, UPS has a generally applicable policy providing for paid sick leave for employees to care for their health and the health of their family members in cases of domestic violence, sexual assault or stalking.[29]  These policies, too, are common to all members of the proposed class, which is limited to the State of Washington.

## II.    Procedural History

Plaintiff brought this action on behalf of himself and similarly situated UPS employees, alleging that Defendants' policy of refusing to provide paid leave for short-term military service violates USERRA because Defendants provide more favorable pay benefits for other comparable short-term absences.  *See* ECF No. 16 (First Amended

---

[28]    *See* Ex. 7 (Historical Joint Council No. 28 Rider Excerpts), at UPS_Defs_00003138-40 (Art. VIII, Sec. 1, pp. 249-51) (2013-2018), UPS_Defs_00004988-89 (Art. VIII, Sec. 1, pp. 15-16) (2007-2013), UPS_Defs_00006324 (Art. 8, Sec. 1) (2002-2008); Ex. 8 (Historical Sort Addendum Excerpts), at UPS_Defs_00003173-74 (Art. V, Sec. 1, 284-85) (2013-2018), UPS_Defs_00005009-10 (Art. V, Sec. 1, p. 7-8) (2007-2013), UPS_Defs_00006336 (Art. V, Sec. 1) (2002-2008).

[29]    Ex. 10 (Washington Paid Sick and Safe Time Policy), UPS_Defs_00007157.

Complaint or "FAC").  Defendants filed a motion to dismiss on August 25, 2021.  ECF. No. 26.  On March 31, 2022, Judge Mendoza denied the motion in full, finding that "pay during leave is a 'right and benefit'" under USERRA.  ECF. No. 38 (quoting 38 U.S.C. § 4303(2)).  Defendants answered the FAC on April 28, 2022.  ECF. No. 41.

On June 9, 2022, the Court entered a Partial Scheduling Order and the parties commenced class certification discovery.  ECF. No 47.  The parties have exchanged and responded to interrogatories and requests for production of documents,[30] and Plaintiff has deposed two Rule 30(b)(6) witnesses on topics pertaining to class certification.[31]

## III.    Proposed Class

Plaintiff seeks to certify a class of all current and former employees of UPS subject to the Joint Council No. 28 Rider who worked in the State of Washington and, during their employment with UPS, took one or more short-term military leaves of 14 days or less and did not receive the regular pay that they would have earned had they continued to work their ordinary work schedules.  The class covers a time period from October 10, 2004 through the date of judgment in this action.

## IV.    Legal Standard

A plaintiff may proceed on behalf of a class if the requirements of Federal Rule 23(a) are met, along with one of the prongs of Rule 23(b).  *Wal-Mart Stores, Inc. v.*

---

[30]    *See* Declaration of Dylan Marlborough ("Marlborough Decl.") ¶ 3.

[31]    *See* Ex. 1 (Ostendorp Tr.); Ex. 2 (Nelson Tr.).

1   *Dukes*, 564 U.S. 338, 345 (2011).  Courts must perform a "rigorous analysis" to

2   determine whether certification is appropriate under Rule 23(b).  *Clarkson*, 2020 U.S.

3   Dist. LEXIS 138838, at *7 (quoting *Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 161 (1982)).

4   "Frequently that 'rigorous analysis' will entail some overlap with the merits of the

5   plaintiff's underlying claim," *Dukes*, 564 U.S. at 351 (quoting *Gen. Tel. Co.*, 457 U.S. at

6   161), although merits questions should be considered only to the extent "that they are

7   relevant to determining whether the Rule 23 prerequisites for class certification are

8   satisfied."  *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 466 (2013).

9   **V.      The Class Meets the Requirements of Rule 23(a).**

10          Plaintiff's proposed class meets the requirements of numerosity, commonality,

11   typicality, and adequate representation.  *See* Fed. R. Civ. P. 23(a).

