SALLY W. HAMELING (WSBA No. 49457)
JACOB M. KNUTSON (WSBA No. 54616)
**JEFFERS, DANIELSON, SONN & AYLWARD, P.S.**
2600 Chester Kimm Road
P.O. Box 1688
Wenatchee, WA  98807-1688
Telephone:  (509) 662-5685
Facsimile:  (509) 662-2452
E-mail:  sallyh@jdsalaw.com
E-mail:  jacobk@jdsalaw.com


DOMINIC E. DRAYE (AZ Bar No. 033012)
*Admitted Pro Hac Vice*
**GREENBERG TRAURIG, LLP**
2375 East Camelback Road, Suite 700
Phoenix, Arizona  85016
Telephone:  (602) 445-8000
Facsimile:  (602) 445-8100
E-mail: drayed@gtlaw.com

*Attorneys for Defendants*
[Additional Counsel Listed On Next Page]

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WASHINGTON**

| | |
|---|---|
| JUSTIN BAKER, on behalf of himself and all others similarly situated,<br>        Plaintiff,<br>v.<br><br>UNITED PARCEL SERVICE, INC., a Delaware Corporation, and UNITED PARCEL SERVICE, INC., an Ohio corporation,<br>        Defendants. | NO. 2:21-cv-00114-TOR<br><br>DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION |

NAOMI G. BEER (CO Bar No. 29144)
*Admitted Pro Hac Vice*
**GREENBERG TRAURIG, LLP**
1144 15th Street, Suite 3300
Denver, Colorado  80202
Telephone:  (303) 572-6500
Facsimile:  (303) 572-6540
E-mail: beern@gtlaw.com

1

## **TABLE OF CONTENTS**

I.   INTRODUCTION ...................................................................................... 1

II.   RELEVANT BACKGROUND ................................................................... 3

   A.   "Short-Term Military Leave" Does Not Exist. ...................................... 3

   B.   The CBAs and the Putative Class. ......................................................... 4

   C.   The Allegedly Comparable Leaves. ....................................................... 5

   D.   Plaintiff Baker. ...................................................................................... 7

   E.   Putative Class Members Hold Different Positions and Work
       Different Schedules. ............................................................................... 8

III.   LEGAL STANDARD .............................................................................. 9

IV.   THE PROPOSED CLASS FAILS TO SATISFY RULE 23 ................... 10

   A.   USERRA Requires Evaluating Leaves By Similarly Situated Employees. ......... 10

   B.   Baker Cannot Identify Common Questions of Whether Class Members Are
       Injured and to What Extent. ................................................................. 11

     1.   The Alleged Comparator Leaves Are Not Comparable in Duration. ................ 12

     2.   Variations in the Allegedly Comparable Leaves Defeat Commonality and
        Predominance. .................................................................................. 13

     3.   Different Scheduling Flexibility and Ability to Avoid Conflicting Leaves
        Defeat Commonality and Predominance. ............................................. 15

   C.   Baker Fails to Satisfy Adequacy and Typicality as to All Non-RPCDs. ............... 16

   D.   Baker Has Not Established Either the Predominance or Superiority
       Prong of Rule 23(b). ............................................................................ 17

     1.   UPS' Laches Defense Demands Individualized Inquiries. ....................... 17

     2.   Baker Cannot Show That Injury Is Capable of Proof or Measurement
        on a Classwide Basis. ....................................................................... 20

     3.   The Proposed Class Is Not a Superior Method to Adjudicate the Controversy
        Because Resolving the Individualized Issues Would Be Unmanageable. ......... 22

V.   CONCLUSION ....................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Amchem Prods. v. Windsor*,
  521 U.S. 591 (1997)...................................................................17

*Anderson v. Mt. Clemens Pottery Co.*,
  328 U.S. 680 (1946)..................................................................22

*Atigeo LLC v. Offshore Ltd.*,
  No. C13-1694JLR, 2014 U.S. Dist. LEXIS 7889 (W.D. Wash. Jan. 22, 2014)..5, 8, 21

*Bazuaye v. I.N.S.*,
  79 F.3d 118 (9th Cir. 1996) ........................................................5

*Boucher v. First Am. Title Ins. Co.*,
  No. C10-199RAJ, 2011 U.S. Dist. LEXIS 49162 (W.D. Wash. May 2, 2011) ..........24

*Bowerman v. Field Asset Servs.*,
  60 F.4th 459 (9th Cir. 2023) .......................................................15, 21

*Brown v. Google, LLC*,
  No. 20-cv-3664-YGR, 2022 U.S. Dist. LEXIS 233893 (N.D. Cal.
  Dec. 12, 2022).......................................................................20

*Bund v. Safeguard Props., LLC*,
  No. C15-1773 MJP, 2016 U.S. Dist. LEXIS 198793 (W.D. Wash.
  Mar. 2, 2016)........................................................................14

*Clarkson v. Alaska Airlines Inc.*,
  No. 2:19-CV-0005-TOR, 2020 U.S. Dist. LEXIS 138838 (E.D. Wash.
  Aug. 4, 2020) ...................................................................*passim*

*Clarkson v. Alaska Airlines Inc.*,
  No. 2:19-CV-0005-TOR, 2020 U.S. Dist. LEXIS 184477 (E.D. Wash.
  Oct. 5, 2020) .......................................................................18

*Cmty. Ass'n for Restoration of the Env't v. Wash. Dairy Holdings Ltd. Liab. Co.*,
  No. 1:19-CV-3110-TOR, 2019 U.S. Dist. LEXIS 241281 (E.D. Wash.
   Oct. 24, 2019) ......................................................................21

*Comcast Corp. v. Behrend*,
  569 U.S. 27 (2013).................................................................21

*Couveau v. Am. Airlines, Inc.*,
  218 F.3d 1078 (9th Cir. 2000) ...........................................................18, 19

*Danjaq LLC v. Sony Corp.*,
  263 F.3d 942 (9th Cir. 2001) ....................................................................18

*Dixon v. Monterey Fin. Servs.*,
  No. 15-cv-03298-MMC, 2016 U.S. Dist. LEXIS 111687 (N.D. Cal.
  Aug. 22, 2016) ..........................................................................................24

*Ellis v. Costco Wholesale Corp.*,
  657 F.3d 970 (9th Cir. 2011) ....................................................................10

*Galliher v. Cadwell*,
  145 U.S. 368 (1892).................................................................................18

*Garcia v. Stemilt AG Servs. LLC*,
  No. 2:20-cv-00254-SMJ, 2021 U.S. Dist. LEXIS 158060 (E.D.
  Wash. Aug. 20, 2021) ...............................................................................22

