Michael J. Scimone*
OUTTEN & GOLDEN LLP
685 Third Avenue, 25th Floor
New York, NY 10017
Telephone: (212) 245-1000
Fax: (646) 509-2060
mscimone@outtengolden.com

Ryan Cowdin*
1225 New York Ave NW, Suite 1200B
Washington, DC 20005
Telephone: (202) 847-4400
Fax: (202) 847-4410
rcowdin@outtengolden.com

[Additional attorneys listed on following page]
*Attorneys for Plaintiff and the Putative Class*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF WASHINGTON**

| | |
|---|---|
| JUSTIN BAKER, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>UNITED PARCEL SERVICE, INC., a Delaware Corporation, and UNITED PARCEL SERVICE, INC., an Ohio corporation,<br><br>Defendants. | **Case No. 21-cv-00114-TOR**<br><br>**REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**<br><br>**Without Oral Argument**<br>**Return Date: July 3, 2023** |

Thomas G. Jarrard (WSBA #39774)
LAW OFFICE OF THOMAS G. JARRARD, PLLC
1020 N. Washington St.
Spokane, WA 99201
Telephone: (425) 239-7290
tjarrard@att.net

Matthew Z. Crotty (WSBA #39284)
RIVERSIDE LAW GROUP PLLC
905 W. Riverside Ave., Suite 404
Spokane, WA 99201
Telephone: (509) 850-7011
mzc@riverside-law.com

R. Joseph Barton*
BARTON & DOWNES LLP
1633 Connecticut Ave. NW, Suite 200
Washington D.C. 20009
Telephone: (202) 734-7046
jbarton@bartondownes.com

Peter Romer-Friedman*
PETER ROMER-FRIEDMAN LAW PLLC
1629 K Street, NW, Suite 300
Washington, DC 20006
Telephone: (718) 938-6132
peter@prf-law.com

Robert D Friedman*
GUPTA WESSLER PLLC
2001 K Street NW, Suite 850
Washington, DC 20006
Telephone: (914) 588-4713
robert@guptawessler.com

* admitted *pro hac vice*

*Attorneys for Plaintiff and the Putative Class*

# TABLE OF CONTENTS

I. UPS Admits Class Treatment is Appropriate for RPCDs. ........................................ 1

II. UPS Does Not Address Similar Cases Certifying Paid-Leave Classes .................... 1

III. Common Questions Will Drive the Resolution of this Case. .................................. 3

A. Comparing Leave Policies Does Not Require Individual Inquiries ................ 3

B. Scheduling Differences Do Not Defeat Commonality or Predominance ....... 6

IV. Plaintiff is Adequate and His Claims are Typical of the Class ................................ 6

V. Plaintiff Has Established Both Predominance and Superiority ................................ 7

A. UPS's Laches Defense Does Not Defeat Predominance ............................... 7

B. Plaintiff's Damages Theory Satisfies Predominance ..................................... 9

C. The Proposed Class is Not "Fail-Safe." ....................................................... 10

Conclusion ...................................................................................................... 10

# TABLE OF AUTHORITIES

**CASES** **PAGE(S)**


*Berger v. Compaq Computer Corp.*, 257 F.3d 475 (W.D. Tex. 2005) .................... 4

*Bowerman v. Field Asset Servs.*, 60 F.4th 459 (9th Cir. 2023) .................... 5, 6

*Brown v. Consumer Law Assocs., LLC,* 283 F.R.D. 602 (E.D. Wash. 2012) .................... 4

*Clarkson v. Alaska Airlines Inc.*, No. 19 Civ. 5, 2020 U.S. Dist. LEXIS 138838 (E.D. Wash. Aug. 4, 2020).......1, 2, 5, 8

*Clarkson v. Alaska Airlines, Inc.*, 59 F.4th 424 (9th Cir. 2023) .................... 4

*Clarkson v. Alaska Airlines, Inc.*, No. 19 Civ. 005, 2020 U.S. Dist. LEXIS 184477 (E.D. Wash. Oct. 5, 2020) .............. 8