12          **A.      The Class Is Sufficiently Numerous and Ascertainable.**

13          The first requirement of Rule 23(a) is that the class be "so numerous that joinder of

14   all members [would be] impracticable."  Fed. R. Civ. P. 23(a)(1).  Although Rule 23(a)

15   does not require a specific minimum number of class members, "[g]enerally, 40 or more

16   members will satisfy the numerosity requirement."  *Clarkson*, 2020 U.S. Dist. LEXIS

17   138838, at *9 (quoting *Garrison v. Asotin Cnty.*, 251 F.R.D. 566, 569 (E.D. Wash.

18   2008)).  Plaintiff's proposed class exceeds this threshold.  Based on personnel data

19   produced by UPS, Plaintiff estimates that there are approximately 440 class members.[32]

20

21   ─────────────────────────────
     [32]      Marlborough Decl. ¶ 7.

While not a "prerequisite to class certification," *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1133 (9th Cir. 2017), courts sometimes consider whether "an identifiable and ascertainable class exists," *Daniel F. v. Blue Shield of Cal.*, 305 F.R.D. 115, 120 (N.D. Cal. 2014). To satisfy this practical consideration, "the class definition must be sufficiently defined so that the members of the class can be ascertained by reference to objective criteria." *Id.* at 122 (citing *In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. MDL 1917, 2013 U.S. Dist. LEXIS 137945, at \*83 (N.D. Cal. June 20, 2013)). *But see Briseno*, 844 F.3d at 1132 (stating that Rule 23 does not require that "the identity of class members can be ascertained with perfect accuracy at the class certification stage" (quoting *Mullins v. Direct Digit., LLC*, 795 F.3d 654, 670 (7th Cir. 2015)). Here, the class is comprised of individuals who, according to Defendants' personnel records, took short-term military leave from October 10, 2004 to present. Using this data, determining whether someone is a class member is a straightforward analysis using objective criteria.

## B.    There Are Common Questions of Law and Fact.

Rule 23(a) also requires that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). If common questions drive the resolution of the litigation, the class is "sufficiently cohesive to warrant adjudication by representation." *Jabbari v. Farmer*, 965 F.3d 1001, 1005 (9th Cir. 2020) (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623-24 (1997)). "[A] single [common] question" will satisfy Rule 23(a)(2). *Dukes*, 564 U.S. at 359 (second alteration in original); *accord Ruiz Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1133 (9th Cir. 2016). The existence of "a

general policy" or a "uniform employment practice" satisfies Rule 23(a)(2).  *Dukes*, 564 U.S. at 355.

Here, there are two common issues: (1) whether paid leave is among the "rights and benefits" that must be provided equally to employees on military leave under USERRA § 4316(b) when provided for other comparable forms of leave, and (2) whether Defendants provide other paid leave that is comparable to short-term military leave.

*First*, whether paid leaves are "rights and benefits" is a legal question that will have the same answer for all class members.  *See* 38 U.S.C. § 4303(2) (defining "rights and benefits" as used in § 4316(b)); *Travers v. Fed. Express Corp.*, 8 F.4th 198, 204-08 (3rd Cir. 2021) (the term "rights and benefits" under USERRA § 4303(2) "includes pay while on leave"); *White v. United Airlines, Inc.*, 987 F.3d 616, 623 (7th Cir. 2021) ("[T]he definition of 'rights and benefits' under USERRA embraces paid leave.").  Judge Mendoza already answered this common question in the affirmative and determined that paid leave is such a "benefit" under USERRA.  *See* ECF No. 38 at 10 ( "[P]ay during leave is a 'right and benefit' under Section 4303(2)."); *accord Clarkson*, 2020 U.S. Dist. LEXIS 138838, at *12 (certifying USERRA § 4316(b) paid leave class and holding that "whether paid leave is one of the 'rights and benefits' that must be provided equally to employees on military leave under USERRA" is "a common legal question"); *see also Huntsman*, 2021 U.S. Dist. LEXIS 20856, at *10 (even if an issue has been decided, it does not "remove[] it from consideration at the class certification stage").