*Gen. Tel. Co. v. Falcon*,
  457 U.S. 147 (1982)...........................................................................10, 17

*Gruca v. U.S. Steel Corp.*
  495 F. 2d 1252 (1974)..............................................................................19

*Harris v. Vector Mktg. Corp.*,
  753 F. Supp. 2d 996, 1022 (N.D. Cal. 2010)............................................23

*Holmberg v. Armbrecht*,
  327 U.S. 392 (1946).................................................................................18

*In re SFPP Right-Of-Way Claims*,
  No. SACV 15-00718 JVS (DFMx), 2017 U.S. Dist. LEXIS 85973 (C.D. Cal.
  May 23, 2017) ...........................................................................................19

*Johnson v. R&L Carriers Shared Servs., Ltd. Liab. Co.*,
  No. 2:22-cv-01619-MCS-JPR, 2023 U.S. Dist. LEXIS 81990 (C.D. Cal.
  Apr. 10, 2023) ..........................................................................................14

*Jordan v. Paul Fin., LLC*,
  285 F.R.D. 435 (N.D. Cal. 2012)..............................................................21

*Kamar v. Radio Shack Corp.*,
  375 F. App'x 734 (9th Cir. 2010)..............................................................24

*Kristensen v. Credit Payment Servs.*,
    12 F. Supp. 3d 1292 (D. Nev. 2014)..................................................................18

*Lith v. Iheartmedia + Ent., Inc.*, No. 1:16-cv-066-LJO-SKO, 2016 U.S. Dist. LEXIS
    96853 (E.D. Cal. July 25, 2016) .....................................................................24

*Loaiza v. Kinkisharyo Int'l, L.L.C.*,
    No. LA CV19-07662 JAK (KSx), 2022 U.S. Dist. LEXIS 198116
    (C.D. Cal. Oct. 27, 2022) ................................................................................21

*Maher v. City of Chicago*,
    406 F. Supp. 2d 1006 (N.D. Ill. 2006), *aff'd*, 547 F.3d 817
    (7th Cir. 2008)............................................................................................18, 19

*Mahone v. Amazon.Com, Inc.*,
    No. C22-594 MJP, 2023 U.S. Dist. LEXIS 61824 (W.D. Wash.
    Apr. 7, 2023) ..............................................................................................18, 19

*Nw. Immigrant Rights Project v. United States Citizenship & Immigration Servs.*,
    325 F.R.D. 671 (W.D. Wash. 2016) ...............................................................23

*Olean Wholesale Grocery Coop., Inc., v. Bumble Bee Foods LLC*,
    31 F.4th 651 (9th Cir. 2022) (en banc) ...........................................................10

*Pipka v. Kohl's Dept. Stores, Inc.*,
    No. CV-16-4293-MWF, 2016 U.S. Dist. LEXIS 186402 (C.D. Cal.
    Dec. 21, 2016)..................................................................................................24

*Rutledge v. Elec. Hose & Rubber Co.*,
    511 F.2d 668 (9th Cir. 1975) ..........................................................................10

*Sandoval v. Cty. of Sonoma*,
    912 F.3d 509 (9th Cir. 2018) ..........................................................................17

*Save the Peaks Coal. v. United States Forest Serv.*,
    669 F.3d 1025 (9th Cir. 2012) ........................................................................19

*Scanlan v. Am. Airlines Grp., Inc.*,
    567 F. Supp. 3d 521 (E.D. Pa. 2021)..............................................................25

*Selby v. LVNV Funding, LLC*,
    No. 13-cv-01383-BAS(BLM), 2016 U.S. Dist. LEXIS 83940 (S.D. Cal.
    June 22, 2016)..................................................................................................17

*Six Mexican Workers v. Arizona Citrus Growers*,
  904 F.2d 1301 (9th Cir. 1990) ...................................................................23

*TransUnion LLC v. Ramirez*,
  141 S. Ct. 2190 (2021)...............................................................................15

*United States ex rel. Giles v. Sardie*,
  191 F. Supp. 2d 1117 (C.D. Cal. 2000) .....................................................22

*Valenzuela v. Union Pac. R.R. Co.*,
  No. CV-15-01092-PHX-DGC, 2017 U.S. Dist. LEXIS 23838 (D. Ariz.
  Feb. 21, 2017) ...........................................................................................19

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011)....................................................................10, 11, 17

*Zinser v. Accufix Research Inst., Inc.*,
  253 F.3d 1180 (9th Cir. 2001) ...................................................................23

**<u>Statutes</u>**

38 U.S.C. § 4316 ........................................................................................10, 11

Wash. Rev. Code § 49.46.210.................................................................................7

**<u>Other Authorities</u>**

20 C.F.R. § 1002.150 ...................................................................................11, 16

Fed. R. Civ. P. 23 .................................................................................9, 10, 22, 23

## I.    INTRODUCTION

Plaintiff Justin Baker creates a category of leave—"short-term military leave"—not recognized by the Uniformed Services Employment and Reemployment Rights Act ("USERRA"). He then asserts Defendants[1] violated USERRA because they did not pay employees while away on "short-term military leave," despite providing paid bereavement (or funeral) leave, sick leave, and jury duty leave.

Baker's proposed class and damages theories have morphed over time. First, after filing his Motion for Class Certification ("Motion"), he changed his damages theory from one seeking full pay (*i.e.*, a second salary) to differential pay, meaning the difference between an employee's military pay and what the employee would have earned from UPS. Second, his definition of "short-term military leave" is a moving target, contending in written pleadings that whether a leave is "short-term," depends on the length of the military obligation (longer or shorter than 14 days), but testifying in deposition that the number of days away from work determines class membership, then switching back in his supplemental discovery responses. Third, while his Complaint pled a nationwide class of "all" current and former part- and full-time employees, his Motion seeks to certify a class of Washington employees subject to certain Collective Bargaining Agreements ("CBAs") between UPS and the International Brotherhood of Teamsters.

---

[1] As explained in Defendants' Motion to Dismiss (ECF 26), UPS of Delaware does not employ Baker or any of the putative class. UPS of Delaware will seek dismissal at a later date. In this Response, all references to Defendants mean both UPS of Delaware and UPS of Ohio and all references to "UPS" mean UPS of Ohio.

DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION – No. 2:21-cv-00114-TOR

Under any version of his allegations, Baker's bid for class certification fails. First, the proposed class is overbroad because it includes persons in multiple work groups working different part- and full-time schedules, requiring different analyses to determine the comparability of their leaves. *See Clarkson v. Alaska Airlines Inc.*, No. 2:19-CV-0005-TOR, 2020 U.S. Dist. LEXIS 138838 (E.D. Wash. Aug. 4, 2020). Second, Baker's new differential-pay damages theory necessarily entails an inquiry not only into each putative class member's work and military schedules but also an additional inquiry into how much that person was paid by the military on any given day and whether that amount is less than what UPS would have paid. UPS, however, does not have information as to what its employees are paid by the military, and even if such information could be obtained from third parties, individualized "mini-trials" would be necessary to determine whether and to what extent a class member suffered injury. Third, under any definition of "short-term military leave," variations in the supposedly comparable leaves defeat both commonality and predominance.

Further, while Baker has not offered a class definition reflecting his new damages theory, any definition he might offer is necessarily fail safe, because class membership is dependent on whether differential pay is owed. If not, that person drops out of the class and, by losing, is not bound by the judgment. Not only is this unfair to a defendant, but it renders the case unmanageable because there is no way to know prior to trial who is in the class and who must receive notice.

The extraordinarily long class period (19 years and counting) also raises significant predominance concerns with respect to laches. Baker testified he knew of his claim as early as 2015. But he waited six years, until 2021, to file suit. While the Court will decide laches at a later stage, notice-based defenses such as laches necessarily require fact-specific, individualized examinations, defeating class certification.

## II.    RELEVANT BACKGROUND

### A.    "Short-Term Military Leave" Does Not Exist.

Baker's claim springs from what he calls "short term military leave." The meaning of this phrase is a threshold question—largely because it is wholly foreign to USERRA. The Complaint defines it as "military leave that lasts 14 consecutive days or fewer . . . ." (ECF 16 at ¶ 1.) The Motion phrases it somewhat differently, describing "absences from work to fulfill [military] obligations [ ] (i.e., absences lasting 14 days or less), such as the occasional long weekend drill or annual 2-week training requirements." (ECF 57 at 6.)

However, Baker testified his claim concerns payment for the first 14 days missed from work, regardless of how long the military obligation lasts. Using a twenty-two day military obligation as an example, he seeks pay for the first fourteen of those days that he would have otherwise been working at UPS. (Ex. A, Baker Dep. 134:7-19; 137:5-11.)[2] Under this definition, the first fourteen days of *every* military leave would be eligible for payment.

After his deposition, Baker retreated from his testimony and served supplemental

---

[2] Unless otherwise noted, all exhibits are attached to the Declaration of Naomi Beer.

3 – DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION – No. 2:21-cv-00114-TOR

discovery responses clarifying that short-term military leave means "a period of military service that consists of an unbroken period of 14 days or less." (Ex. B, 5/12/23 Amended Disclosures at 5:17-6:1; Ex. C, 5/25/23 Second Amended Disclosures at 5:17-6:1; Ex. D, 5/25/23 Supplemental Answer to Interrogatory No. 12.[3]) This shifting landscape is the consequence of inventing forms of leave appearing nowhere in USERRA.

## B.    The CBAs and the Putative Class.

Baker's Motion seeks to certify a class of part-time and full-time employees who worked for UPS in Washington since October 10, 2004, and who were subject to three CBAs between UPS and the Teamsters: the National Master Agreement ("NMA"), the Western Region Supplement to the NMA and the Joint Council 28 Rider to the NMA, including the Sort Addendum. Covered employees are all part of UPS' package and delivery network (sometimes referred to as the small package division) and include (among others) full-time package car drivers, Article 22 combo drivers, air drivers, feeder drivers and part-time loaders, unloaders, pre-loaders, sorters, clerks and mechanics.

These agreements are read together, and employees covered by them receive the superior benefit across the three agreements. (Ex. E, Ostendorp Dep. 41:22-42:18.) Each agreement has been in effect for five years, with four sets of agreements since October 10, 2004.[4]

---

[3] Curiously, Baker did not amend his response to Interrogatory No. 1 to remove leaves where the unbroken period of military service is greater than 14 days. (Ex. J, Answer to Interrogatory No. 1.)

[4] Unless otherwise noted, the relevant provisions are the same throughout the putative class period.

4 – DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION – No. 2:21-cv-00114-TOR

According to Baker's Motion, of the 440 persons identified as being in the putative class, 289 of them (or about 66%) hold part-time positions.[5] (ECF 64, Declaration of Dylan Marlborough ("Marlborough Declaration.") at 4, n. 2.)

## C.    The Allegedly Comparable Leaves.

Baker identifies three forms of leave as allegedly comparable to "short term military leave"—bereavement, jury duty, and sick leave. These leaves are summarized below.

*Bereavement Leave.* The CBAs provide for paid bereavement leave, with the length of leave varying depending on (a) whether the deceased family member was a close or more distant relative, as listed in the CBA; and (b) whether the employee must travel to the funeral. (Ex. F, NMA, Art. 29 § 2.) The leave available is explained as follows:

> [For immediate family members, a] regular full-time employee shall be guaranteed two (2) days off to be taken between the day of death and two (2) working days following the funeral provided the employee attends the funeral or other bereavement rite [and] an employee who attends the funeral or bereavement rite is guaranteed a minimum of two (2) days off. An employee shall be allowed one (1) day off to attend the funeral or other bereavement rite of a [less immediate family member].

> Time off shall not extend beyond the day of the funeral unless an additional day is required for travel, except as provided above. In no event will total compensated time off exceed four (4) scheduled workdays. The employee will be reimbursed at eight (8) times the employee's straight-time hourly rate for

---

[5] Defendants reserve all objections to the Marlborough Declaration including, without limitation, the statements in Paragraphs 6 and 7 regarding "duration." Among other things, it is unclear how leave length was counted, including whether it is based on the definition from Baker's deposition or his Amended Disclosures. It also does not account for Baker's new differential damages theory, first offered *after* he filed his Motion. It is now too late for Baker to address these issues in Reply. *Atigeo LLC v. Offshore Ltd.*, No. C13-1694JLR, 2014 U.S. Dist. LEXIS 7889, at *23-24 (W.D. Wash. Jan. 22, 2014) ("new issues and evidence may not be raised in reply briefs.") (citing *Bazuaye v. I.N.S.*, 79 F.3d 118, 120 (9th Cir. 1996)).

5 – DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION – No. 2:21-cv-00114-TOR

each day lost from workdays, and ten (10) times the straight-time hourly rate for those employees whose regular scheduled workweek is four (4) days. Part-time employees will receive the same benefits as above, paid at (4) times the employee's hourly rate.