*Cmty. Ass'n for Restoration v. Wash. Dairy Holdings Ltd. Liab. Co.*, No. 19 Civ. 3110, 2019 U.S. Dist. LEXIS 241281 (E.D. Wash. Oct. 24, 2019) .......... 9

*Comcast Corp. v. Behrend*, 569 U.S. 27 (2013) .................... 9

*Couveau v. Am. Airlines, Inc.*, 218 F.3d 1078 (9th Cir. 2000) .................... 7

*Huntsman v. Sw. Airlines Co.*, No. 19 Civ. 83, 2021 U.S. Dist. LEXIS 20856 (N.D. Cal. Feb. 3, 2021) ............ *passim*

*Huntsman v. Sw. Airlines Co.*, No. 21 Civ. 80010, 2021 U.S. App. LEXIS 7057 (9th Cir. Mar. 10, 2021).................. 4

*In re SFPP Right-of-Way Claims*, No. 15 Civ. 718 *et al.*, 2017 U.S. Dist. LEXIS 85973 (C.D. Cal. May 23, 2017)......... 8

*In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124 (2d Cir. 2001) .................... 10

*Johnson v. R&L Carriers Shared Servs.,* No. 22 Civ. 1619, 2023 U.S. Dist. LEXIS 81990 (C.D. Cal. Apr. 10, 2023)................ 5

*Kamar v. Radio Shack Corp.*,
375 F. App'x 734 (9th Cir. 2010) .......... 10

*Kelly v. City & Cnty. of San Francisco*,
No. 05 Civ. 1287, 2005 U.S. Dist. LEXIS 31113 (N.D. Cal. Nov. 21, 2005) .......... 7, 8

*Leyva v. Medline Indus.*,
716 F.3d 510 (9th Cir. 2013) .......... 9, 10

*Maher v. City of Chi.*,
406 F. Supp. 2d 1006 (N.D. Ill. 2006) .......... 8

*Melgar v. CSK Auto, Inc.*,
681 F. App'x 605 (9th Cir. 2017) .......... 10

*Myrick v. City of Hoover*,
No. 22 Civ. 11621, 2023 U.S. App. LEXIS 14323 (11th Cir. June 8, 2023) .......... 3

*Sali v. Corona Reg'l Med. Ctr.*,
909 F.3d 996 (9th Cir. 2018) .......... 5

*Scanlan v. Am. Airlines Grp., Inc.*,
567 F. Supp. 3d 521 (E.D. Pa. 2021) .......... 1, 5

*Senne v. Kansas City Royals Baseball Corp.*,
934 F.3d 918 (9th Cir. 2019) .......... 2, 3

*Valenzuela v. Union Pac. R.R. Co.*,
No. 15 Civ. 1092, 2017 U.S. Dist. LEXIS 23838 (D. Ariz. Feb. 21, 2017) .......... 8

**Other**

20 C.F.R. § 1002.150 .......... 3

Fed. R. Civ. P. 23(c)(1)(C) .......... 5

Int'l Brotherhood of Teamsters, https://teamster.org/2018/06/new-ups-combination-driver-jobs-protect-weekends-package-car-drivers-address-issue/ (June 30, 2018) .......... 5

UPS's opposition shows that, at minimum, a subset of Plaintiff's proposed class should be certified. UPS's arguments for limiting the proposed class are unpersuasive.

## I. UPS Admits Class Treatment is Appropriate for RPCDs.

UPS all but concedes that the Court may certify a class of full-time Regular Package Car Drivers ("RPCDs") working in the State of Washington and subject to the Joint Council 28 Rider. ECF No. 68 at 32. The majority of its brief focuses on differences in job title and work schedule at the margins. As discussed below, however, all members of the proposed class work in a single state and are subject to substantially similar comparator leave policies. Further narrowing is therefore unnecessary.