*Second*, because this case is about employment policies of general applicability,

whether short-term military leave is comparable to jury duty, sick leave, or bereavement leave is a merits question that can be resolved in common for all class members.  *See, e.g.*, *Scanlan v. Am. Airlines Grp., Inc.*, 567 F. Supp. 3d 521, 529 (E.D. Pa. 2021) (holding that "whether short-term military leave is comparable to jury duty and bereavement and should thus be similarly credited or compensated" under USERRA is a common question).  Under the applicable regulations, the primary factors that determine comparability are the duration of the leave, the purpose of the leave, and the ability to choose when to take it.  *See* 20 C.F.R. § 1002.150(b).

The most important factor is duration.  *See id.*; *Clarkson v. Alaska Airlines, Inc.*, 59 F.4th 424, 434 (9th Cir. 2023).  This is primarily a factual, data-driven inquiry. Defendants have produced data for military leave, jury duty leave, bereavement leave, and sick leave.[33]  The parties will be able to use this common personnel data to analyze the durations of leaves taken by UPS's employees.[34]  Moreover, all class members are subject to identical leave policies that contain caps on the extent of paid leave available under each policy.[35]  *See Dukes*, 564 U.S. at 355 (recognizing that a "uniform

---

[33]   Marlborough Decl. ¶ 3.

[34]   *Id.* ¶ 6 ("From the data, we can identify the total number of leave days per year, the total number of leaves per year, and the duration of each leave.")

[35]   *See, e.g.*, Ex. 3 (National Master), at UPS_00000596 (Art. 29, Sec. 2, p. 88) (setting four-day cap for paid bereavement leave); Ex. 1 (Ostendorp Tr.) 148:11-13 (no

employment practice . . . would provide the commonality needed for a class action"). The parties will be able to use these common policies and leave data to determine whether leaves are comparable in duration.

The remaining two factors – the purpose of the leave and its voluntariness – are also common questions. The purpose of the leave policies that UPS offers do not vary between different employees – UPS created leave policies that apply equally to all class members, and the purpose of each leave category is inherent in the benefit itself. Regarding voluntariness, the parties will also be able to use the text of the policies themselves and testimony about how UPS implements its common leave policies when employees must schedule time off work. And the unplanned nature of a jury summons, death of a family member, or illness will not differ between employees.

### C.   The Typicality Requirement of Rule 23(a) Is Met.

Rule 23 also requires that the "claims or defenses of the representative parties [be] typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3).

The typicality requirement ensures that the "interest of the named representative aligns with the interests of the class." *Clarkson*, 2020 U.S. Dist. LEXIS 138838, at *13 (quoting *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010)). "Under the rule's permissive standards," claims "are 'typical' if they are reasonably

---

cap on jury duty leave).

coextensive with those of absent class members; they need not be substantially identical." *Parsons v. Ryan*, 754 F.3d 657, 685 (9th Cir. 2014) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998)).  "The Ninth Circuit is clear that when a policy or practice is at issue that affects all class members, typicality exists." *Ruiz Torres v. Mercer Canyons, Inc.*, No. 14 Civ. 3032, 305 F.R.D. 646, 653 (E.D. Wash. 2015).

Here, Plaintiff challenges UPS's uniform policy of refusing to pay for short-term military leave while simultaneously paying for comparable forms of leave, in violation of § 4316(b).  All leave policies, including the comparators, are identical for Plaintiff and the class.  *Compare Clarkson*, 2020 U.S. Dist. LEXIS 138838, at *15 ("Plaintiff's paid leave claim is . . . typical of his own employment group . . . and the collective bargaining agreements by which Plaintiff's employment and benefits are governed.").  Defendants assert no unique defenses against Plaintiff.  *See generally* ECF. No. 41 (Answer to FAC), at 13-17.  Plaintiff's claims are therefore typical of all members of the class.