(*Id.*)

*Jury Duty Leave.* Under the CBAs, an employee is excused from work on days he or she is required to appear in court or otherwise comply with jury rules that prevent working. (Ex. F, NMA, Art. 29.) Full-time employees are paid their guarantee;[6] part-time employees are paid four hours' pay at their hourly rate, minus any jury duty fee. *Id.* The CBAs also set forth rules for when part- and full-time employees who work day-shifts and shifts other than day-shifts must report to work in the event of early release from jury service or if the shift (such as a night shift) starts after the day's jury service has ended. *Id.*

*Sick Leave.* Unlike jury duty and bereavement leave, sick leave accrues over time, and the amount of sick leave an employee can accrue is subject to caps. Put another way, paid sick leave is not available just because an employee is ill; rather after employees achieve seniority, they can build up, or bank, hours that can be used for sick leave under the terms set forth in the CBA. Such sick leave accrues at different rates, and is subject to different caps, depending on whether the employee is full time (40 hours of sick leave benefits a year (3-1/3 hours per month), and up to 480 hours in the bank) or part-time (20

---

[6] An employee's guarantee is "the number of hours . . . normally guaranteed to work in a day, not what they typically work in a day." (Ex. E, Ostendorp Dep. 144:22-145:1.) Some full-time employees have eight-hour guarantees while others have nine- or 10-hour guarantees, depending on the CBA. (*Id.* at 145:7-12.) Part-time employees are entitled to a 3.5-hour guarantee. (Ex. H, Sort Addendum, Art. 2, § 1.)

hours of sick leave benefits a year (1.66 hours per month) and up to 420 hours in the bank) (Ex. G, Joint Council 28 Rider, Art. 8, § 1; Ex. H, Sort Addendum, Art. 5, § 1.).

In addition to the CBAs, effective January 1, 2018, UPS employees in Washington are afforded paid sick and safe time ("PSST") pursuant to state law. Wash. Rev. Code § 49.46.210; (Ex. I, UPS Washington PSST Policy.) Employees are eligible to use time accrued pursuant to PSST beginning 90 days after starting their employment. Wash. Rev. Code § 49.46.210(1)(d). Paid time off pursuant to PSST accrues at a rate of one hour for every 40 hours worked, *id.* § 1(a), and "an employer is not required to allow an employee to carry over paid sick leave in excess of forty hours," *id.* § 1(j). The two separate banks of CBA and state law sick time operate concurrently.

### D.    Plaintiff Baker.

Baker offered no declaration or other evidence from himself to support his bid for certification. Facts regarding his employment and ability to serve as class representative were offered through a declaration by one of his attorneys. (ECF 58 at 6, ¶ 12; 15.) Defendants deposed Baker on May 3, 2023, after he filed his Motion.

Baker began working at UPS in 2007. (Ex. A, Baker Dep. 12:1.) Three years later, while still working at UPS, he enlisted in the Army and spent three years away from UPS in active duty service. (*Id.* at 21:18-24:5.) He was honorably discharged in 2013 and returned to his job at UPS. (*Id.* at 23:23-24:5.) In August 2014, again while working at UPS, Baker voluntarily enlisted in the Army Reserves. (*Id.* at 30:17-21.)

Although Baker's pleadings allege only that he worked as a full-time Regular

Package Car Driver ("RPCD"), in fact Baker did not work as an RPCD until January 2016. (*Id.* at 50:15-23.) Prior to that, he worked as a part-time loader and unloader.[7] As an RPCD, Baker works Mondays to Fridays, and he is not required to work on Saturdays and Sundays. (*Id.* at 52:2-4; 52:25-53:1.) As a part-time loader and unloader Baker typically worked Monday through Friday from approximately 9:30 a.m. to 2 p.m., with a 30-minute variance, although he sometimes tried to work additional extra shifts. (*Id.* at 15:7-25.)

Baker is on leave from UPS for medical reasons. (*Id.* at 54:16-18; 125:1-3.) He went on inactive status with the Reserves in 2021 and no longer performs military training. (*Id.* at 30:22-24; 54:22-55:22.) He has no present plans to re-enlist. (*Id.* at 57:16-22.)

Baker does not currently have access to all of his military pay records. (Ex. J, Response to Interrogatory No. 10.) Even though Baker served in the military since 2010, he testified that he first became aware of his claim for short term leave in 2015. (Ex. A, Baker Dep. 123:10-23).

### E. Putative Class Members Hold Different Positions and Work Different Schedules.

During the early part of the putative class period, weekend package pick-ups and deliveries were the exception, and only a limited number of UPS employees worked schedules that involved weekend work. In the years since then, however, weekend package

---

[7] UPS notes this discrepancy so as to correct the record. However, since Baker's own pleadings never mention his part-time loader/unloader role, he has waived any ability to argue the Court should consider this role when analyzing whether he can represent persons other than RPCDs. *Atigeo* 2014 U.S. Dist. LEXIS 7889, at *23-24 (new issues and evidence may not be raised in reply)

pick-ups and deliveries have become more commonplace. The most recent CBA confirms that RPCDs typically work Monday to Friday schedules. (Ex. F, NMA, at Art. 22 § 4(b)(2) ("It is the commitment of the parties that RPCDs work a Monday through Friday schedule.".).) To further this commitment, that CBA also created a new position, Article 22.4 combination drivers to "work a five (5) consecutive day schedule of Tuesday through Saturday or Wednesday through Sunday." (*Id.*, Article 22 § 4(b)(2)(5); *see also* Ex. G, JC 28 Art. 1, §(A).) This matters because the claim includes weekend drills, days when RPCDs like Baker do not typically work at UPS, but when Article 22.4 drivers do. RCPDs with seniority are also entitled to work a schedule that caps workdays at 9.5 hours for three days out of a five-day work week and that limits overtime, all of which matters to calculating differential pay. (Ex. F, NMA, Article 37(c).)

Other positions are scheduled differently. For example, part-time employees are only guaranteed a minimum of 3.5 hours of pay per workday. (Ex. H, Sort Addendum, Art. 2, § 1.) There is no commitment for Monday to Friday work for part-time employees; on the contrary the CBAs expressly anticipate that certain part-time employees will work Sunday to Thursday schedules. (*See id.*, Art. 2, § 1(B).)

## III.    LEGAL STANDARD

Pursuant to Federal Rule 23(a), a party seeking class certification must demonstrate that "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the

representative parties will fairly and adequately protect the interests of the class."

Provided that a proposed class satisfies the above criteria, courts must further determine whether certification is appropriate under Rule 23(b). Where, as here, a party seeks to certify a so-called "damages class" under Rule 23(b)(3), he must demonstrate that (1) "questions of law or fact common to class members predominate over any questions affecting only individual members;" and (2) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." The failure to meet "any one of Rule 23's requirements destroys the alleged class action." *Rutledge v. Elec. Hose & Rubber Co.*, 511 F.2d 668, 673 (9th Cir. 1975).