## II. UPS Does Not Address Similar Cases Certifying Paid-Leave Classes.

UPS fails to meaningfully address the fact that, in every other USERRA paid-leave case on record, courts have certified classes. *See, e.g.*, *Clarkson v. Alaska Airlines Inc.*, No. 19 Civ. 5, 2020 U.S. Dist. LEXIS 138838, at *19-21 (E.D. Wash. Aug. 4, 2020) (Rice, J.). These cases show that Plaintiff's class is not "overbroad" in terms of "workgroups" or "schedules." ECF No. 68 at 9. For example, although the court in *Scanlan v. Am. Airlines Grp., Inc.*, 567 F. Supp. 3d 521 (E.D. Pa. 2021) limited the class to pilots due to "material variations" in other workgroups, UPS fails to acknowledge that the proposed classes spanned thirty-three groups subject to CBAs with different compensation structures and "material variations for paid leave for jury duty and bereavement." *Id.* at 530. The key fact was not that pilots had a distinct job title or workgroup; rather, pilots were subject to different employment *policies*.

The same reasoning is evident in *Clarkson*. There, this Court limited a paid-leave class to pilots because the "comparative forms of leave varied by non-pilot employee groups and by employer." *Clarkson*, 2020 U.S. Dist. LEXIS 138838, at *15 (plaintiff's claims only typical of the "[CBAs] by which [his] employment and benefits are governed"). Again, material differences in policies precluded a more expansive class.

No case has treated the presence of different workgroups or schedules as a *per se* impediment to certifying a USERRA paid-leave class. *Huntsman v. Sw. Airlines Co.*, for example, certified a class comprising six workgroups with varying schedules. No. 19 Civ. 83, 2021 U.S. Dist. LEXIS 20856, at *3, *40-41 (N.D. Cal. Feb. 3, 2021). These workgroups and schedules did not defeat commonality because the leave policies were substantially similar, and "the duration of short-term military leave compared to other forms of paid leave [was] susceptible to common proof." *Id.* at *18, *19 (sick leave policies common to all employees within workgroups). Although subgroups with different schedules might take different amounts of leave, *Huntsman* held that this did not change the fact that duration was still subject to common proof using leave data, which at most "may later dictate the need for sub-classes." *Id.* at *18-19.

Plaintiff's proposed class aligns with these cases. All members are subject to CBAs with substantially similar policies. ECF No. 68 at 11 ("These agreements are read together[.]"). The Court should certify Plaintiff's narrowly tailored class as every other court in a similar USERRA paid-leave case has done. *See also Senne v. Kansas City Royals Baseball Corp.*, 934 F.3d 918, 938 (9th Cir. 2019) (predominance rarely defeated

where "liability arises from a common practice or policy of an employer") (quoting 7 Newberg on Class Actions § 23:33 (5th ed. 2012)).

**III. Common Questions Will Drive the Resolution of this Case.**

Two common questions of law and fact will drive the resolution of this case: (1) whether paid leave is among the "rights and benefits" that must be provided equally to employees on military leave under USERRA § 4316(b) when provided for other comparable forms of leave, and (2) whether UPS provides other paid leave that is comparable to short-term military leave. ECF No. 57 at 18. UPS concedes by omission that the first question is a common one. On the second question, UPS focuses mainly on duration,[1] arguing that variations in leave type and employee schedules undermine commonality and predominance. They do not.

**A. Comparing Leave Policies Does Not Require Individual Inquiries.**

Plaintiff's definition of "short term military leave" (military leaves of 14 days or less) does not, as UPS claims, require an "individualized analysis" of the employee's schedule, the length of the comparator obligation, the "availability" of the leave (such as amount of sick leave accrued), or the employee's relationship with a deceased relative.

---

[1] UPS appears to concede that the other two comparability factors – purpose and voluntariness – are suitable for class treatment. *See* 20 C.F.R. § 1002.150(b). To the extent UPS's Section IV.B.3 is an implied voluntariness argument about scheduling "flexibility," ECF No. 68 at 22, that argument has been rejected. *See Huntsman*, 2021 U.S. Dist. LEXIS 20856 at *17 ("[T]he appropriate measure of voluntariness is whether the employee has control over the absence."); *see also Myrick v. City of Hoover*, No. 22 Civ. 11621, 2023 U.S. App. LEXIS 14323, at *18 (11th Cir. June 8, 2023) ("Military employees do not control when they will be summoned for active-duty service.").