### D.    Plaintiff and his Counsel Will Adequately Represent the Class.

Determining whether a class representative will fairly and adequately protect the interests of the class under Rule 23(a)(4) involves two questions: "(1) Do the representative plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the representative plaintiffs and their counsel prosecute the action vigorously on behalf of the class?"  *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003).  "Only conflicts that are fundamental to the suit and that go to the heart of the litigation prevent a plaintiff from meeting the Rule 23(a)(4) adequacy requirement."

*Resnick v. Frank (In re Online DVD-Rental Antitrust Litig.)*, 779 F.3d 934, 942 (9th Cir. 2015) (quoting 1 William B. Rubenstein et al., *Newberg on Class Actions* § 3.58 (5th ed. 2011)).

Here, neither Plaintiff nor Plaintiff's counsel have any conflicts of interest with the class. Plaintiff shares a common interest with class members in that they all suffered, and continue to suffer, the same type of injury – denial of a paid leave benefit for short-term military leaves. Thus, Plaintiff similarly shares an interest in vigorous prosecution of the USERRA claim in this case, as he stands to benefit from a liability finding in the same way as other class members.

Plaintiff and Plaintiff's counsel have also vigorously prosecuted this action to date.[36] Plaintiff has worked closely with counsel on each step of the litigation and their discovery efforts, provided documents to counsel, reviewed the Complaint, answered discovery requests, and produced documents. Plaintiff understands and is prepared to fulfill his duties to vigorously pursue the claims on behalf of the class.[37] *See Allen v. Hyland's Inc.*, 300 F.R.D. 643, 663 (C.D. Cal. 2014) (adequacy requirement satisfied where plaintiffs "made themselves available for depositions and demonstrated familiarity with the case"); *McGuire v. Dendreon Corp.*, 267 F.R.D. 690, 697 (W.D. Wash. 2010)

---

[36]    Scimone Decl. ¶¶ 14-17.

[37]    *Id.* ¶ 15.

(same where plaintiff "is willing to spend as much time as is necessary to see the litigation through").

Plaintiff's counsel also meet the requirements for appointment as Class Counsel under Rules 23(a)(4) and 23(g).  *See Scholl v. Mnuchin*, 489 F. Supp. 3d 1008, 1045 (N.D. Cal. 2020) (analyzing adequacy for class counsel under Rule 23(g)).  Courts analyze the following four factors: "(1) the work counsel has done in identifying or investigating potential claims in the action; (2) counsel's experience in handling class actions or other complex litigation and the type of claims in the litigation; (3) counsel's knowledge of the applicable law; and (4) the resources that counsel will commit to representing the class."  *Id.*  Plaintiff's counsel easily meet each factor.  First, Plaintiff's counsel have vigorously litigated this matter, including successfully opposing UPS's motion to dismiss, participating in hearings related to this motion, reviewing many current and historical policy documents and personnel data spreadsheets, and taking two 30(b)(6) depositions.[38]  With respect to the second and third factors, Plaintiff's proposed Co-Lead Class Counsel – Outten & Golden LLP and Barton & Downes LLP – have extensive experience litigating employment class actions.[39]  This experience includes litigating USERRA claims, including the paid leave claims in this case.[40]  *See, e.g.,*

---

[38]    *Id.* ¶ 16.

[39]    *Id.* ¶¶ 4-5; Declaration of R. Joseph Barton ("Barton Decl.") ¶ 12.

[40]    Scimone Decl. ¶ 5; Barton Decl. ¶¶ 2-3.

*Huntsman*, 2021 U.S. Dist. LEXIS 20856, at *27.  Plaintiff's other counsel also have extensive experience litigating employment class actions.[41]  This Court has previously recognized that the same "counsel have significant experience litigating class action and USERRA cases." *Clarkson*, 2020 U.S. Dist. LEXIS 138838, at *16 (finding these same counsel satisfied Rule 23(a)(4) and 23(g) and appointing them as class counsel).  Plaintiff's counsel are prepared to commit the resources necessary to successfully litigate this matter on behalf of the class going forward.[42]

## VI.     The Claims Meet the Requirements of Rule 23(b)(3).

In addition to the requirements of Rule 23(a), a class action seeking damages may only be maintained if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).