As the moving party, Baker "must prove the facts necessary to carry the burden of establishing that the prerequisites of Rule 23 are satisfied by a preponderance of the evidence." *Olean Wholesale Grocery Coop., Inc., v. Bumble Bee Foods LLC*, 31 F.4th 651, 665 (9th Cir. 2022) (en banc). The court must then perform a "rigorous analysis" to determine whether each of these prerequisites has been satisfied. *Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 161 (1982). "Frequently that 'rigorous analysis' will entail some overlap with the merits of the plaintiff's underlying claim." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011); *see Ellis v. Costco Wholesale Corp.*, 657 F.3d 970 (9th Cir. 2011).

## IV.    THE PROPOSED CLASS FAILS TO SATISFY RULE 23

### A.    USERRA Requires Evaluating Leaves By Similarly Situated Employees.

USERRA requires a comparison of similarly situated employees. *See* 38 U.S.C. § 4316(b) (employee on military leave entitled to nonseniority benefits provided "to

employees [on leave] having similar seniority, status, and pay"); *see also* 20 C.F.R. § 1002.150(a). As DOL explains, the benefits to which service member employees are entitled "are those that the employer provides to *similarly situated* employees . . . ." 20 C.F.R. § 1002.150(a) (emphasis added). USERRA's implementing regulations identify three non-exclusive factors to consider for the "comparability" analysis, including an employee's ability to choose when to take the leaves, the purpose of the leaves, and the duration of the leaves. *See id.* § 1002.150(b). "[T]he duration of the leave may be the most significant factor to compare." *Id.*

The "rigorous analysis" mandated by *Dukes* requires the Court to delve into these issues. *Dukes*, 564 U.S. at 351. This is because the "class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action." *Id.* (internal quotation marks omitted). UPS thus begins with a description of the required analysis under §§ 4316(b) and 1002.150(b). Doing so reveals the overbroad nature of Baker's proposed class and the unworkability of undertaking the required comparability analysis for its proposed members.

## B.     Baker Cannot Identify Common Questions of Whether Class Members Are Injured and to What Extent.

Baker contends a common question exists as to "[w]hether Defendants provide other paid leave that is comparable to short-term military leave." (ECF 57 at 18.) Baker identifies bereavement, jury duty, and sick leave as allegedly comparable leaves and acknowledges the non-exhaustive factors that determine comparability: duration, purpose, and the ability

to choose when to take the leave, with duration as the "most important." *Id.* at 14. Baker, however, fails to establish these leaves are comparable to military leave of 14 days or less.

### 1.  The Alleged Comparator Leaves Are Not Comparable in Duration.

As discussed above, Baker has offered different definitions of "short term military leave," one focused on the number of workdays missed, and one focused on the length of the military obligation. Under either construct, however, no class should be certified.

Defining "short term military leave" of 14 days or fewer by the number of workdays missed up to 14 days leads to different outcomes for different employees based on their work schedules. An employee who works only Monday through Wednesday could cover a 34-day military obligation with 14 days of leave. By contrast, the longest military obligation that an employee with a Monday through Friday schedule could cover with "short term" leave is 20 days. Even if USERRA recognized a concept of "short-term military leave" (which it does not), it is highly dubious that this is what Congress intended. For class certification purposes, investigation into the length of leave eludes common proof and elevates individual schedules to predominate over any common questions.

On the other hand, if "short-term military leave" of 14 days or fewer is defined by the length of the military obligation, the comparability analysis also fails because determining whether available leaves are comparable in duration depends on an individualized analysis of various factors including: (a) whether the employee is part-time or full-time and which days the employee works (impacting how many, if any, days of leave would fall on workdays); (b) for jury duty leave, the length of the jury or court

obligation and whether an employee worked the day shift or a different shift; (c) for bereavement leave, the employee's relationship to the decedent and whether travel is required (both of which determine the length of the bereavement leave available, which is never more than 4 days); and (d) for sick leave, the number of sick days accrued and available (under the CBA and, for part of the class period, Washington law).

The answer to what is meant by "short term military leave of 14 days or fewer" complicates the question whether some or all of each class member's experiences are included within Baker's definition. If Baker himself cannot decide what he means by "short-term military leave," how can he assert that such leave is comparable to any other leave, let alone answer that question based on common proof?

### 2. Variations in the Allegedly Comparable Leaves Defeat Commonality and Predominance.

Baker attempts to paint a picture of the alleged comparator leaves being one size fits all, but that is not the case. For example, as explained above, bereavement leave is a maximum of four days, but the duration of any given bereavement leave varies depending on the relationship to the deceased relative, whether the employee travels to the funeral and whether the employee is full- or part-time. The amount of pay for bereavement leave also varies depending on whether an employee is full- or part-time.

Sick leave is even more complicated. As discussed above, unlike jury duty and bereavement leaves, sick leave accumulates in banks which, at any given time, contain varying amounts of hours depending on the type of employee (full- or part-time) and how

many hours the employee has accrued but not used within the applicable caps. As a result, few employees are similarly situated for purposes of comparing sick leave. For example, an employee who has accrued a relatively small amount of sick leave—say five days—and takes a 14-day leave for illness will not be paid for the entire leave. Thus, while the comparison between sick leave and military leave up to 14 days might be apt for an employee who has accrued the maximum amount, for other employees, it compares unpaid apples to paid oranges. These differences require an individualized analysis of whether a given class member had at least 14 days of sick leave at all times during the class period. This inquiry, along with the other individualized questions discussed *infra* create the need for mini-trials that is fatal to class certification. *Johnson v. R&L Carriers Shared Servs., Ltd. Liab. Co.*, No. 2:22-cv-01619-MCS-JPR, 2023 U.S. Dist. LEXIS 81990, at *15 (C.D. Cal. Apr. 10, 2023) (where "individualized inquiries" abound, "adjudication of each putative class member's claim would reduce the trial on the merits to a series of individualized mini-trials" (quoting *Bund v. Safeguard Props., LLC*, No. C15-1773 MJP, 2016 U.S. Dist. LEXIS 198793, at *10 (W.D. Wash. Mar. 2, 2016))).

Like Baker, the plaintiff in *Clarkson v. Alaska Airlines, Inc.* tried to sidestep policy differences, arguing the defendants uniformly failed to provide paid military leave while paying comparable forms of short-term leave. *Clarkson,* 2020 U.S. Dist. LEXIS 138838, at *15. This Court implicitly rejected this overgeneralization—recognizing that "this inquiry will require comparing military leave to other forms of short-term leave available to all other employees, and as Defendants note, this inquiry will vary by employee group

and by employer." *Id.* at *15.