ECF No. 68 at 19-20.[2] UPS cites no specific case law for these arguments, and most of these factors have no obvious impact on the duration analysis. UPS also does not explain why duration cannot be evaluated with existing data, as Plaintiff argues. UPS does not dispute that it has data showing the duration of each comparator leave category.

UPS ignores cases that have consistently rejected the same arguments. In *Huntsman*, for instance, the defendant argued that different sick-leave accrual rates in different CBAs defeated commonality. *See* 2021 U.S. Dist. LEXIS 20856, at *19. The court disagreed, explaining that "sick leave policies are common to all employees within each work group, which would permit comparison across similarly situated employees," *id.*, and that the employer "ha[d] already recorded the instances of sick leave, which can be averaged and then compared to military leave." *Id.* at *20. Both facts are true here.[3]

---

[2] UPS's argument that "short-term" military leave "does not exist," ECF No. 68 at 10, is foreclosed by the Ninth Circuit's recent decision in *Clarkson v. Alaska Airlines, Inc.*, 59 F.4th 424, 4324-33 (9th Cir. 2023). UPS quibbles with Plaintiff's clarifications of the definition of "short term military leave," ECF No. 68-3 at 5, but fails to explain how they alter the class certification analysis. The timing of these amended responses is a result of UPS's gamesmanship. Despite having months to take discovery, UPS deposed Plaintiff *after* he filed his motion for class certification so it could quiz Plaintiff – a nonlawyer – on how USERRA applied to various hypothetical fact patterns. Scimone Decl. ¶ 4. But class representatives "need not be legal scholars and are entitled to rely on counsel." *Berger v. Compaq Computer Corp.*, 257 F.3d 475, 483 (W.D. Tex. 2005) (citation omitted); *see also Brown v. Consumer Law Assocs., LLC* 283 F.R.D. 602, 613 (E.D. Wash. 2012) (Rice, J.) (class representative adequate despite mistakes in deposition). Had UPS used an appropriate discovery device, such as a contention interrogatory, Plaintiff's counsel could have responded in due course without the need to later clarify his theory of the case through discovery responses and disclosures.

[3] Southwest Airlines petitioned the Ninth Circuit for interlocutory review of this class certification decision under Rule 23(f), but the Circuit denied the petition. *See Huntsman v. Sw. Airlines Co.*, No. 21 Civ. 80010, 2021 U.S. App. LEXIS 7057 (9th Cir. Mar. 10, 2021).

Defendant also invokes *Clarkson*, arguing that Plaintiff is trying to "sidestep policy differences" between comparator leaves. ECF No. 68 at 21 (citing *Clarkson*, 2020 U.S. Dist. LEXIS 138838, at *15). But there are no "policy differences" here. The distinctions drawn in *Clarkson* were between "the collective bargaining agreements by which Plaintiff's employment and benefits are governed" and other leave policies for different employee groups. 2020 U.S. Dist. LEXIS 138838, at *15. Here, there is a single set of CBAs with identical leave policies for Plaintiff and the proposed class.

The only difference in leave benefits *within* the proposed class is for part-time employees, but they receive proportional benefits (roughly half of the leave allowed full-time employees). ECF No. 57 at 12-13. For class certification purposes, this is a distinction without a difference. *See, e.g.,* Scanlan, 567 F. Supp. 3d at 529-30 ("The fact that different work groups may be compensated for jury duty and bereavement differently than other work groups is not relevant . . . ."). Even if such differences do ultimately impact average leave duration in a merits analysis, that does not preclude a "preliminary" class certification decision. *Sali v. Corona Reg'l Med. Ctr.*, 909 F.3d 996, 1004 (9th Cir. 2018); Fed. R. Civ. P. 23(c)(1)(C) (class certification "may be altered or amended before final judgment"). It simply means the Court may later subclass part-time employees if warranted. *See Huntsman*, 2021 U.S. Dist. LEXIS 20856, at *18-19.[4]