### A.     The Predominance Requirement Is Met.

The key question for the predominance inquiry is "whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." *Tyson Foods, Inc. v. Bouaphakeo*,

---

[41]     Ex. 11 (Decl. of T. Jarrard) ¶¶ 4-5; Ex. 12 (Decl. of M. Crotty) ¶¶ 4-6; Ex. 13 (Decl. of P. Romer-Friedman) ¶ 9.

[42]     Scimone Decl. ¶ 17.

577 U.S. 442, 453 (2016) (quoting 2 W. Rubenstein, Newberg on Class Actions § 4:49, at 195-96 (5th ed. 2012)).  "An individual question is one where 'members of a proposed class will need to present evidence that varies from member to member,' while a common question is one where 'the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof.'"  *Id.* (alteration in original).

Here, the common issues described in Part V(B), *supra*, all turn on common evidence.  *See Huntsman*, 2021 U.S. Dist. LEXIS 20856, at *39 (common issues of "whether paid leave is a 'right and benefit' under 38 U.S.C. § 4316(b) and whether short-term military leave is comparable to other forms of paid leave" predominated).  They will be resolved for Plaintiff and members of the class in common because all class members are subject to the same leave policies.  *See id.* (predominance requirement met where "plaintiff's [paid-leave] claim turns on Southwest's generally applicable policies"); *see also Senne v. Kansas City Royals Baseball Corp.*, 934 F.3d 918, 938 (9th Cir. 2019) ("[P]redominance in employment cases is rarely defeated on the grounds of differences among employees so long as liability arises from a common practice or policy of an employer.'" (alteration in original) (quoting 7 Newberg on Class Actions § 23:33 (5th ed. 2012))).  The common conduct, harm, and sources of proof ensure that common issues will predominate over any individual liability issues.

Further, individualized damages concerns will not defeat predominance.  *See, e.g.*, *Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 514 (9th Cir. 2013) ("The amount of

damages is invariably an individual question and does not defeat class action treatment." (alterations omitted) (quoting *Blackie v. Barrack*, 524 F.2d 891, 905 (9th Cir. 1975))). Here, as in *Leyva*, damages for class members can be ascertained using a common damages methodology using data reflecting each class Member's periods of short-term military leave during the class period and the wages they would have received had they continued working during such leave. *See id.* ("[P]laintiffs must be able to show that their damages stemmed from the defendant's actions that created the legal liability."). This issue will largely be determined by UPS's data productions in this case. *See* 20 C.F.R. § 1002.150 (if "benefits to which employees on furlough or leave of absence are entitled vary according to the type of leave, the employee must be given the most favorable treatment accorded to any comparable form of leave when he or she performs service in the uniformed services").

Because liability questions and damages calculations involve common evidence and a common methodology, Plaintiff satisfies predominance. *See Clarkson*, 2020 U.S. Dist. LEXIS 138838, at *17 (certifying limited paid leave class and finding common questions about liability predominate over individualized concerns).

### B.   The Superiority Requirement Is Met.

Superiority measures whether "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Superiority turns on (1) the class members' interests in controlling litigation, (2) the nature and extent of other litigation concerning the same controversy, (3) the desirability

of concentrating litigation of the claims in the forum, and (4) the difficulties of managing the case as a class action.  Fed. R. Civ. P. 23(b)(3)

The proposed class satisfies Rule 23's superiority requirements.  The class is comprised of individuals seeking modest amounts of damages for their short-term military leave, as required by USERRA.  If successful, this litigation will provide relief to all class members to the same degree as if they brought individual lawsuits in their own names, but without the added costs of individualized litigation that would dwarf their potential recovery.  *See Clarkson*, 2020 U.S. Dist. LEXIS 138838, at *18 ("[C]lass adjudication would serve the interests of individual class members for whom the potential recovery may be small in comparison to the costs of litigation.").  The second factor is met; Plaintiff is not aware of any other pending litigation on the same issues against these Defendants.[43]  The third factor is fulfilled when plaintiffs choose a venue that is both home to extensive business by defendant and a large number of class members.  *Id.* at *18.  And here, Plaintiff's class is limited to the State of Washington, where *all* class members worked and where UPS conducts substantial business.