So too here. Each paid leave that Baker asserts is comparable has stark differences depending on whether the employee is full- or part-time, the employee's relationship to the decedent, and how many hours of sick leave an employee has accrued and used.

Pay for the alleged comparator leaves also varies depending on whether the employee is full-time or part-time, which is especially important in light of Baker's new differential pay theory. Some full-time employees—and potentially all part-time employees who necessarily earn less money by virtue of working fewer hours—may earn more in the military, and, if so, have no claim and are not class members. *See Bowerman v. Field Asset Servs.*, 60 F.4th 459 (9th Cir. 2023) (reversing certification order because questions of liability were highly individualized).[8] Put another way, for all class members—but especially for part-time employees who, by Baker's own estimate, make up the majority of the putative class—determining the fact of injury (and thus the determination of liability) is an individualized inquiry that precludes certification. Because of these variances, Baker's proposed class, if certified, would sweep entirely too broadly.

### 3. Different Scheduling Flexibility and Ability to Avoid Conflicting Leaves Defeat Commonality and Predominance.

The proposed class includes employees in different positions and who work different schedules. In addition to the differences between full- and part-time employees discussed

---

[8] These issues also raise issues as to standing. *See TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2208 (2021) ("Every class member must have Article III standing in order to recover individual damages.").

above, RPCD positions differ meaningfully from other full- and part-time positions in ways that affect the comparability factors under § 1002.150(b). As such, the only analysis relevant to Baker's claim is be comparing military leave as taken by RPCDs to the alleged comparable forms of leave as taken by RPCDs. And that analysis will not bear on any other workgroup's claims.

Take, for instance, other full-time UPS Article 22.4 combination drivers. Based on a commitment between the Teamsters and UPS to "protect existing RPCDs from being scheduled or forced to perform weekend delivery work," the 22.4 combination drivers, cover weekends by "work[ing] five (5) consecutive days, Tuesday through Saturday or Wednesday through Sunday." (Ex. F, NMA, Art. 1, § 1.)

These scheduling variations defeat commonality and predominance. As Baker agrees, weekend drills constitute a significant part of the leave for individuals who need to take military leave. (ECF 57 at 7 (describing Baker's military obligation as including weekend drills)); Ex. J, Baker's Response to Defs.' First Set of Interrogatories at 13 (same). Because RPCDs typically work Monday to Friday, they need not use leave for 2-day weekend drills; 22.4 combination drivers, by contrast, would need to take leave. Baker conspicuously avoids any discussion about scheduling and its implications for the Rule 23 analysis.

**C.     Baker Fails to Satisfy Adequacy and Typicality as to All Non-RPCDs.**

Baker is an inadequate and atypical representative as to part-time employees and full-time employees who are not RPCDs. The typicality requirement ensures "the named

plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Falcon*, 457 U.S. at 158 n.13. The typicality investigation focuses on "whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Sandoval v. Cty. of Sonoma*, 912 F.3d 509, 518 (9th Cir. 2018); *see Amchem Prods. v. Windsor*, 521 U.S. 591, 626 n.20 (1997) (internal quotation marks omitted) (adequacy "tends to merge with the commonality and typicality criteria").

In *Clarkson*, this Court explained that the analysis "comparing military leave to other forms of short-term leave" will "vary by employee group . . . ." *Clarkson,* 2020 U.S. Dist. LEXIS 138838, at *15. According to Baker, part-time employees form the majority (289 of 440 or about 66%) of the putative class. (ECF 64 at 4, n2.) Baker makes no attempt to explain how he is a typical or adequate representative for part-time employees. He therefore fails to carry his burden.

### D.    Baker Has Not Established Either the Predominance or Superiority Prong of Rule 23(b).

### 1.  UPS' Laches Defense Demands Individualized Inquiries.

The doctrine of laches bars a plaintiff from sleeping on his or her rights, running up damages, and prejudicing a defendant as evidence ages. Baker bears the burden on certification, *Dukes*, 564 U.S. at 350, and Baker has not shown that defenses "can be defeated 'with class-wide proof.'" *Selby v. LVNV Funding, LLC*, No. 13-cv-01383-

1  BAS(BLM), 2016 U.S. Dist. LEXIS 83940, at *11 (S.D. Cal. June 22, 2016) (quoting

2  *Kristensen v. Credit Payment Servs.*, 12 F. Supp. 3d 1292, 1307 (D. Nev. 2014)).

3       In contrast to a statute of limitations, laches is not limited to the passage of time but

4  rather is "a question of the inequity of permitting the claim to be enforced . . . ." *Holmberg*

5  *v. Armbrecht*, 327 U.S. 392, 396 (1946) (quoting *Galliher v. Cadwell*, 145 U.S. 368, 373

6  (1892)). To demonstrate laches, a defendant must prove "unreasonable delay by the

7  plaintiff and prejudice to itself." *Couveau v. Am. Airlines, Inc.*, 218 F.3d 1078, 1083 (9th

8  Cir. 2000) (citation omitted).

9       Courts recognize two types of prejudice caused by laches: evidentiary and economic.

10  *Danjaq LLC v. Sony Corp.*, 263 F.3d 942 (9th Cir. 2001). "Evidentiary prejudice includes

11  such things as lost, stale, or degraded evidence, or witnesses whose memories have faded

12  or who have died." *Id.* at 955. Expectation-based prejudice may be shown where the

13  defendant "took actions or suffered consequences that it would not have, had the plaintiff

14  brought suit promptly." *Id.* "[Laches] is applied on a sliding scale: the longer the delay, the

15  less the prejudice that must be shown." *Maher v. City of Chicago*, 406 F. Supp. 2d 1006,

16  1031 (N.D. Ill. 2006), *aff'd*, 547 F.3d 817 (7th Cir. 2008).

17       It is well settled that laches is an affirmative defense to USERRA claims. *Mahone*

18  *v. Amazon.Com, Inc.*, No. C22-594 MJP, 2023 U.S. Dist. LEXIS 61824, at *11 (W.D.