---

[4] UPS's cases discussing "mini-trials" are distinguishable. ECF No. 68 at 21. *Johnson v. R&L Carriers Shared Servs.*, involved overtime claims where the court had to look at individualized evidence to determine "whether each driver actually worked off the clock." No. 22 Civ. 1619, 2023 U.S. Dist. LEXIS 81990, at *9-10, 15 (C.D. Cal. Apr. 10, 2023). *Bowerman v. Field Asset Servs.*, involved a class that lacked "any sort of

**B. Scheduling Differences Do Not Defeat Commonality or Predominance.**

Next, UPS asserts that scheduling differences within the proposed class defeat commonality and predominance, with reference to part-time employees and Article 22.4 combination drivers. ECF No. 68 at 23. Article 22.4 drivers work Tuesday through Saturday or Wednesday through Sunday, while RPCDs ordinarily work Monday through Friday. Part-time workers are scheduled for fewer hours each day, and some may work a "Sunday through Thursday schedule." *Id.* at 16 (citing a stray CBA sentence). UPS suggests these schedules *may* result in more military leave.

These arguments are conclusory. UPS cites no data to support them. As in *Huntsman*, the "duration of short-term military leave compared to other forms of paid leave is [still] susceptible to common proof." 2021 U.S. Dist. LEXIS 20856, at *18. At best, such considerations "may later dictate the need for sub-classes." *Id.* at 18-19. At any rate, the data show only 22 Article 22.4 drivers out of an estimated class of 440.[5] Scimone Decl. ¶ 2. UPS does not say how many part-timers, if any, work Sundays.

**IV. Plaintiff is Adequate and His Claims are Typical of the Class.**

Rehashing many of the same arguments addressed above, UPS claims that Plaintiff is an inadequate representative of part-time employees and non-RPCDs. ECF No. 68 at 23-24 (again citing *Clarkson*'s workgroup distinction). But Plaintiff shares a common

representative evidence" showing that the class members worked overtime, thus necessitating burdensome individual trials. 60 F.4th 459, 469-70 (9th Cir. 2023).

[5] This is unsurprising, because the Article 22.4 distinction did not exist before 2018. *See* Int'l Brotherhood of Teamsters, https://teamster.org/2018/06/new-ups-combination-driver-jobs-protect-weekends-package-car-drivers-address-issue/ (June 30, 2018).

interest with all class members in that they all suffered the same type of injury – denial of a paid-leave benefit for short-term military leaves. This interest is the same for full-time and part-time employees, including Article 22.4 drivers and other non-RPCDs. *See Huntsman*, 2021 U.S. Dist. LEXIS 20856, at *22 ("Typicality refers to the nature of the claim or defense of the class representative, and not to the specific facts from which it arose" (quoting *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992))).[6]

## V. Plaintiff Has Established Both Predominance and Superiority.

### A. UPS's Laches Defense Does Not Defeat Predominance.

Common liability and damages issues in this case predominate over any individualized issues associated with UPS's laches defense. *See* ECF No. 68 at 24. Affirmative defenses only defeat certification if they are "unusually important or . . . coupled with other individual issues." *Huntsman*, 2021 U.S. Dist. LEXIS 20856, at *31-32. Here, the laches analysis is straightforward and is UPS's only purported individualized defense. *See* ECF No. 68 at 24. To establish laches, a defendant must prove "unreasonable delay by the plaintiff and prejudice to itself." *Couveau v. Am. Airlines, Inc.*, 218 F.3d 1078, 1083 (9th Cir. 2000). Here, where every Class Member has the same claim, UPS's laches defense will involve common factual and legal issues. *See Kelly v. City & Cnty. of San Francisco*, No. 05 Civ. 1287, 2005 U.S. Dist. LEXIS

6 Although not necessary for Plaintiff to adequately represent the part-time employees within the proposed class, UPS correctly concedes that Plaintiff worked as a part-time loader/unloader within the class period. *See* ECF No. 68 at 15; ECF No. 68-1 at 4 (Baker Tr. 12:14-19). If the Court is inclined to certify sub-classes, Plaintiff can therefore represent both.