Finally, as to the fourth factor, this case does not present manageability concerns.  Liability will be based on common, generally applicable evidence, including corporate documents, testimony, and personnel data.  There will be no fact-finding into individual class members necessary to establish liability.  Following a liability holding, damages

---

[43]    Scimone Decl. ¶ 18.

could be determined using a class-wide methodology.  Nothing in this case is so complex that it would be unmanageable as a class action at trial.  Accordingly, a class action is a superior method of resolving this claim on behalf of the class.  *See Scanlan*, 2022 U.S. Dist. LEXIS 63755, at *12-13 (finding superiority satisfied in action involving similar claims); *Huntsman*, 2021 U.S. Dist. LEXIS 20856, at *40-41 (same); *Clarkson*, 2020 U.S. Dist. LEXIS 138838, at *18 (same).

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court certify the class pursuant to Rules 23(a) and 23(b)(3), designate Plaintiff as Class Representative, and appoint Outten & Golden LLP and Barton & Downes LLP as Co-Lead Class Counsel and his other counsel as additional Class Counsel pursuant to Rule 23(a)(4) and 23(g).

Dated: April 7, 2023

Respectfully submitted,

/s/ *Michael J. Scimone*

Michael J. Scimone*
**OUTTEN & GOLDEN LLP**
685 Third Avenue, 25th Floor
New York, NY 10017
Telephone: (212) 245-1000
Fax: (646) 509-2060
mscimone@outtengolden.com

Ryan Cowdin*
1225 New York Ave NW, Suite
1200BWashington, DC 20005
Telephone: (202) 914-5097
Fax: (202) 847-4410
rcowdin@outtengolden.com

Thomas G. Jarrard (WSBA #39774)
**LAW OFFICE OF THOMAS G.
JARRARD, PLLC**
1020 N. Washington Street
Spokane, WA  99201
Telephone: (425) 239-7290
tjarrard@att.net

Matthew Z. Crotty (WSBA #39284)
**RIVERSIDE LAW GROUP PLLC**
905 W. Riverside Avenue, Suite 404
Spokane, WA 99201
Telephone: (509) 850-7011
mzc@riverside-law.com

R. Joseph Barton*
**BARTON & DOWNES LLP**
1633 Connecticut Avenue NW, Suite 200
Washington D.C. 20009
Telephone: (202) 734-7046
jbarton@bartondownes.com

Peter Romer-Friedman*
**PETER ROMER-FRIEDMAN LAW
PLLC**
1629 K Street, NW, Suite 300
Washington, DC 20006
Telephone: (718) 938-6132
peter@pfg-law.com


Robert D Friedman*
**GUPTA WESSLER PLLC**
2001 K Street NW, Suite 850
Washington, DC 20006
Telephone: (914) 588-4713
robert@guptawessler.com

* admitted *pro hac vice*

*Attorneys for Plaintiff and the Putative
Class*

## **CERTIFICATE OF SERVICE**

I certify that on April 7, 2023, I caused the foregoing Motion for Class Certification to be electronically filed with the Clerk of the Court using the CM/ECF system, which in turn automatically generated a Notice of Electronic Filing (NEF) to all parties in the case who are registered users of the CM/ECF system.

/s/ *Michael Scimone*
Michael J. Scimone*
OUTTEN & GOLDEN LLP
685 Third Avenue, 25th Floor
New York, NY 10017
Telephone: (212) 245-1000
Fax: (646) 509-2060
mscimone@outtengolden.com

*Attorney for Plaintiff*