19  Wash. Apr. 7, 2023) ("[C]ourts have applied laches to USERRA claims."); *Clarkson v.*

20  *Alaska Airlines Inc.*, No. 2:19-CV-0005-TOR, 2020 U.S. Dist. LEXIS 184477, at *10-11

21  (E.D. Wash. Oct. 5, 2020). Courts have held that lengthy delays between discovering a

right and filing suit under USERRA are unreasonable. *Maher*, 547 F.3d at 822-23 (11-year delay under USERRA predecessor was unreasonable); *Gruca v. U.S. Steel Corp.* 495 F. 2d 1252, 1259-60 (1974) (9-year delay unreasonable); *Mahone,* 2023 U.S. Dist. LEXIS 61824, at *14 (6-year delay is unreasonable and unjustified).

A notice-based defense like laches creates individualized inquiries by its very nature. *Valenzuela v. Union Pac. R.R. Co.*, No. CV-15-01092-PHX-DGC, 2017 U.S. Dist. LEXIS 23838, at *49-50 (D. Ariz. Feb. 21, 2017). In the class action context, the individualized examinations needed to determine when a plaintiff or putative class member had notice that his or her rights were purportedly violated defeats class certification. *Id.* at *49-51; *In re SFPP Right-Of-Way Claims*, No. SACV 15-00718 JVS (DFMx), 2017 U.S. Dist. LEXIS 85973, at *49-50 (C.D. Cal. May 23, 2017); *cf. Save the Peaks Coal. v. United States Forest Serv.*, 669 F.3d 1025, 1031 (9th Cir. 2012) ("Whether laches applies depends on the particular facts and circumstances of each case."); *Couveau*, 218 F.3d at 1083 (noting "the application of laches depends on a close evaluation of all the particular facts in a case").

That conclusion applies here as well. Each putative class member became aware of his or her claim at different times. Baker, for example, testified he was aware of the claim as early as 2015 when he took a "short term" military leave while working at UPS, yet he waited until 2021 to file suit—a six-year delay. (Ex. A, Baker Dep. 123:10-23). We do not know when other putative class members knew about their claims, but since the proposed class period began in 2004, some class members could have been aware of the claim as long as nineteen years ago. This determination is not subject to common proof because the

question of what someone knew and when is inherently individualized. These idiosyncratic defenses mean that common issues do not predominate. *See, e.g.*, *Brown v. Google, LLC*, No. 20-cv-3664-YGR, 2022 U.S. Dist. LEXIS 233893, at *52 (N.D. Cal. Dec. 12, 2022) ("Defenses that must be litigated on an individual basis can defeat class certification.").

### 2. Baker Cannot Show That Injury Is Capable of Proof or Measurement on a Classwide Basis.

As noted above, Baker's new differential damages theory raises thorny questions of whether and to what extent particular class members were injured: How do UPS and this Court ascertain what an employee earned from the military on days when the employee took leave? If that amount was greater than UPS would have paid, there is no injury.

Even if a class could be certified where the threshold fact of whether someone was injured required individualized determinations (a point that UPS does not concede), Baker's new damages theory presents additional problems with respect to measuring damages. Contrary to Baker's contentions,[9] UPS does not possess military compensation records. And despite being the named plaintiff in a putative class action, Baker admits that he does not have details of even his own military pay, and he is not sure how to obtain them. (Ex. J, Baker's Response to Defs.' First Set of Interrogatories at 13-14 (responding to Interrogatory concerning compensation from military by stating "Plaintiff currently does not have access to all of his military pay records."); Ex. A, Baker Dep. 89:13-15 (Baker testifying he attempted to get "any records, financial or otherwise from the military" but

---

[9] Ex. B, Amended Disclosures at 7:1-2; Ex. C, Second Amended Disclosures at 7:1-2.

has not been able to do so).) If Baker cannot obtain his own pay records, how can he expect to determine potential entitlement to differential pay on a class-wide basis?

To satisfy the predominance requirement, plaintiff must show that "damages are capable of measurement on a classwide basis." *Comcast Corp. v. Behrend*, 569 U.S. 27, 34 (2013). While damage calculations alone cannot defeat certification, the Court must find that "calculation of damages will be sufficiently mechanical that whatever individualized inquiries need occur do not defeat class certification." *Jordan v. Paul Fin., LLC*, 285 F.R.D. 435, 466 (N.D. Cal. 2012); *see Loaiza v. Kinkisharyo Int'l, L.L.C.*, No. LA CV19-07662 JAK (KSx), 2022 U.S. Dist. LEXIS 198116, at *67-68 (C.D. Cal. Oct. 27, 2022) (citing cases for the proposition that class certification was inappropriate "given certain individualized questions of . . . damages"); *see also Bowerman*, 60 F.4th at 470 (class certification improper because "[l]acking any sort of representative evidence, the class members were left relying on individual testimony to establish the existence of an injury and the amount of damages.").

Calculating damages consistent with Baker's new theory presents complex and individualized questions that preclude class certification. And having raised the differential pay theory after filing his Motion, it is too late for Baker to explain in his reply how damages can be calculated consistently with Rule 23. *Atigeo*, 2014 U.S. Dist. LEXIS 7889, at *23-24 (new issues and evidence may not be raised in reply brief); *Cmty. Ass'n for Restoration of the Env't v. Wash. Dairy Holdings Ltd. Liab. Co.*, No. 1:19-CV-3110-TOR, 2019 U.S. Dist. LEXIS 241281, at *24 (E.D. Wash. Oct. 24, 2019) ("It is improper for a

moving party to introduce . . . different legal arguments in the reply brief than those presented in the moving papers." (quoting *United States ex rel. Giles v. Sardie*, 191 F. Supp. 2d 1117, 1127 (C.D. Cal. 2000))). But, even if Baker could belatedly make his argument, differential pay simply cannot be determined without individualized inquiry into how much each class member would have been paid by the military for each day of leave, and whether that amount was more or less than the amount that class member would have been paid for that day of work at UPS (if scheduled to work).

Baker fails to satisfy the predominance requirement for this reason. *See Garcia v. Stemilt AG Servs. LLC*, No. 2:20-cv-00254-SMJ, 2021 U.S. Dist. LEXIS 158060, at *34 (E.D. Wash. Aug. 20, 2021) (predominance requirement not met where plaintiffs did not identify "a sufficient 'basis for a reasonable inference as to the extent of damages.'" (quoting *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 688 (1946))).

### 3. The Proposed Class Is Not a Superior Method to Adjudicate the Controversy Because Resolving the Individualized Issues Would Be Unmanageable.

Rule 23(b)(3) also requires Baker to show that a class action is "superior to other available methods for fairly and efficiently adjudicating the controversy." Four factors determine whether a class action is the superior method to resolve the claims: (1) the class members' interests in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already begun by or against class members; (3) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (4) the likely difficulties in

managing a class action. FED. R. CIV. P. 23(b)(3). Consideration of these factors requires the court to "focus on the efficiency and economy elements." *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1190 (9th Cir. 2001) (internal citation omitted).