31113, at *10-11 (N.D. Cal. Nov. 21, 2005) (rejecting a similar argument that "individualized" laches defenses defeat class certification and finding that "common evidence will almost certainly be involved in the laches analysis").

UPS fails to articulate a laches defense, because it does not address prejudice. As its own case law acknowledges, while delay and prejudice operate on a sliding scale, "there still must be prejudice, and it must be material." *Maher v. City of Chi.*, 406 F. Supp. 2d 1006, 1031 (N.D. Ill. 2006) (finding prejudice for an 11-year-old USERRA retaliation claim arising from a demotion where "the two individual[s] who allegedly discriminated against the plaintiff were deceased"). UPS's inability to articulate prejudice here is fatal to its claim that laches will predominate over common questions.

Nor do the cases cited by UPS support its laches arguments. In *Clarkson*, the court did not find that a laches defense undermined predominance or defeated class certification, *see Clarkson v. Alaska Airlines, Inc.*, No. 19 Civ. 005, 2020 U.S. Dist. LEXIS 184477 (E.D. Wash. Oct. 5, 2020), it simply denied plaintiffs' motion for summary judgment on laches. *Id.* at *11-12. But it certified a class. *See Clarkson*, 2020 U.S. Dist. LEXIS 138838, at *19-21.

Both *In re SFPP Right-of-Way Claims*, No. 15 Civ. 718 *et al.*, 2017 U.S. Dist. LEXIS 85973, at *49-50 (C.D. Cal. May 23, 2017) and *Valenzuela v. Union Pac. R.R. Co.*, No. 15 Civ. 1092, 2017 U.S. Dist. LEXIS 23838, at *49-50 (D. Ariz. Feb. 21, 2017) involved fact-specific railroad property and land rights claims and many individualized defenses, including dual-easement, statute of limitations, consent, acquiescence, waiver,

estoppel, adverse possession, easement by prescription, and laches. Plaintiff's claim here involves none of these factual issues and will turn on common evidence. *See also Huntsman*, 2021 U.S. Dist. LEXIS 20856, at *32 (rejecting defendants' laches defense to class certification and distinguishing *In re SFPP Right-of-Way* and *Valenzuela*).

**B. Plaintiff's Damages Theory Satisfies Predominance.**

Plaintiff has presented a method for determining class wide damages that "stem[s] from the defendant's actions that created the legal liability." *Leyva v. Medline Indus.*, 716 F.3d 510, 514 (9th Cir. 2013) (citing *Comcast Corp. v. Behrend*, 569 U.S. 27, 38 (2013)). Plaintiff and the proposed class seek the wages "they would have earned had they continued" working during periods of unpaid short-term military leave. ECF No. 57 at 15. UPS is mistaken in arguing that differential pay raises "complex and individualized questions" that preclude class certification.[7] ECF No. 68 at 28. Differential pay can be calculated based on UPS's data that reflects the dates Class Members took short-term military leave but were not paid by UPS. Military pay data may be subpoenaed from the Department of Defense, as courts have authorized in other USERRA paid-leave cases. Scimone Decl. ¶ 3. This should assuage UPS's concern that

---

7 Nor is UPS correct that Plaintiff waived his right to present a "differential pay theory." ECF No. 68 at 28-29. As discussed in note 2 above, Plaintiff clarified his damages theory in response to new discovery UPS adduced after Plaintiff filed his class certification motion. Plaintiff could not have anticipated that UPS would play "gotcha" by asking Plaintiff to apply the law in his deposition. Responding to a party's newly raised argument is the purpose of a reply brief. *Cmty. Ass'n for Restoration v. Wash. Dairy Holdings Ltd. Liab. Co.*, No. 19 Civ. 3110, 2019 U.S. Dist. LEXIS 241281, at *24 (E.D. Wash. Oct. 24, 2019) (Rice, J.). At any rate, UPS *itself* pled offset as a defense. ECF No. 41 at 16. It cannot be heard to complain that Plaintiff does not contest it.