The "manageability" requirement of Rule 23(b)(3) "includes consideration of . . . calculation of individual damages, and distribution of damages." *Six Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1304 (9th Cir. 1990). For example, in *Harris v. Vector Mktg. Corp.*, a wage and hour case, the court faulted plaintiff for failing to show the calculation of damages "could be done on a relatively uniform basis." 753 F. Supp. 2d 996, 1022 (N.D. Cal. 2010). Despite the existence of "a uniform policy or practice," the district court acknowledged "a relevant factor in the predominance analysis is whether damages calculations would be straightforward." *Id.* It therefore declined to certify a class on one claim. *Id.* at 1023.

As explained above, Baker cannot show how the class members could even make the necessary calculations. UPS does not routinely collect and or have records of its reservists' military pay. Nor does Baker, apparently. The Court should consider the difficulty of calculating individual damages in evaluating manageability and find that Baker has failed to meet the superiority requirement in Rule 23(b)(3).

The case is also unmanageable because any definition Baker could offer regarding his new differential damages theory is necessarily "fail safe." "A fail-safe class is one with a definition that aligns with the elements of the class's claim such that finding no liability for the defendants would necessarily exclude all members from the class." *Nw. Immigrant*

*Rights Project v. United States Citizenship & Immigration Servs.*, 325 F.R.D. 671, 694 n.21 (W.D. Wash. 2016). Fail safe classes "include individuals who win, or by virtue of losing . . . are not in the class and, therefore, are not bound by the judgment." *Lith v. Iheartmedia + Ent., Inc.*, No. 1:16-cv-066-LJO-SKO, 2016 U.S. Dist. LEXIS 96853, at *1 (E.D. Cal. July 25, 2016) (internal quotation and citations omitted).

Under the differential pay theory, class membership depends on a determination of whether differential pay is owed; if not, that person drops out of the class. This is improper because class membership "is dependent on whether [the putative class member] prevails on the merits . . . ." *Pipka v. Kohl's Dept. Stores, Inc.*, No. CV-16-4293-MWF (FFMx), 2016 U.S. Dist. LEXIS 186402, at *7 (C.D. Cal. Dec. 21, 2016) (quoting *Dixon v. Monterey Fin. Servs.*, No. 15-cv-03298-MMC, 2016 U.S. Dist. LEXIS 111687, at *4 (N.D. Cal. Aug. 22, 2016)); *see Boucher v. First Am. Title Ins. Co.*, No. C10-199RAJ, 2011 U.S. Dist. LEXIS 49162, at *16 (W.D. Wash. May 2, 2011) (fail safe class problem existed because if court found on summary judgment that defendant "correctly discounted all class members' premiums, then the class would have no members"). Gaming the class mechanism in this way is "palpably unfair to the defendant." *Kamar v. Radio Shack Corp.*, 375 F. App'x 734, 736 (9th Cir. 2010). It also makes the case unmanageable because there is no way to know who should get class notice under Rule 23 until after trial on the merits.

*        *        *

Baker correctly observes that every court to consider class certification in cases raising similar USERRA claims has certified a class. (ECF 57 at 7.) But those classes are

24 – DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION – No. 2:21-cv-00114-TOR

narrower than what Baker now proposes. For instance, in *Scanlan v. Am. Airlines Grp., Inc.*, 567 F. Supp. 3d 521, 531 (E.D. Pa. 2021), the court analyzed the various workgroups and different CBAs and found "material variations for paid leave for jury duty and bereavement." *Id.* at 530. The *Scanlan* court also recognized the "different factual circumstances within each CBA regarding the compensation structure" for the various workgroups. *Id.* As a result, the court held "[i]t would not be fair or reasonably economical for plaintiff to represent those who are not American pilots," and limited the class to pilots. *Id.* at 531. Baker also does not meaningfully address this Court's narrowing of the class in *Clarkson*. There, the Court explained that the type of claim Baker asserts "is only typical of his own employment group . . . and the collective bargaining agreements by which Plaintiff's employment and benefits are governed." *Clarkson, 2*020 U.S. Dist. LEXIS 138838, at *15.

The logic of *Clarkson* and *Scanlan* apply with equal force here: while UPS submits no class should be certified, if the Court is inclined to certify a class, it should be limited to full-time RPCDs like Baker who work in the State of Washington and are subject to Joint Council 28.

## V.   CONCLUSION

For the foregoing reasons, Plaintiff's Motion should be denied.

1    Dated:  May 26, 2023.                    **GREENBERG TRAURIG, LLP**

2
                                             */s/ Naomi Beer*
3                                             Naomi Beer

4                                            Attorney for Defendants
                                             UNITED PARCEL SERVICE, INC., a Delaware
                                             Corporation, and UNITED PARCEL SERVICE,
5                                            INC., an Ohio Corporation

6    SALLY W. HAMELING                        DOMINIC E. DRAYE (AZ Bar No.
       (WSBA No. 49457)                      033012)
7    JACOB M. KNUTSON                         *Admitted Pro Hac Vice*
       (WSBA No. 54616)                      **GREENBERG TRAURIG, LLP**
8    **JEFFERS, DANIELSON,**                  2375 East Camelback Road, Suite 700
     **SONN & AYLWARD, P.S.**                 Phoenix, Arizona  85016
9    2600 Chester Kimm Road                   Telephone:  (602) 445-8000
     P.O. Box 1688                            Facsimile:  (602) 445-8100
10   Wenatchee, WA  98807-1688                E-mail: drayed@gtlaw.com
     Telephone:  (509) 662-5685
11   Facsimile:  (509) 662-2452               NAOMI G. BEER (CO Bar No. 29144)
     E-mail:  sallyh@jdsalaw.com              *Admitted Pro Hac Vice*
12   E-mail:  jacobk@jdsalaw.com              **GREENBERG TRAURIG, LLP**
                                             1144 15ᵗʰ Street, Suite 3300
13                                           Denver, Colorado  80202
                                             Telephone:  (303) 572-6500
14                                           Facsimile:  (303) 572-6540
                                             E-mail: beern@gtlaw.com
15

16

17

18

19

20

21

1

## **CERTIFICATE OF SERVICE**

2
3
4

The undersigned certifies that, on May 26, 2023, a true and correct copy of Defendants' Response in Opposition to Plaintiff's Motion for Class Certification, was served on all counsel of record by the Court's electronic filing system (CM/ECF).

5

6
7

By:    */s/ Naomi Beer*
Naomi Beer

8

9

10

11

12

13

14

15

16

17

18

19

20

21