"UPS does not routinely collect and or have records of its reservists' military pay." ECF No. 68 at 30. Should further damages issues arise, the court has "a number of management tools," such as bifurcation, subclasses, and altering the class definition. *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 141 (2d Cir. 2001). Damages issues alone should not defeat class certification. *Leyva*, 716 F.3d at 514.

**C. The Proposed Class is Not "Fail-Safe."**

Finally, UPS argues that Plaintiff's proposed class is "fail-safe." It is not. A fail-safe class is one where the definition "presupposes success on the merits." *Melgar v. CSK Auto, Inc.*, 681 F. App'x 605, 607 (9th Cir. 2017). Here, class membership is independent of any liability determination. Plaintiff's class includes, in relevant part:

> all current and former employees of UPS subject to the Joint Council No. 28 Rider who worked in the State of Washington and . . . took one or more short-term military leaves of 14 days or less and did not receive the regular pay that they would have earned had they continued to work their ordinary work schedules.

ECF No. 57 at 15. The limitation to class members who "did not receive the regular pay that they would have earned" merely limits the class to people who may have damages – they could still win or lose on comparability grounds. *Cf. Kamar v. Radio Shack Corp.*, 375 F. App'x 734, 736 (9th Cir. 2010) (no fail-safe class merely because class referenced "full amount of mandated premium pay"). And even class members who have no damages after military pay is taken into account will be bound by the judgment.

**Conclusion**

None of UPS's arguments weigh against certifying Plaintiff's proposed class. Accordingly, Plaintiff's motion should be granted.

Dated: June 16, 2023

Respectfully submitted,

/s/ *Michael J. Scimone*

Michael J. Scimone*
**OUTTEN & GOLDEN LLP**
685 Third Avenue, 25th Floor
New York, NY 10017
Telephone: (212) 245-1000
Fax: (646) 509-2060
mscimone@outtengolden.com

Ryan Cowdin*
1225 New York Ave NW, Suite 1200BWashington, DC 20005
Telephone: (202) 914-5097
Fax: (202) 847-4410
rcowdin@outtengolden.com

Thomas G. Jarrard (WSBA #39774)
**LAW OFFICE OF THOMAS G. JARRARD, PLLC**
1020 N. Washington Street
Spokane, WA 99201
Telephone: (425) 239-7290
tjarrard@att.net

Matthew Z. Crotty (WSBA #39284)
**RIVERSIDE LAW GROUP PLLC**
905 W. Riverside Avenue, Suite 404
Spokane, WA 99201
Telephone: (509) 850-7011
mzc@riverside-law.com

R. Joseph Barton*
**BARTON & DOWNES LLP**
1633 Connecticut Avenue NW, Suite 200
Washington D.C. 20009
Telephone: (202) 734-7046
jbarton@bartondownes.com

Peter Romer-Friedman*
**PETER ROMER-FRIEDMAN LAW PLLC**
1629 K Street, NW, Suite 300
Washington, DC 20006
Telephone: (718) 938-6132
peter@pfg-law.com

Robert D Friedman*
**GUPTA WESSLER PLLC**
2001 K Street NW, Suite 850
Washington, DC 20006
Telephone: (914) 588-4713
robert@guptawessler.com

* admitted *pro hac vice*

*Attorneys for Plaintiff and the Putative Class*

**CERTIFICATE OF SERVICE**

I certify that on June 16, 2023, I caused the foregoing Reply in Support of Plaintiff's Motion for Class Certification to be electronically filed with the Clerk of the Court using the CM/ECF system, which in turn automatically generated a Notice of Electronic Filing (NEF) to all parties in the case who are registered users of the CM/ECF system.

/s/ *Michael Scimone*

Michael J. Scimone*
OUTTEN & GOLDEN LLP
685 Third Avenue, 25th Floor
New York, NY 10017
Telephone: (212) 245-1000
Fax: (646) 509-2060
mscimone@outtengolden.com

*Attorney for Plaintiff and the Putative Class*